Robert A. Mittelstaedt (SBN 060359)
Craig E. Stewart (SBN 129530)
Peter E. Davids (SBN 229339)
Emily E. Booth (SBN 248008)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
ramittelstaedt@jonesday.com
cestewart@jonesday.com
pdavids@jonesday.com
ebooth@jonesday.com
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700

Attorneys for Defendant
CHEVRON CORPORATION

[Additional moving parties and counsel listed on
signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MIKE M. MADANI, et al., | Case No. C 07-4296 MJJ |
| Plaintiffs, on behalf of themselves and those similarly situated, | **DEFENDANTS' JOINT MOTION FOR TRANSFER OF VENUE** |
| v. | **Date:** December 18, 2007<br>**Time:** 9:30 a.m.<br>**Dept.:** Courtroom 11, 19th Floor<br>**Judge:** Hon. Martin J. Jenkins |
| SHELL OIL COMPANY; CHEVRON CORPORATION; and SAUDI REFINING, INC., | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO TRANSFER VENUE ................................................. 1

I.    INTRODUCTION .......................................................................................................... 1

II.   BACKGROUND ........................................................................................................... 3

III.  ARGUMENT ................................................................................................................ 6

     A.   Legal Standard ................................................................................................... 6

     B.   Plaintiffs Might Have Brought This Action in the Central District ................................ 6

     C.   A Transfer Would Be in the Interest of Justice and Convenient ................................. 7

          1.   The Interest of Justice Mandates Transfer ............................................... 7

               (a)  Conservation of Judicial Resources ............................................. 7

               (b)  Preventing Forum Shopping ........................................................ 9

          2.   Plaintiffs' Choice of Forum Is Not Entitled to Weight Here ...................... 10

          3.   The Convenience Factors Also Support Transfer .................................... 11

               (a)  Convenience of the Parties ....................................................... 11

               (b)  Convenience of the Witnesses ................................................ 12

               (c)  Access to Evidence ................................................................. 13

IV.   CONCLUSION ........................................................................................................... 13

1

## TABLE OF AUTHORITIES

2

Page

3

### Cases

4

*A.J. Indus., Inc. v. Dist. Ct.*,
    503 F.2d 384 (9th Cir. 1974) ............................................................ 6

5

*Alexander v. Franklin Res., Inc.*,
    No. C 06-7121 SI, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ...................................... 10

6

*AV Media v. OmniMount Systems, Inc.*,
    No. C 06-3805 JSW, 2006 WL 2850054 (N.D. Cal. Oct. 5, 2006) .................................. 12

7

8

*Carolina Cas. Co. v. Data Broad. Corp.*,
    158 F. Supp. 2d 1044 (N.D. Cal. 2001) .............................................. 10

9

*Clarus Transphase Scientific, Inc. v. Q-Ray, Inc.*,
    No. C 06-3450 JF, 2006 WL 2374738 (N.D. Cal. Aug. 16, 2006) .................................. 10

10

11

*Dagher v. Saudi Ref., Inc.*,
    No. CV 99-6114 GHK, 2002 WL 34099816 (C.D. Cal. May 21, 2002) ...................... 5, 8

12

*Dagher v. Saudi Ref., Inc.*,
    No. CV 99-6114 GHK, 2002 WL 34099815 (C.D. Cal. Aug. 13, 2002) ...................... 5, 8

13

14

*Dagher v. Saudi Ref., Inc.*,
    369 F.3d 1108 (9th Cir. 2004) .......................................................... 5

15

*David v. Alphin*,
    No. C 06-04763 WHA, 2007 WL 39400 (N.D. Cal. Jan. 4, 2007) .................................. 13

16

17

*Gerin v. Aegon USA, Inc.*,
    No. C 06-5407 SBA, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007) ............................. 9, 12

18

*Hatch v. Reliance Ins. Co.*,
    758 F.2d 409 (9th Cir. 1985) ............................................................ 6

19

20

*Hoefer v. U.S. Dep't of Commerce*,
    No. C 00-0918 VRW, 2000 WL 890862 (N.D. Cal. June 28, 2000) ............................ 2, 8

21

*Hoffman v. Blaski*,
    363 U.S. 335 (1960) ...................................................................... 6

22

23

*In re Funeral Consumers Antitrust Litig.*,
    No. C 05-01804 WHA, 2005 WL 2334362 (N.D. Cal. Sept. 23, 2005) .......................... 10

24

*Italian Colors Rest. v. Am. Express Co.*,
    No. C 03-3719 SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) .......................... 10, 11

25

26

*Jaco Envtl. Inc. v. Appliance Recycling Ctrs. of Am., Inc.*,
    No. C 06-06601 JSW, 2007 WL 951274 (N.D. Cal. Mar. 27, 2007) ............................. 11

27

28

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3

*Jakusz v. Union Pac. R.R. Co.*,
  No. C 05-4842 JSW, 2006 WL 563055 (N.D. Cal. Mar. 6, 2006) .................................... 13

4

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947) ........................................................................................................... 10

5
6

*London & Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co.*,
  No. C 96-01512 CW, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996) ................................. 7

