1   Robert A. Mittelstaedt (SBN 060359)
    Craig E. Stewart (SBN 129530)
2   Peter E. Davids (SBN 229339)
    Emily E. Booth (SBN 248008)
3   JONES DAY
    555 California Street, 26th Floor
4   San Francisco, CA  94104
    ramittelstaedt@jonesday.com
5   cestewart@jonesday.com
    pdavids@jonesday.com
6   ebooth@jonesday.com
    Telephone:    (415) 626-3939
7   Facsimile:    (415) 875-5700
8
9   Attorneys for Defendant
    CHEVRON CORPORATION
10
11  [Additional moving parties and counsel listed on
    following page]
12
13                UNITED STATES DISTRICT COURT
14               NORTHERN DISTRICT OF CALIFORNIA
15                   SAN FRANCISCO DIVISION
16
17
    MIKE M. MADANI, et al.,                    Case No. C 07-4296 MJJ
18
                    Plaintiffs, on behalf of   [PROPOSED] ORDER GRANTING
19                  themselves and those       DEFENDANTS' MOTION FOR
                    similarly situated,        TRANSFER OF VENUE
20
21          v.
22  SHELL OIL COMPANY; CHEVRON
    CORPORATION; and SAUDI
23  REFINING, INC.,
24                  Defendants.
25
26
27
28

1     [Continued listing of moving parties and counsel]

2     Bradley S. Phillips (SBN 85263)
3     Stuart N. Senator (SBN 148009)
      MUNGER, TOLLES & OLSON LLP
4     355 South Grand Avenue
      Los Angeles, CA  90071
5     Brad.Phillips@mto.com
      Stuart.Senator@mto.com
6     Telephone:      (213) 683-9100
7     Facsimile:      (213) 687-3702

8     Attorneys for Defendant SHELL OIL COMPANY

9
      Bryan A. Merryman (SBN 134357)
10    WHITE & CASE LLP
      633 West Fifth Street, Suite 1900
11    Los Angeles, CA  90071-2007
12    bmerryman@whitecase.com
      Telephone:      (213) 620-7700
13    Facsimile:      (213) 452-2329

14    Attorneys for Defendant SAUDI REFINING, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    In this action, plaintiffs attempt to litigate under different legal theories a case that was

2   litigated for three years before Judge George H. King in the Central District of California, *Dagher*

3   *v. Saudi Refining, Inc.*  After extensive discovery, Judge King granted summary judgment for

4   defendants in 2002.  The Supreme Court unanimously affirmed four years later.  *Texaco Inc. v.*

5   *Dagher*, 547 U.S. 1 (2006).  Defendants argue that this action should be transferred to the Central

6   District in the interests of justice, because Judge King is familiar with the facts and issues in this

7   case and because plaintiffs are forum shopping.  For the reasons that follow, the Court agrees and

8   GRANTS defendants' motion.

9                                        **BACKGROUND**

10    Both this case and *Dagher* were brought by Shell- and Texaco-branded service station

11   dealers against Shell Oil Company, Texaco Inc.,[1] and Saudi Refining, Inc.  (Davids Decl., Ex. B.)

12   The plaintiffs in *Dagher* alleged that the defendants used two joint ventures—Motiva Enterprises

13   LLC and Equilon Enterprises LLC—to fix prices of gasoline in violation of Section 1 of the

14   Sherman Act.  (*Id.* ¶¶ 73-86.)  As here, the plaintiffs in *Dagher* alleged a nationwide class of all

15   Shell- and Texaco-branded dealers who bought gasoline from one or both of the joint ventures.

16   (*Id.* ¶ 1.)  As here, the plaintiffs in *Dagher* were represented by Daniel R. Shulman, John H.

17   Boone, Joseph M. Alioto, and Thomas P. Bleau as lead counsel.  (*Id.*)  Each of the current

18   plaintiffs was a member of the alleged class in *Dagher*.

19    The difference between *Dagher* and this case is the specific antitrust claim being pursued

20   and the additional proof that claim requires.  Here, plaintiffs allege that defendants' conduct

21   violated the Rule of Reason.  (Compl. ¶¶ 113, 115.)  Under the Rule of Reason, the plaintiffs

22   must prove that the challenged conduct was unreasonable and anticompetitive in the relevant

23   markets.  *See Dagher*, 547 U.S. at 5 (distinguishing Rule of Reason and *per se* claims).  In the

24   *Dagher* action, by contrast, the plaintiffs explicitly waived reliance on the Rule of Reason, and

25   committed themselves to pursuing only a *per se* claim (and a related "quick look" claim).

