# EXHIBIT D

```
                UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
                         - - - -
            BEFORE THE HONORABLE GEORGE H. KING
                 UNITED STATES DISTRICT JUDGE
```

**ORIGINAL**

```
FOUAD DAGHER, et al.,              )
         PLAINTIFFS,               )
                                   )
                                   )
         VS.                       )  CASE NO.
                                   )  CV-99-6114-GHK
SAUDI REFINING, INC., et al.,      )
         DEFENDANTS.               )
                                   )
_____)

             REPORTER'S TRANSCRIPT OF PROCEEDINGS
               MOTION BY DEFENDANT TO DISMISS
                  LOS ANGELES, CALIFORNIA
                  MONDAY, DECEMBER 6, 1999


                         IRENE NAKAMURA, CSR
                         OFFICIAL U.S. REPORTER
                         1179 ROYBAL FEDERAL BUILDING
                         255 EAST TEMPLE STREET
                         LOS ANGELES, CA 90012
                         (213) 894-6052
```

```
 1   APPEARANCES OF COUNSEL:
 2   FOR THE PLAINTIFF:
 3           ALIOTO LAW FIRM
 4           BY:  JOSEPH M. ALIOTO, ESQ.
 5           ONE EMBARCADERO CENTER
 6           SUITE 4000
 7           SAN FRANCISCO, CA  94111
 8           (415) 434-8900
 9
10   FOR THE DEFENDANT TEXACO, INC.:
11           HOWREY & SIMON
12           BY:  ALAN M. GRIMALDI, ESQ.
13           1299 PENNSYLVANIA AVENUE, N.W.
14           WASHINGTON, DC  20004
15           (202) 783-0800
16
17   FOR THE DEFENDANT SHELL OIL COMPANY:
18           MUNGER, TOLLES & OLSON, LLP
19           BY:  STUART N. SENATOR, ESQ.
20           355 SOUTH GRAND AVENUE
21           LOS ANGELES, CA  90071
22           (213) 683-9100
23
24
25
```

3

1  APPEARANCES OF COUNSEL: (CONTINUED)
2
3  FOR THE DEFENDANT SAUDI REFINING, INC.:
4       WHITE & CASE
5       BY:  MICHAEL S. SHUSTER, ESQ.
6       1155 AVENUE OF THE AMERICAS
7       NEW YORK, NY  10036
8       (212) 819-8200
9
10 FOR THE DEFENDANT EQUALON, MOTIVA, EQUIVA SERVICES
11 and EQUIVA TRADING:
12      BAKER & HOSTETLER, LLP
13      BY:  PETER W. JAMES, ESQ.
14      600 WILSHIRE BOULEVARD
15      LOS ANGELES, CA  90017
16      (213) 624-2400
17
18
19
20
21
22
23
24
25

4

|  | INDEX | |
|---|---|---|
| | | PAGE |
| RE: | | |
| MOTION BY DEFENDANT TO DISMISS | | 4 |

                                                                5

1    LOS ANGELES, CALIFORNIA; MONDAY, DECEMBER 6, 1999
2                    9:30 A.M. SESSION
3                       -- oOo --
4               (CALL TO ORDER OF THE COURT.)
5         THE CLERK:  Calling No. 1 on The Court's
6    calendar, civil 99-6114-GHK, <u>Daqher versus Saudi
7    Refining Company, Inc., et al</u>.
8         Counsel, would you please state your
9    appearances for the record and the party you are
10   representing.
11        MR. ALIOTO:  May it please Your Honor, Joseph
12   Alioto for the plaintiffs.
13        THE COURT:  Good morning, Counsel.
14        MR. GRIMALDI:  Good morning.  Allan Grimaldi
15   for Texaco, Inc.
16        THE COURT:  Good morning.
17        MR. JAMES:  Good morning, Your Honor.  Peter
18   James of Baker & Hostetler for Equiva Services,
19   Equiva Trading, Motiva, and Equilon.
20        THE COURT:  Good morning.
21        MR. SENATOR:  Good morning, Your Honor.
22   Stuart Senator of Munger, Tolles and Olson for the
23   Shell Company.
24        THE COURT:  Good morning.
25        MR. SHUSTER:  Good morning, Your Honor.