7
8

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987)............................................................................................. 10

9

*Munoz v. UPS Ground Freight, Inc.*,
  No. C 07-00970 MJJ, 2007 WL 1795696 (N.D. Cal. June 20, 2007).............................. 12

10
11

*Rainin Instrument, LLC v. Gilson, Inc.*,
  No. C 05-04030 JSW, 2006 WL 708660 (N.D. Cal. Mar. 16, 2006) ................................ 7

12

*Royal Queentex Enter. v. Sara-Lee Corp.*,
  No. C 99-4787 MJJ, 2000 WL 246599 (N.D. Cal. Mar. 1, 2000) .................................... 10

13
14

*Samsung Elec. Co. v. Rambus, Inc.*,
  386 F. Supp. 2d 708 (E.D. Va. 2005)............................................................................. 7, 9

15

*Stewart v. AT & T Inc.*,
  No. C 06-7363 SI, 2007 WL 1031263 (N.D. Cal. Apr. 3, 2007)...................................... 13

16
17

*Texaco Inc. v. Dagher*,
  547 U.S. 1 (2006) ....................................................................................................... 1, 3, 5

18

*Vitria Tech., Inc. v. Cincinnati Ins. Co.*,
  No. C 05-01951 JW, 2005 WL 2431192 (N.D. Cal. Sept. 30, 2005) ............................... 13

19
20

*Von der Werth v. Johns Manville Corp.*,
  No. C 07-01456 JSW, 2007 WL 2348707 (N.D. Cal. Aug. 14, 2007) ......................... 7, 10

21

*Weinberger v. Tucker*,
  391 F. Supp. 2d 241 (D.D.C. 2005) ................................................................................... 8

22
23

*Wiley v. Trendwest Resorts, Inc.*,
  No. C 04-4321 SBA, 2005 WL 1910934 (N.D. Cal. Aug. 10, 2005)................................ 11

24

*Williams v. Bowman*,
  157 F. Supp. 2d 1103 (N.D. Cal. 2001) ............................................................................ 10

25
26

*Wireless Conumers Alliance v. T-Mobile USA, Inc.*,
  No. C 03-3711 MHP, 2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) .... 2, 6, 7, 8, 9, 10, 11

27
28

**TABLE OF AUTHORITIES**
**(continued)**

Page

<u>**Statutes**</u>

15 U.S.C. § 15 .................................................................................................................. 6

28 U.S.C. § 1337 .............................................................................................................. 6

28 U.S.C. § 1391(c) .......................................................................................................... 6

28 U.S.C. § 1404(a) ......................................................................................................... 6

<u>**Other Authorities**</u>

Central Dist. L.R. 83-1.3.1 .............................................................................................. 8

Central Dist. General Order 05-06 .................................................................................. 8

*Federal Court Management Statistics, District Courts* (2006),
     at http://www.uscourts.gov/cgi-bin/cmsd2006.pl ............................................. 11

1

**NOTICE OF MOTION AND MOTION TO TRANSFER VENUE**

2        PLEASE TAKE NOTICE that on December 18, 2007 at 9:30 a.m., or as soon thereafter as

3    the matter may be heard, before the Honorable Martin J. Jenkins, Courtroom 11 of the above-

4    entitled court, located on the 19th floor of the Philip Burton Federal Building, 450 Golden Gate

5    Avenue, San Francisco, California, defendants Shell Oil Company, Chevron Corporation, and

6    Saudi Refining, Inc. will move to transfer this action to the Central District of California.

7    **I.    INTRODUCTION.**

8        This action is an attempt to re-litigate under different legal theories a case that was

9    litigated at length in the Central District of California, *Dagher v. Saudi Refining, Inc.*  It is

10   brought by the same plaintiffs' counsel as *Dagher* on behalf of the same nationwide class of

11   service station dealers.  Like *Dagher*, it asserts claims under the federal antitrust laws for

12   damages allegedly arising from two joint ventures known as Equilon and Motiva.  *Dagher* was

13   litigated for three years in the Central District before Judge George H. King.  After extensive

14   discovery, Judge King granted summary judgment for defendants in 2002.  The Supreme Court

15   unanimously affirmed four years later.  *Texaco Inc. v. Dagher*, 547 U.S. 1 (2006).

16       Faced with the adverse judgment in *Dagher*, the present plaintiffs are seeking a second

17   bite.  In *Dagher,* the plaintiffs pursued a claim for *per se* illegal price fixing, expressly waiving

18   any claim under the Rule of Reason.  In this action, the same counsel representing the same

19   putative class seek the same damages under the Rule of Reason theory that was waived in

20   *Dagher*.  They do so on the contradictory notion that, even though *Dagher* involved only the *per*

21   *se* claim, *Dagher*'s pendency tolled the statute of limitations for them to later assert a Rule of

22   Reason claim once the *per se* theory was rejected.  And they do so in this Court, rather than the

23   Central District, no doubt hoping to avoid having their case assigned to the same judge who

24   rejected the claims in *Dagher*.