26

27    [1] Here, plaintiffs sue Chevron Corporation as Texaco's successor in interest.  (Compl.

28   ¶ 18.)

[Proposed] Order Granting Mot. to Transfer
No. C 07-4296 MJJ

1  (Davids Decl., Ex. D at 14-16.)  They did so despite Judge King's warning that he would not

2  allow duplicative litigation in which counsel first pursues a *per se* claim and then comes back to

3  later pursue a Rule of Reason claim when the first claim proves fruitless.  (Davids Decl., Ex. D at

4  10-16.)  Given this express waiver, *Dagher* proceeded at all times solely on the basis of the

5  plaintiffs' claim of *per se* illegality under section 1.

6      On cross-motions for summary judgment, Judge King granted summary judgment to the

7  defendants, ruling that it was not *per se* illegal for a joint venture to set the selling price of its own

8  gasoline.  *Dagher v. Saudi Ref., Inc.*, No. CV 99-6114 GHK, 2002 WL 34099815, *12 (C.D. Cal.

9  Aug. 13, 2002).  Judge King also granted summary judgment for Saudi Refining on the ground,

10  among others, that none of the *Dagher* plaintiffs had standing to sue Saudi Refining.  *Dagher v.*

11  *Saudi Ref., Inc.*, No. CV 99-6114 GHK, 2002 WL 34099816, *7 (C.D. Cal. May 21, 2002).

12  Judge King's summary judgment rulings were ultimately affirmed.  Although the Ninth Circuit

13  reversed the ruling on *per se* illegality as to Shell and Texaco (*Dagher v. Saudi Ref., Inc.*, 369

14  F.3d 1108, 1125 (9th Cir. 2004)), a unanimous Supreme Court reversed the Ninth Circuit, holding

15  that, "[a]s a single entity, a joint venture, like any other firm, must have the discretion to

16  determine the prices of the products that it sells, including the discretion to sell a product under

17  two different brands at a single, unified price."  *Dagher*, 547 U.S. at 8.

18      With the *per se* claim having thus been litigated and lost in *Dagher*, the current plaintiffs

19  filed this action to assert a Rule of Reason claim seeking the identical damages, and to add a new

20  claim under Section 7 of the Clayton Act.  (Compl. ¶¶ 115, 117.)  Rather than re-filing the action

21  in the Central District, plaintiffs' counsel filed the action her in the Northern District.

22                                  **LEGAL STANDARD**

23      "For the convenience of parties and witnesses, in the interest of justice, a district court

24  may transfer any civil action to any other district or division where it might have been brought."

25  28 U.S.C. § 1404(a).  To transfer an action under section 1404, the Court must make two

26  findings:  (1) that the transferee district is one in which the action might have been brought, and

27  (2) that a transfer would be convenient and in the interest of justice.  *Hatch v. Reliance Ins. Co.*,

28  758 F.2d 409, 414 (9th Cir. 1985).

[Proposed] Order Granting Mot. to Transfer
No. C 07-4296 MJJ

To meet the "might have been brought" requirement, the transferee court must have personal jurisdiction over the defendants and subject matter jurisdiction over plaintiffs' claims, and venue must be proper. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). In determining whether a transfer is appropriate, the relevant factors are (1) the interest of justice, including conservation of judicial resources and discouraging forum shopping, (2) the plaintiff's choice of forum, and (3) the convenience of the parties and witnesses and access to evidence. *Wireless Consumers Alliance v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, *4-6 (N.D. Cal. Oct. 14, 2003). In adjudicating the motion, "[t]he district court has broad discretion to consider case-specific circumstances." *Id.* at *1.

## ANALYSIS

**A.    Plaintiffs Might Have Brought This Action in the Central District.**

Defendants do not contest that they are subject to personal jurisdiction in California for purposes of this action. The district court has subject matter jurisdiction over plaintiffs' claims pursuant to 15 U.S.C. § 15 and 28 U.S.C. § 1337. Venue is proper in the Central District because defendants are deemed to reside in any district in which they are subject to personal jurisdiction. 28 U.S.C. § 1391(c).

**B.    A Transfer Would Be in the Interest of Justice and Convenient.**

**1.    *The Interest of Justice.***

"The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate." *Wireless Consumers*, 2003 WL 22387598, at * 4. Two important "interests of justice" factors are conservation of judicial resources and avoiding forum shopping. *Id.* at *5-6.