1   Michael Shuster of White and Case for Saudi Refining,
2   Inc.
3           THE COURT: Good morning.
4       This is matter is on The Court's calendar to
5   consider a series of motions in these matters. In my
6   last count, there were five of them. I hope I
7   haven't missed any. Let's see, we're all on the same
8   page.
9       First we have a joint motion to dismiss, and
10  I think we have a motion to dismiss by Equilon, a
11  motion to dismiss by Motiva, that is 12(b)(6), motion
12  to dismiss for lack of personal jurisdiction as to
13  Motiva, and motion to dismiss by the -- what I call
14  the Equiva entities. All right.
15      Let me -- first of all, Counsel, the issues
16  tend to -- in some way, in some respects overlap as
17  we talk about these motions. Especially if we start
18  with the joint motion, some of the issues, tend to
19  overlap. Some of them are legal issues; some are
20  perhaps pleading issues.
21      Let me start with the joint motion and maybe
22  I can start with you, Mr. Alioto. We can discuss
23  certain things here, and then to some extent, we may
24  be touching upon some of the issues that might really
25  be pertinent also to Equilon and Motiva's 12(b)(6)

7

1  motions and Equiva's motion as well.
2         As we are discussing these matters to the
3  extent that we discuss it within -- within any,
4  context, we're not going to repeat it. I have
5  limited time. I know there are a lot of lawyers
6  here. Everybody wants to be heard, I'm sure, to some
7  extent, but, so let's get going with Mr. Alioto --
8         MR. ALIOTO: Thank you, Your Honor.
9         THE COURT: -- on the joint motion.
10        Let me tell you what my sense of it is, and
11 then I'll give you an opportunity to respond, and
12 during the course of your response, I may have
13 particular questions that I want to ask you. I hope
14 you understand that if I interrupt you, it's not
15 because I want to be rude, but given the limited
16 time, I want to get to the point that I really want
17 to get some answers to.
18        MR. ALIOTO: Very good, Your Honor.
19        THE COURT: My first question to you is that,
20 you know, and this really applies to both sides. My
21 sense of it is that this is not the appropriate time,
22 given the facts of this case even as plead. This is
23 not the appropriate time for me to be making any
24 ultimate decisions as to whether the ultimate
25 analysis in this case, section 1 case will be per se

```
 1   or quick look and we'll go through these.
 2            I think the allegations here, despite the
 3   fact that there are allegations of price fixing,
 4   nevertheless, also include allegations of joint
 5   activity. I know you didn't say "joint ventures"
 6   specifically, but the allegations of the jointly
 7   undertaken activity between the -- what shall I
 8   say -- the three main defendants at least at this
 9   point suggested, somewhere along the line, it might
10   be that the analysis would not be per se, but would
11   be the Rule of Reason.
12            On the other hand, I cannot say, at this
13   point, that it would absolutely be the Rule of Reason
14   at the end of the day. Because there are perhaps
15   factual developments that will have to be made in
16   terms of whether or not this is really an integrated
17   contractual agreement, whether or not it is an
18   agreement which has some potential or pro-competitive
19   benefits, and whether the particular restraint that
20   we are talking about in this case, perhaps the price
21   fixing, perhaps the alleged marketing allocation are
22   really ancillary to that agreement or not. I just
23   don't see it that we can take care of this in the
24   12(b)(6) time, so that is where I am on that. Now
25   that is the background.
```