25       This action should be transferred to the Central District.  The threshold viability of

26   plaintiffs' claim depends on the proceedings before Judge King, including the effect of the

27   *Dagher* plaintiffs' express on-the-record waiver of the Rule of Reason claim and the effect of

28   Judge King's grant of summary judgment. Judge King is in the best position to decide whether

there is any basis for this case to proceed at all given the proceedings before him and his prior rulings. And he is in the best position to decide the ultimate merits of the suit, should the suit get that far, having presided over *Dagher* for three years. Transfer is also supported by the other relevant factors. Plaintiffs' decision to file this action in this Court rather than in the Central District is textbook forum shopping that should not be permitted. Similarly, nearly all of the named plaintiffs reside in the Central District and thus can hardly assert that that forum is inconvenient for them. And there is no question that jurisdiction exists and venue is proper in the Central District, just as it was in *Dagher*.

This district has recognized the appropriateness of transfer in precisely the circumstances of this case. In *Wireless Consumers Alliance v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598 (N.D. Cal. Oct. 14, 2003), Judge Patel transferred an action to the Central District even though the Northern District was "equally convenient." *Id.* at *2. The Court held that where a similar action had been pending in the Central District involving the same plaintiffs' counsel and an identical class but different named plaintiffs, and where the previous plaintiffs had received adverse rulings, transfer was necessary to conserve judicial resources and prevent forum shopping. *Id.* at *2, 5-6. Likewise, in *Hoefer v. U.S. Dep't of Commerce*, No. C 00-0918 VRW, 2000 WL 890862 (N.D. Cal. June 28, 2000), Judge Walker transferred an action noting that "[p]erhaps most compelling to the court's consideration of [transfer] factors is that plaintiffs' counsel previously instituted a lawsuit very similar to the case at bar in federal court in the District of Columbia." *Id.* at *3. In these cases and others like them, the previous litigation of a related case in another district weighed decisively in favor of transfer. The same is true here.[1]

---

[1] Defendants are concurrently filing a motion to dismiss the complaint, on the grounds that (1) the pendency of the *per se* claim in *Dagher* did not toll the statute of limitations for the Rule of Reason claims plaintiffs seek to pursue in this action, and (2) the complaint otherwise fails to state a valid Rule of Reason claim.

1  **II.    BACKGROUND**

2      Both this case and *Dagher* were brought by Shell- and Texaco-branded service station

3  dealers against Shell Oil Company, Texaco Inc.,[2] and Saudi Refining, Inc.  (Davids Decl., Ex. B.)

4  The plaintiffs in *Dagher* alleged that the defendants used two joint ventures—Motiva Enterprises

5  LLC and Equilon Enterprises LLC—to fix prices of gasoline in violation of Section 1 of the

6  Sherman Act.  (*Id.* ¶¶ 73-86.)  The ventures were formed in 1998 and resulted in the effective

7  merger of the entire United States gasoline refining and marketing operations of the defendants

8  into the two entities.  *Dagher,* 547 U.S. at 4.  The ventures were reviewed and approved under the

9  antitrust laws by the Federal Trade Commission and the attorneys general of four states.  *Id.*  As

10 here, the plaintiffs in *Dagher* alleged a nationwide class of all Shell- and Texaco-branded dealers

11 who bought gasoline from one or both of the joint ventures.  (Davids Decl., Ex. B, ¶ 1)  As here,

12 the plaintiffs in *Dagher* were represented by Daniel R. Shulman, John H. Boone, Joseph M.

13 Alioto, and Thomas P. Bleau as lead counsel.  (*Id.*)  Each of the current plaintiffs was a member

14 of the alleged class in *Dagher*.  Indeed, the lead plaintiff here, Mike Madani, was a named

15 plaintiff in *Dagher* from the time of its filing in June 1999 until he dismissed his claim in

16 November 2000.  (Davids Decl., Exs. A & C.)

17      The difference between *Dagher* and this case is the specific antitrust claim being pursued

18 and the additional proof that claim requires.  Here, plaintiffs allege that defendants' conduct in

19 forming the joint ventures and having them set a single price for Shell and Texaco branded

20 gasoline violated the Rule of Reason.  (Compl. ¶¶ 113, 115.)  Under the Rule of Reason, the

21 plaintiffs must prove that the challenged conduct was unreasonable and anticompetitive in the

22 relevant markets.  *See Dagher*, 547 U.S. at 5 (distinguishing Rule of Reason and *per se* claims).

23      In the *Dagher* action, by contrast, the plaintiffs explicitly waived reliance on the Rule of

24 Reason, and committed themselves to pursuing only a *per se* claim (and a related "quick look"

25 claim).  Early in the case, Judge King noted the absence of a Rule of Reason claim in the

26

27 _____

[2]      Here, plaintiffs sue Chevron Corporation as Texaco's successor in interest.  (Compl.

28 ¶ 18.)