Judicial resources are conserved when an action is adjudicated by a court that has already "committed judicial resources to the contested issues and is familiar with the facts of the case." *Samsung Elec. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 722 (E.D. Va. 2005); *accord Von der Werth v. Johns Manville Corp.*, No. C 07-01456 JSW, 2007 WL 2348707, at *3 (N.D. Cal. Aug. 14, 2007). Judicial familiarity weighs in favor of transfer whether or not a related case is

[Proposed] Order Granting Mot. to Transfer
No. C 07-4296 MJJ

currently pending in another district.  Thus, in *Wireless Consumers*, Judge Patel ordered the case

transferred even though the previous case was no longer pending.  She found that transfer would

"avoid the risk of conflicting rulings" and would "save judicial resources and serve the interest of

justice."  2003 WL 22387598, at *5; *see also Hoefer v. U.S. Dep't of Commerce*, No. C 00-0918

VRW, 2000 WL 890862, *3 (N.D. Cal. June 28, 2000) (ordering transfer to the district where an

earlier action had been litigated, finding as "perhaps the most compelling factor" that "to allow

this case to proceed in the Northern District would entail a significant waste of time and energy

and would involve duplicative effort by this court.")

   The same is true here.  In the event of a transfer, the action would almost certainly be

reassigned to Judge King under related case procedures.  *See* Central District L.R. 83-1.3.1;

Central District General Order 05-06, § 5.2.  Because he presided over *Dagher* for more than

three years, Judge King is in the best position to determine the validity of plaintiffs' argument that

the pendency of *Dagher* tolled the statute of limitation.  (*See* Compl. ¶¶ 57-63.)  Similarly, should

it prove necessary to reach the merits of plaintiffs' antitrust claims, Judge King is already familiar

with the formation and operations of Equilon and Motiva.  *Dagher*, 2002 WL 34099816, at *5

(noting that plaintiffs filed four volumes of materials totaling 1,054 pages and defendants

submitted fourteen volumes of materials with respect to the motion for summary judgment).

Judge King is also familiar with the underlying legal issues, and is better situated to address

whether his prior ruling, as affirmed by the Supreme Court, effectively disposes of plaintiffs'

Rule of Reason claim just as much as it did the *per se* claim in *Dagher*.

   A transfer to the Central District is also appropriate to prevent forum shopping.  *See, e.g.*,

*Gerin v. Aegon USA, Inc.*, No. C 06-5407 SBA, 2007 WL 1033472, at *7 (N.D. Cal. Apr. 4,

2007) (transferring case where plaintiffs "appear to be attempting to re-litigate their failed case in

more sympathetic forum"); *Wireless Consumers*, 2003 WL 22387598, at *5 ("evidence of

plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily . . . and

would often make the transfer of venue proper.").

   As in *Wireless Consumers*, the Central District is the obvious forum in which this action

should be litigated.  *Dagher* was litigated there for three years by the same lawyers on behalf of

[Proposed] Order Granting Mot. to Transfer
No. C 07-4296 MJJ

1    the same alleged class.  Judge King is already familiar with the joint ventures.  Plaintiffs'

2    complaint here expressly relies upon the pendency of *Dagher* as the basis for arguing that their

3    claim is not barred by the statute of limitations.  (Compl. ¶¶ 57-63.)  Despite all this, plaintiffs

4    elected to file in the Northern District.  This decision can only be viewed as forum shopping—

5    *i.e.*, as an effort avoid having their claim decided by the same court that granted summary

6    judgment to the defendants in *Dagher* and before which plaintiffs' counsel expressly waived the

7    Rule of Reason they now seek to pursue.  *See, e.g.*, *Alexander v. Franklin Res., Inc.*, No. C 06-

8    7121 SI, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007) ("One could reasonably infer forum

9    shopping here, where the same plaintiff represented by the same law firm filed a similar lawsuit

10   in New Jersey, and after receiving unfavorable rulings from that court, filed the instant case.").

11            **2.       *Plaintiffs' Choice of Forum Is Not Entitled to Weight Here*.**

12            A plaintiff's choice of venue is entitled to diminished deference when a plaintiff purports

13   to represent a nationwide class.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Von der

14   Werth*, 2007 WL 2348707, at *3 (granting motion to transfer purported nationwide antitrust class

15   action).  Moreover, a plaintiff's choice of forum is accorded little deference if there is any

16   indication the plaintiff is engaging in forum shopping.  *See, e.g.*, *Williams v. Bowman,* 157 F.