1          Beyond that then, what we are looking at is
2   really a matter of pleading, at least at this point.
3   A matter of pleading then, in this case, is my
4   question to you then, Mr. Alioto, which I would like
5   you to take a look at and address with The Court,
6   is -- let's talk about the price-fixing aspect.
7          Well, let me back up. Are you satisfied to
8   proceed in this case solely on the theories -- not
9   the theories, solely under a per se analysis or even
10  a quick look analysis, so that if I determine that
11  you have not sufficiently plead under the Rule of
12  Reason analysis, that you are going to tell me, I am
13  so confident at the end of the day, this is only
14  going to be the analysis applicable that I don't even
15  want to take a shot at improving my pleadings on the
16  Rule of Reason, if I were to determine that you need
17  to improve on your pleadings under the Rule of
18  Reason?
19          MR. ALIOTO: Frankly, Your Honor, our
20  approach to it is exactly that.
21          THE COURT: Which is?
22          MR. ALIOTO: It is our view -- it is our view
23  that this is a simple price-fixing agreement and a
24  market allocation agreement, in which they have used
25  certain methods in order to do it, which are a little

1  different, but they are consistent with what has been
2  done in the past, especially during the turn of the
3  century. The same kind of vehicles were used before.
4       I -- I do say, however, that -- and we have
5  approached it on a per se basis. I do say, however,
6  that as we have plead it, what we have plead is
7  basically that price fixing and market allocation,
8  both of which are illegal, regardless of how you look
9  at it. But it is my view, and I intend to press the
10 view, that the charges are per se violations of the
11 antitrust laws.
12      THE COURT: Well, let me --
13      MR. ALIOTO: Whether we are going to make a
14 straight commitment on that, Your Honor, at least at
15 the moment, I don't know, but -- but I will say point
16 blank, that it is, and has been my view about this
17 and that seems to be, I think, what we are going to
18 ultimately do.
19      THE COURT: Here's the problem that I see;
20 all right?
21      I am tentatively of the view that you have
22 not sufficiently plead these claims under or this
23 claim under any of these theories under the analysis
24 of rule or reason. And you may agree or disagree,
25 but that's my view on it. So, what I am willing to

11

1   do is, if you tell me you want leave to amend, is to
2   give you leave to amend to more fully flesh out a
3   case under the analysis of Rule of Reason.
4           Now, I will let you do that if you want to
5   because, you take a look at the Big Bear case from
6   the Ninth Circuit, and it is very clear as to what it
7   is that you have to allege. And in my judgment, you
8   have not made sufficient allegations.
9           What I don't want you to do is for you to
10  tell me, oh, no, we are going straight ahead with per
11  se, and that's what we want to do. So we do that.
12  We have discovery.
13          While it turns out, let's say, I'm not saying
14  it will, but what if it were to turn out that down
15  the road, discovery shows that this was a
16  fully-integrated joint venture, and that it did have
17  some of the, at least, potential for pro-competitive
18  benefits from it, and if it were to show, that this
19  particular restraint that you are complaining about,
20  whether it's price fixing or market allocation, I'm
21  not saying it will turn out that way, but let's say
22  it does, even though those restraints were deemed to
23  be absolutely ancillary to the joint venture, which
24  does have pro-competitive benefits, at that point,
25  are you then going to come and tell me, well, if

```
                                                             12
```

1  that's the case, Judge, let's go ahead and amend the
2  complaint?  Let me start making allegations which has
3  to do with market, geographic product market, what is
4  the anti-competitive effect and so forth.  Then they
5  can come and tell you why the balance ought to be
6  struck in favor of their agreement as opposed to
7  against it.  I don't want to do that.
8       I will tell you that right now, because we
9  are not going to go down six months, eight months,
10 twelve months of discovery, and then come back and
11 say, you know, now that we have taken a look at this,
12 this just isn't going to work under this analysis,
13 let's start at ground zero and have a different
14 complaint.  I'm not going to do that.
15      So, what I am telling you is, do it now or
16 don't do it.  I will be glad to give you a chance to
17 do it now, because I think you deserve it and you are
18 entitled to an opportunity to do that.
19      MR. ALIOTO:  Let me just say this, if it
20 pleases Your Honor, the customary allegations of a
21 rule of these in case were not alleged in our
22 complaint, as The Court points out.  However, I don't
23 know how The Court is viewing, for instance,
24 broadcast music, whether The Court considers that to
25 be a Rule of Reason case.  I do not.  Certainly not

in the customary sense of the word.