1  complaint and gave the plaintiffs an opportunity to amend.  Plaintiffs' counsel declined the

2  Court's invitation and expressly waived any Rule of Reason claim:

3          THE COURT:  . . .

4          I will tell you that right now, because we are not going to go down
           six months, eight months, twelve months of discovery, and then
5          come back and say, you know, now that we have taken a look at
           this, this just isn't going to work under this analysis, let's start at
6          ground zero and have a different complaint.  I'm not going to do
           that.
7
           So what I am telling you is, do it now or don't do it.
8
           . . .
9
           THE COURT:  . . . I guess what I am telling you is . . . you can call
10         this price fixing, you can call it market allocation; and while it is
           true, if it's a naked price-fixing case, you're right, it's per se.
11
           But I think the analysis in this case cannot end there, and it has the
12         potential of making the per se analysis and the quick look analysis
           inapplicable. . . .
13
           MR. ALIOTO:  I want to proceed, Your Honor, but please, Your
14         Honor, we wish to proceed on the basis that it is either a per se or
           quick look violation; that it is not the customary Rule of Reason
15         type violation; that the issues of market power and impact upon the
           market are not an issue.
16
           THE COURT:  All right.  So you are, in essence, waiving any
17         future reliance upon the Rule of Reason.

18         MR. ALIOTO:  Correct, Your Honor.

19         . . .

20         THE COURT:  All I want to make sure is that I am giving you an
           opportunity to at least amend to include what you call customary
21         allegations of Rule of Reason analysis and you're declining my
           invitation.
22
           Am I correct In that?
23
           MR. ALIOTO:  Yes, Your Honor.  I'm not declining any invitation
24         from the Court.

25         What I am saying is, is that I am committing to go one way, as to
           the one way.
26

27  (Davids Decl., Ex. D at 12-16.)  Given this express waiver, *Dagher* proceeded at all times solely

28  on the basis of the plaintiffs' claim of *per se* illegality under section 1.  *Dagher v. Saudi Ref., Inc.,*

No. CV 99-6114 GHK, 2002 WL 34099815, *1 (C.D. Cal. Aug. 13, 2002) ("Plaintiffs waived

any reliance on the rule of reason . . . ."); *Dagher v. Saudi Ref., Inc.*, 369 F.3d 1108, 1113 (9th

Cir. 2004) ("The plaintiffs disclaimed any reliance on the traditional 'rule of reason' test, instead

resting their entire claim on either the per se rule or a 'quick look' theory of liability."); *Dagher*,

547 U.S. at 7 n.2 (plaintiffs "have not put forth a rule of reason claim").

      After Judge King denied in part the defendants' motion to dismiss the complaint, the

parties engaged in over a year of intensive discovery.  (Davids Decl, ¶ 6.)  On cross-motions for

summary judgment, Judge King granted summary judgment to the defendants, ruling that it was

not *per se* illegal for a joint venture to set the selling price of its own gasoline.  *Dagher*, 2002 WL

34099815, at *12.  Judge King also granted summary judgment for Saudi Refining on the ground,

among others, that none of the *Dagher* plaintiffs had standing to sue Saudi Refining because none

had purchased from Motiva (which was the only venture to which Saudi Refining was a party).

*Dagher v. Saudi Ref., Inc.*, No. CV 99-6114 GHK, 2002 WL 34099816, *7 (C.D. Cal. May 21,

2002).

      Judge King's summary judgment rulings were ultimately affirmed.  Although the Ninth

Circuit reversed the ruling on *per se* illegality as to Shell and Texaco (*Dagher*, 369 F.3d at

1125),[3] a unanimous Supreme Court reversed the Ninth Circuit, holding that, "[a]s a single entity,

a joint venture, like any other firm, must have the discretion to determine the prices of the

products that it sells, including the discretion to sell a product under two different brands at a

single, unified price."  *Dagher*, 547 U.S. at 8.

      With the *per se* claim having thus been litigated and lost in *Dagher*, the current plaintiffs

filed this action to assert a Rule of Reason claim seeking the identical damages, and to add a new

claim under Section 7 of the Clayton Act.  (Compl. ¶¶ 115, 117.)  Plaintiffs' counsel did not re-

file the action in the Central District, however, where most of the named plaintiffs reside and

where the case would almost certainly have been assigned to the same judge who rejected the *per*

---

[3]    The Ninth Circuit affirmed Judge King's ruling that the named plaintiffs lacked standing
to sue SRI.  *Dagher*, 369 F.3d at 1115-16.  Plaintiffs did not challenge that ruling in the Supreme
Court.

1    *se* claim in *Dagher* and who warned the *Dagher* plaintiffs not to expect to be able to come back to

2    him to litigate a Rule of Reason claim after losing their *per se* claim.  Rather, by suing in the

3    Northern District, they seek to avoid having Judge King consider their new lawsuit.

**III.    ARGUMENT**

    **A.    Legal Standard.**

6    "For the convenience of parties and witnesses, in the interest of justice, a district court

7    may transfer any civil action to any other district or division where it might have been brought."

8    28 U.S.C. § 1404(a).  To transfer an action under section 1404, the Court must make two

9    findings:  (1) that the transferee district is one in which the action might have been brought, and

10    (2) that a transfer would be convenient and in the interest of justice.  *Hatch v. Reliance Ins. Co.*,

11    758 F.2d 409, 414 (9th Cir. 1985).  In adjudicating the motion, "[t]he district court has broad

12    discretion to consider case-specific circumstances."  *Wireless Consumers*, 2003 WL 22387598, at

13    *1.