17   Supp. 2d 1103, 1116 (N.D. Cal. 2001).

18            Both circumstances are present here.  First, plaintiffs have sued on behalf of a purported

19   nationwide class of some 25,000 Shell and Texaco dealers.  (Compl. ¶ 1.)  Many of these dealers

20   will likely have no connection to the Northern District of California.  Indeed, as noted, only three

21   of the named plaintiffs reside in the Northern District, while thirteen reside in the Central District.

22   (*Id.* ¶ 4.)  Moreover, as discussed above, plaintiffs' choice of this district is a textbook case of

23   forum shopping.

24            **3.       *The Convenience Factors Also Support Transfer*.**

25                    *(a)      Convenience of the Parties*

26            Given that plaintiffs have alleged a class of some 25,000 branded Shell and Texaco

27   dealers across the nation, this factor would at best be considered neutral.  *See Wiley v. Trendwest*

28

[Proposed] Order Granting Mot. to Transfer
No. C 07-4296 MJJ

1  *Resorts, Inc.*, No. C 04-4321 SBA, 2005 WL 1910934, at *6 (N.D. Cal. Aug. 10, 2005) ("Since a

2  nationwide class action litigation is at issue here, this factor is presumably neutral.").

3          Here, however, this factor weighs in favor of transfer.  Not only are the alleged class

4  members spread all over the country, but even the named plaintiffs are located predominately in

5  the Central District.  Moreover, that plaintiffs' counsel chose the Central District to litigate the

6  *Dagher* action on behalf of the identical class strongly suggests that the Central District is a more

7  convenient forum.  *See Gerin*, 2007 WL 1033472, at *6-7.

8          Likewise, defendants will not be inconvenienced by a transfer to the Central District.

9  Shell Oil Company and Saudi Refining, Inc. are both headquartered in Houston, Texas.  (Compl.

10  ¶¶ 11, 26.)  It is equally convenient to fly from Houston to Los Angeles as it is to San Francisco.

11  Although the third defendant, Chevron Corporation, is headquartered in the Northern District (*id.*

12  ¶ 18), the allegations in the complaint concern Texaco Inc. before its acquisition by Chevron

13  Corporation in 2001.  (*Id.* ¶ 112.)  Chevron does not believe there will be any inconvenience to it

14  in litigating in the Northern District.

15                    *(b)*      *Convenience of the Witnesses*

16          This factor focuses on the convenience of third-party witnesses other than employees.

17  *E.g.*, *Munoz v. UPS Ground Freight, Inc.*, No. C 07-00970 MJJ, 2007 WL 1795696, at *4 (N.D.

18  Cal. June 20, 2007).  Here, this factor is neutral.  Were this action to proceed to trial, third-party

19  witnesses would likely fall into two categories:  (1) expert witnesses and (2) former officers and

20  employees of Motiva, Equilon, and defendants.  Expert witnesses testify for a living and, even for

21  any who may reside in Northern California, traveling to Los Angeles would not present any

22  serious inconvenience.  *See AV Media v. OmniMount Systems, Inc.*, No. C 06-3805 JSW, 2006

23  WL 2850054, at *4 (N.D. Cal. Oct. 5, 2006) (holding that convenience of expert witnesses "'is

24  given little weight' when determining venue") (citation omitted).  With regard to former

25  employees of the joint ventures and defendants, they are likely to reside in other states.  All but

26  one of the Motiva, Equilon, defendant, and third-party percipient witnesses deposed in the

27  *Dagher* case resided outside of California.  (Davids Decl., ¶ 9.)

28

1

*(c)*    <u>*Access to Evidence*</u>

2    Access to evidence is a neutral factor.  While plaintiffs' Rule of Reason claims raise

3   significant new issues regarding the existence of market power and anticompetitive effects that

4   were not present with respect to plaintiffs' *per se* claim in *Dagher*, evidence on such issues is no

5   more likely to be located in the Northern District than in the Central District.  Further, to the

6   extent additional discovery is appropriate, "[w]ith technological advances in document storage

7   and retrieval, transporting documents does not generally create a burden."  *David v. Alphin*, No. C

8   06-04763 WHA, 2007 WL 39400, *3 (N.D. Cal. Jan. 4, 2007).  For both of these reasons, access

9   to evidence is not a consideration here.

10    <u>**CONCLUSION**</u>

11    For the foregoing reasons, the Court GRANTS defendants' motion to transfer and

12   ORDERS the case transferred to the Central District of California.  The Clerk is directed to

13   transfer this case forthwith.

14

15    Dated: _____.

16

17    _____

18    MARTIN J. JENKINS
     United States District Judge

19

20

21

22

23

24

25

26

27

28

[Proposed] Order Granting Mot. to Transfer
No. C 07-4296 MJJ