And NCAA is really not the -- it's not the old per se type case, but it's not a Rule of Reason. I guess we can describe it generically as maybe the quick look, but they did analyze and some of those, whether or not there were any justifications or pro-competitive bases for what they did. Even though they analyzed it under quick look, I will say this to The Court, that it is my view that the conduct is illegal on its face, that either under the per se rule or under the quick look rule which does sometimes consider pro- -- whether or not the activity is pro-competitive or not, sometimes considers whether it's ancillary, but do not consider customary Rule of Reason issues, such as market power, impact on the market, and those types of issues. So we would --

THE COURT: Mr. -- I understand where you are going, Mr. Alioto, but I guess what I am telling you is, I also read the BMI case and I also read the NCAA case, and I have also read the Rothery case from Judge Bork, who everyone sees as some sort of an antitrust guru.

MR. ALIOTO: I do not, Your Honor.

THE COURT: All right. Some people consider

1  that.
2              MR. ALIOTO: Yes, Your Honor.
3              THE COURT: But I guess what I am telling you
4  is, it is from my reading of the Supreme Court cases,
5  not Rothery, obviously, the BMI, the NCAA, those
6  cases, which leads me to the belief that we are
7  unable to necessarily decide whether this -- you can
8  call this price fixing, you can call it market
9  allocation; and while it is true, if it's a naked
10 price-fixing case, you're right, it's per se.
11             But I think the analysis in this case cannot
12 end there, and it has the potential of making the per
13 se analysis and the quick look analysis inapplicable.
14 It may or may not. I'm not saying that I know the
15 answer to it. I am just saying I don't know the
16 answer to it, and I don't suppose any of us here can
17 have any certainty or comfort in knowing what
18 analysis will apply, let's say, even at summary
19 judgment point of view -- at point. And that's -- I
20 want to move ahead. I want you to just tell me one
21 way or the other how you want to proceed.
22             MR. ALIOTO: I want to proceed, Your Honor,
23 but please, Your Honor, we wish to proceed on the
24 basis that it is either a per se or quick look
25 violation; that it is not the customary Rule of

15

1   Reason type violation; that the issues of market
2   power and impact upon the market are not an issue.
3           THE COURT: All right. So you are, in
4   essence, waiving any future reliance upon the Rule of
5   Reason.
6           MR. ALIOTO: Correct, Your Honor.
7           THE COURT: All right.
8           MR. ALIOTO: I just want to add, though, as I
9   have added, again, under the quick look analysis,
10  those customary issues -- and I want to stay with
11  quick look and per se -- but under the quick look
12  analysis, some of them sometimes consider pro or
13  con -- pro-competitive issues, and those that are
14  against it. But they don't consider market power.
15  They don't consider impacts on the market.
16          THE COURT: And I --
17          MR. ALIOTO: That's the customary Rule of
18  Reason.
19          THE COURT: I fully appreciate the
20  differences that you are trying to make --
21          MR. ALIOTO: Thank you.
22          THE COURT: -- between one and the other.
23          MR. ALIOTO: That's right.
24          THE COURT: All I want to make sure is that I
25  am giving you an opportunity to at least amend to

16

1  include what you call customary allegations of Rule
2  of Reason analysis and you're declining my
3  invitation.
4       Am I correct in that?
5       MR. ALIOTO: Yes, Your Honor. I'm not
6  declining any invitation from The Court.
7       What I am saying is, is that I am committing
8  to go one way, as to the one way.
9       THE COURT: All right.
10      MR. ALIOTO: Yes, Your Honor.
11      THE COURT: All right. Let's move ahead to,
12 if we can, let's talk about the market allocation
13 allegations. In that respect at least, probably will
14 pull in some of the issues that may be relevant to
15 both Equilon and Motiva's separate motions to
16 dismiss.
17      MR. ALIOTO: Yes.
18      THE COURT: Although, we should put Motiva
19 somewhat to the side, because they also have a
20 personal jurisdictional, jurisdiction challenge where
21 there may be some legal questions that I wanted to
22 talk to you about.
23      But tell me, I'm a little bit unclear. From
24 your allegations, other than the fact that Equilon
25 supposedly operates out here in the western United