    **B.    Plaintiffs Might Have Brought This Action in the Central District.**

15    Under section 1404(a), a district court may transfer an action to any district in which

16    plaintiffs might have brought the action.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960); *A.J.

17    Indus., Inc. v. Dist. Ct.*, 503 F.2d 384, 386 (9th Cir. 1974).  The transferee court must have

18    personal jurisdiction over the defendants and subject matter jurisdiction over plaintiffs' claims,

19    and venue must be proper.  *Hoffman*, 363 U.S. at 343-44.

20    Plaintiffs could have brought this action in the Central District of California.  Defendants

21    do not contest that they are subject to personal jurisdiction in California for purposes of this

22    action.  The district court has subject matter jurisdiction over plaintiffs' claims pursuant to

23    15 U.S.C. § 15 and 28 U.S.C. § 1337.  Venue is proper in the Central District because defendants

24    are deemed to reside in any district in which they are subject to personal jurisdiction.  28 U.S.C.

25    § 1391(c).  Perhaps the clearest indication that plaintiffs' counsel might have brought this action

26    in the Central District is that *Dagher* itself was brought there on behalf of the same class and

27    against the same defendants.

28

SFI-572215v1

Defendants' Joint Motion for Transfer
of Venue – Case No. C 07-4296 MJJ

**C.    A Transfer Would Be in the Interest of Justice and Convenient.**

In determining whether a transfer is appropriate, the relevant factors are (1) the interest of justice, including conservation of judicial resources and discouraging forum shopping, (2) the plaintiff's choice of forum, and (3) the convenience of the parties and witnesses and access to evidence. *Wireless Consumers*, 2003 WL 22387598, at *4-6. Each of these factors points decisively to transferring this case to the Central District. Indeed, as noted (*supra*, p. 2), decisions from this district (and elsewhere) have repeatedly ordered transfer in precisely the circumstances here, involving a lawsuit filed in one district following an earlier unsuccessful related suit litigated in a different district on behalf of the same class. As the following sections show, for the same reasons transfer was ordered in those cases, it should be ordered here.

**1.    *The Interest of Justice Mandates Transfer.***

"The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate." *Id.* at * 4; *see also London & Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co.,* No. C 96-01512 CW, 1996 WL 479013, *3 (N.D. Cal. Aug. 14, 1996) ("[t]he 'interests of justice' consideration is the most important factor a court must consider."). Two important "interests of justice" factors are conservation of judicial resources and avoiding forum shopping. *See Wireless Consumers Alliance*, 2003 WL 22387598, *5-6.

*(a)    Conservation of Judicial Resources*

Judicial resources are conserved when an action is adjudicated by a court that has already "committed judicial resources to the contested issues and is familiar with the facts of the case." *Samsung Elec. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 722 (E.D. Va. 2005); s*ee, e.g.*, *Von der Werth v. Johns Manville Corp.*, No. C 07-01456 JSW, 2007 WL 2348707, at *3 (N.D. Cal. Aug. 14, 2007) (transferring action where transferee court "is intimately familiar with the issues and evidence central to this case"); *Rainin Instrument, LLC v. Gilson, Inc.*, No. C 05-04030 JSW, 2006 WL 708660, at *4 (N.D. Cal. Mar. 16, 2006) (same). Judicial familiarity weighs in favor of transfer whether or not a related case is currently pending in another district. Thus, in *Wireless Consumers*, Judge Patel ordered the case transferred even though the previous case was no longer

1   pending.  She found that transfer would "avoid the risk of conflicting rulings" and would "save

2   judicial resources and serve the interest of justice."  2003 WL 22387598, at *5.  By contrast,

3   denying transfer would mean that "much time and effort would [be] wasted in the course of

4   rehearing and reestablishing the facts and circumstances of this case."  *Id.* at *6.  Similarly, Judge

5   Walker ordered transfer in *Hoefer* to the district where an earlier action had been litigated, finding

6   as "perhaps the most compelling factor" that "to allow this case to proceed in the Northern

7   District would entail a significant waste of time and energy and would involve duplicative effort

8   by this court."  2000 WL 890862, at *3; *accord Weinberger v. Tucker*, 391 F. Supp. 2d 241, 245

9   (D.D.C. 2005) (the interests of justice strongly support transferring an action to the court that

10  reviewed and decided the prior action).

11        The same is true here.  In the event of a transfer, the action would almost certainly be

12  reassigned to Judge King under related case procedures.  *See* Central District L.R. 83-1.3.1;

13  Central District General Order 05-06, § 5.2; *see also Wireless Consumers*, 2003 WL 22387598, at

14  *6 ("According to Central District Local 83-1.2.1, Judge Carter, the presiding judge in [the earlier

15  action], is almost guaranteed to receive this case if it is transferred to the Central District.").

16  Because he presided over *Dagher* for more than three years, through motions to dismiss,

17  discovery, and motions for summary judgment, Judge King is in the best position to determine the

18  validity of plaintiffs' argument that the pendency of *Dagher* tolled the statute of limitation.[4]

19  Similarly, should it prove necessary to reach the merits of plaintiffs' antitrust claims, Judge King

20  is already familiar with the formation and operations of Equilon and Motiva.  *Dagher*, 2002 WL

21  34099816, at *5 (noting that plaintiffs filed four volumes of materials totaling 1,054 pages and

22  defendants submitted fourteen volumes of materials with respect to the motion for summary

23  judgment); *Dagher*, 2002 WL 34099815, at *1 ("[w]e now rule … after considering the joint

24  briefs, all pertinent papers, the evidence, and oral argument[ ]").  Judge King is also familiar with

25  the underlying legal issues, and is better situated to address whether his prior ruling, as affirmed

26  by the Supreme Court, effectively disposes of plaintiffs' Rule of Reason claim just as much as it

27  _____

28  [4]      *See* Defendants' Motion to Dismiss (filed Nov. 1, 2007).

1   did the *per se* claim in *Dagher*.  By contrast, this Court has none of this background and would

2   have to invest significant time and resources to even begin to reach the level of familiarity Judge

3   King already possesses.

4                              *(b)*      *Preventing Forum Shopping*

5          A transfer to the Central District is also appropriate to prevent forum shopping.  *See Gerin*

6   *v. Aegon USA, Inc.*, No. C 06-5407 SBA, 2007 WL 1033472, at *7 (N.D. Cal. Apr. 4, 2007)

7   (transferring case where plaintiffs "appear to be attempting to re-litigate their failed case in more

8   sympathetic forum"); *Wireless Consumers*, 2003 WL 22387598, at *5 ("evidence of plaintiff's

9   attempt to avoid a particular precedent from a particular judge weighs heavily . . . and would

10  often make the transfer of venue proper."); *Samsung*, 386 F. Supp. 2d at 721 ("Systemic integrity

11  . . . must also necessarily take account of a party's attempt to game the federal courts through

12  forum manipulation.  The interest of justice is not served by permitting a party to circumvent the

13  force and effect of adverse rulings in prior litigation by seeking a transfer of venue.") (internal

14  citations omitted).

15         As in *Wireless Consumers*, the Central District is the obvious forum in which this action

16  should be litigated.  *Dagher* was litigated there for three years by the same lawyers on behalf of

17  the same alleged class.  Judge King is already familiar with the joint ventures.  Plaintiffs'

18  complaint here expressly relies upon the pendency of *Dagher* as the basis for arguing that their

19  claim is not barred by the statute of limitations.  (Compl. ¶¶ 57-63.)  And thirteen of the twenty

20  named plaintiffs reside in the Central District.  (*Id.* ¶ 4.)  By contrast, only three reside in the

21  Northern District.  (*Id.*)

22         Despite all this, plaintiffs elected to file in the Northern District.  Whatever reasons

23  plaintiffs may now offer up to try to justify this decision, it can only be viewed as clear forum

24  shopping—*i.e.*, as an effort to avoid having their claim decided by the same court that granted

25  summary judgment to the defendants in *Dagher* and that pointedly warned plaintiffs' counsel (the

26  same counsel who brought this action) that it would not look kindly on duplicative litigation in

27  which counsel first pursues a *per se* claim and then comes back to later pursue a Rule of Reason

28  claim when the first claim proves fruitless.  *See Alexander v. Franklin Res., Inc.*, No. C 06-7121

1   SI, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007) ("One could reasonably infer forum

2   shopping here, where the same plaintiff represented by the same law firm filed a similar lawsuit

3   in New Jersey, and after receiving unfavorable rulings from that court, filed the instant case.");

4   *Wireless Consumers*, 2003 WL 22387598, at *6. This Court should not countenance such

5   attempts to game the system.

6                    **2.    *Plaintiffs' Choice of Forum Is Not Entitled to Weight Here.***

7           A plaintiff's choice of venue is entitled to diminished deference when a plaintiff purports

8   to represent a nationwide class. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Von der*

9   *Werth*, 2007 WL 2348707, at *3 (granting motion to transfer purported nationwide antitrust class

10  action); *In re Funeral Consumers Antitrust Litig.*, No. C 05-01804 WHA, 2005 WL 2334362, *7

11  (N.D. Cal. Sept. 23, 2005) (same); *Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719 SI,

12  2003 WL 22682482, *3 (N.D. Cal. Nov. 10, 2003) (same). "[W]here there are hundreds of

13  potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it

14  is his home is considerably weakened." *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330

15  U.S. 518, 524 (1947).

16          Moreover, a plaintiff's choice of forum is accorded little deference if there is any

17  indication the plaintiff is engaging in forum shopping. *See, e.g.*, *Clarus Transphase Scientific,*

18  *Inc. v. Q-Ray, Inc.*, No. C 06-3450 JF, 2006 WL 2374738, *5 (N.D. Cal. Aug. 16, 2006) ("[T]he

19  Court may disregard the plaintiff's choice of forum where the plaintiff's suit is the result of

20  forum-shopping."); *Williams v. Bowman,* 157 F. Supp. 2d 1103, 1116 (N.D. Cal. 2001) ("If there

21  is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice

22  will be accorded little deference."); *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d

23  1044, 1048 (N.D. Cal. 2001) (same); *Royal Queentex Enter. v. Sara-Lee Corp.*, No. C 99-4787

24  MJJ, 2000 WL 246599, at *3 (N.D. Cal. Mar. 1, 2000) (same).

25          Both circumstances are present here. First, plaintiffs have sued on behalf of a purported

26  nationwide class of some 25,000 Shell and Texaco dealers. (Compl. ¶ 1.) Many of these dealers

27  will likely have no connection to the Northern District of California. Indeed, as noted, only three

28  of the named plaintiffs reside in the Northern District, while thirteen reside in the Central District.

1    (*Id.* ¶ 4.)  "[T]he only contact between the proposed plaintiff class and this district is . . . no more

2    forceful than the link between the thousands of potential class members and their respective

3    districts, a roster which surely includes every district court in the nation."  *Italian Colors Rest.*,

4    2003 WL 22682482, at *4.  Moreover, as discussed above, plaintiffs' choice of this district is a

5    textbook case of forum shopping.  Their attempt to avoid an unsympathetic forum is not entitled

6    to deference.[5]

7                      **3.      *The Convenience Factors Also Support Transfer.***

8            Because the interest of justice is of "predominant importance on the question of transfer"

9    (*Wireless Consumers*, 2003 WL 22387598, at *4), transfer to the Central District is proper based

10   on the foregoing discussion alone, even if it could be shown that the Northern District is more

11   convenient than the Central District.  In fact, however, the Northern District is, if anything, less

12   convenient, which furthers supports transfer.

13                            *(a)      Convenience of the Parties*

14           Given that plaintiffs have alleged a class of some 25,000 branded Shell and Texaco

15   dealers across the nation, this factor would at best be considered neutral.  *See Wiley v. Trendwest*

16   *Resorts, Inc.*, No. C 04-4321 SBA, 2005 WL 1910934, at *6 (N.D. Cal. Aug. 10, 2005) ("Since a

17   nationwide class action litigation is at issue here, this factor is presumably neutral.").

18           Here, however, this factor weighs in favor of transfer.  Not only are the alleged class

19   members spread all over the country, but even the named plaintiffs are located predominately in

20   the Central District.  Moreover, that plaintiffs' counsel chose the Central District to litigate the

21   *Dagher* action on behalf of the identical class strongly suggests that the Central District is a more

22   ────────────────────

23   [5]      A less significant "interest of justice" factor is relative court congestion.  *Jaco Envtl. Inc.*
     *v. Appliance Recycling Ctrs. of Am., Inc.*, No. C 06-06601 JSW, 2007 WL 951274, *5 (N.D. Cal.

24   Mar. 27, 2007).  This factor "weigh[s] slightly in favor of transfer because the median times from
     filing to disposition in civil cases is slightly higher in the Northern District [of California] than

25   the Central District [of California]."  *Id.* (citing http://www.uscourts.gov/cgi-bin/cmsd2006.pl).
     The median time from filing to disposition in civil cases in the Northern District is 7.4 months as

26   opposed to 7.2 months in the Central District, and the median time to trial in civil cases is 25
     months in the Northern District as opposed to 21.3 months in the Central District.  *See Federal*

27   *Court Management Statistics, District Courts* (2006), at http://www.uscourts.gov/cgi-
     bin/cmsd2006.pl.

28

1    convenient forum. *See Gerin*, 2007 WL 1033472, at *6-7 ("[T]he history of the Georgia Action

2    demonstrates that the Northern District of Georgia, and not the Northern District of California, is

3    Plaintiff's first choice of venue.").[6]

4         Likewise, defendants will not be inconvenienced by a transfer to the Central District.

5    Shell Oil Company and Saudi Refining, Inc. are both headquartered in Houston, Texas.  (Compl.

6    ¶¶ 11, 26.)  It is equally convenient to fly from Houston to Los Angeles as it is to San Francisco.

7    Although the third defendant, Chevron Corporation, is headquartered in the Northern District (*Id.*

8    ¶ 18), the allegations in the complaint concern Texaco Inc. before its acquisition by Chevron

9    Corporation in 2001.  (*Id.* ¶ 112.)  Chevron does not believe there will be any inconvenience to it

10   in litigating in the Northern District rather than the Central District; at most, any inconvenience

11   would be negligible and greatly outweighed by the time savings that will result from having the

12   case presided over by a judge already familiar with the underlying transaction and circumstances.

13                    *(b)      Convenience of the Witnesses*

14        This factor focuses on the convenience of third-party witnesses other than employees.

15   *E.g.*, *Munoz v. UPS Ground Freight, Inc.*, No. C 07-00970 MJJ, 2007 WL 1795696, at *4 (N.D.

16   Cal. June 20, 2007).  Here, this factor is neutral.  Were this action to proceed to trial, third-party

17   witnesses would likely fall into two categories:  (1) expert witnesses on the issue of whether

18   Motiva and Equilon had market power in properly defined geographic and product markets and

19   whether their formation or pricing decisions had anticompetitive effects; and (2) former officers

20   and employees of Motiva, Equilon, and defendants.  Expert witnesses testify for a living and,

21   even for any who may reside in Northern California, traveling to Los Angeles would not present

22   any serious inconvenience.  *See AV Media v. OmniMount Systems, Inc.*, No. C 06-3805 JSW,

23   2006 WL 2850054, at *4 (N.D. Cal. Oct. 5, 2006) (holding that convenience of expert witnesses

24   "'is given little weight' when determining venue") (citation omitted).  With regard to former

25   ─────────────────
     [6]      Named plaintiff Mike Madani certainly cannot contend that the Central District is an

26   inconvenient forum, given that he has filed three separate actions there.  *See Rick-Mik Enters. v.
     Equilon Enters. LLC*, No. CV 05-08212 R-VBK (filed Nov. 18, 2005); *Madani v. Equilon Enters.*

27   *LLC*, No. CV 04-10370 JVS (filed Dec. 21, 2004); *Hilo v. Exxon Corp.*, No. CV 92-04408 RMT

28   (filed July 24, 1992).

1    employees of the joint ventures and defendants, they are likely to reside in other states.  All but

2    one of the Motiva, Equilon, defendant, and third-party percipient witnesses deposed in the

3    *Dagher* case resided outside of California.  (Davids Decl., ¶ 9.)  For these witnesses, flying to Los

4    Angeles would be just as convenient as flying to San Francisco.[7]

5                              *(c)    Access to Evidence*

6            Access to evidence is a neutral factor.  While plaintiffs' Rule of Reason claims would

7    involve significant new issues regarding the existence of market power and anticompetitive

8    effects that were not present with respect to plaintiffs' *per se* claim in *Dagher*, evidence on such

9    issues is no more likely to be located in the Northern District than in the Central District.  Further,

10   to the extent additional discovery is appropriate, "[w]ith technological advances in document

11   storage and retrieval, transporting documents does not generally create a burden."  *See David v.*

12   *Alphin*, No. C 06-04763 WHA, 2007 WL 39400, *3 (N.D. Cal. Jan. 4, 2007); *Vitria Tech., Inc. v.*

13   *Cincinnati Ins. Co.*, No. C 05-01951 JW, 2005 WL 2431192, at *3 (N.D. Cal. Sept. 30, 2005)

14   ("[W]ith today's technological advances, the Court does not believe that Plaintiff would have any

15   difficulty transporting those corporate documents to Ohio for the purpose of litigation.").  For

16   both of these reasons, access to evidence is not a consideration here.

17   **IV.    CONCLUSION**

18           For the foregoing reasons, the motion to transfer venue to the Central District of

19   California should be granted.

20   Dated: November 1, 2007                    JONES DAY

21

22                                               By:    /S/ Craig E. Stewart
                                                        Craig E. Stewart
23

24                                               Attorneys for Defendant CHEVRON
                                                 CORPORATION
25

---

26   [7]       Unlike convenience of the parties and witnesses, convenience of counsel is not a proper
     consideration in a motion to transfer under section 1404(a).  *E.g., Stewart v. AT & T Inc.*, No. C
27   06-7363 SI, 2007 WL 1031263, at *3 (N.D. Cal. Apr. 3, 2007); *Jakusz v. Union Pac. R.R. Co.*,
     No. C 05-4842 JSW, 2006 WL 563055, at *2 (N.D. Cal. Mar. 6, 2006).

28

1  Dated: November 1, 2007                      Bradley S. Phillips (SBN 85263)
2                                               Stuart N. Senator (SBN 148009)
                                                MUNGER, TOLLES & OLSON LLP
3                                               355 South Grand Avenue
                                                Los Angeles, CA 90071
4                                               Brad.Phillips@mto.com
                                                Stuart.Senator@mto.com
5                                               Telephone:    (213) 683-9100
                                                Facsimile:    (213) 687-3702
6

7
                                                By:    /S/ Stuart N. Senator
8                                                         Stuart N. Senator

9                                               Attorneys for Defendant SHELL OIL
10                                              COMPANY

11 Dated: November 1, 2007                      Bryan A. Merryman (SBN 134357)
                                                WHITE & CASE LLP
12                                              633 West Fifth Street, Suite 1900
                                                Los Angeles, CA 90071-2007
13                                              bmerryman@whitecase.com
                                                Telephone:    (213) 620-7700
14                                              Facsimile:    (213) 452-2329

15

16                                             By:    /S/ Bryan A. Merryman
                                                        Bryan A. Merryman
17
                                                Attorneys for Defendant SAUDI REFINING,
18                                              INC.

19
        **Filer's Attestation:**  Pursuant to General Order No. 45, § X(B), I attest under penalty of
20
perjury that concurrence in the filing of this document has been obtained from each of its
21
signatories.
22
Dated: November 1, 2007
23
                                                    /S/ Craig E. Stewart
24                                                    Craig E. Stewart

25

26

27

28