1   BRADLEY S. PHILLIPS (State Bar No. 085263)
    STUART N. SENATOR (State Bar No. 148009)
2   LEE S. TAYLOR (Cal. State Bar No. 243863)
    MUNGER, TOLLES & OLSON LLP
3   355 South Grand Avenue
    Los Angeles, CA 90071-1560
4   Tel: (213) 683-9100; Fax (213) 687-3702
    Email: brad.phillips@mto.com; stuart.senator@mto.com;
5   lee.taylor@mto.com

6   Attorneys for Defendant Shell Oil Company

7   [additional moving parties and counsel listed on signature page]

8

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

| 14 | MIKE M. MADANI, *et al.*, | CASE NO. CV-07 04296 MJJ |
|----|---------------------------|--------------------------|
| 15 | Plaintiffs, | DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES |
| 16 | vs. | |
| 17 | SHELL OIL COMPANY, *et al.*, | |
| 18 | Defendants. | [REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF STUART N. SENATOR FILED CONCURRENTLY] |
| 19 | | |
| 20 | | **Date:    December 18, 2007** |
| 21 | | **Time:    9:30 a.m.** |
| 22 | | **Dept.:   Courtroom 11, 19th Floor** |
|    | | **Judge:   Hon. Martin J. Jenkins** |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.    BACKGROUND ......................................................................................3

    A.    Dagher ....................................................................................3

    B.    Madani ....................................................................................6

III.    ARGUMENT ...........................................................................................6

    A.    The Complaint Should Be Dismissed As Time-Barred .......................6

    B.    Class Action Tolling Is Unavailable Here.............................................7

        1.    Tolling does not apply to subsequent class actions ...................9

        2.    Madani alleges different claims that were expressly
                waived or not asserted in Dagher.............................................. 11

        3.    Class Action Tolling Does Not Apply During Appellate
                Review....................................................................................... 13

        4.    The Statute of Limitations Was Not Tolled As Against
                Saudi Refining Because the Dagher Plaintiffs Lacked
                Standing As Against Saudi Refining ........................................ 14

IV.    CONCLUSION........................................................................................ 18

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*America Channel, LLC v. Time Warner Cable, Inc.*
No. 06-2175, 2007 WL 1892227 (D. Minn. June 28, 2007) ...................... 19, 20

*American Ad Mgmt., Inc.  v. GTE Corp.*
92 F.3d 781 (9th Cir. 1996) ................................................................7

*American Pipe & Constr. Co. v. Utah*
414 U.S. 538 (1974) ................................................................ 8, 9, 15

*Andrews v. Orr*
851 F.2d 146 (6th Cir. 1988) ........................................................ 9, 11

*Armstrong v. Martin Marietta Corp.*
138 F.3d 1374 (11th Cir. 1998) .......................................................... 15

*Basch v. Ground Round, Inc.*
139 F.3d 6 (1st Cir. 1998) ................................................................ 11

*Bd. of Trade of Chicago v. United States*
246 U.S. 231 (1918) ........................................................................ 14

*Bell Atlantic Corp. v. Twombly*
127 S. Ct. 1955 (2007) .......................................................... 19, 20, 21

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*
182 F.3d 1096 (9th Cir. 1999) .................................................... 19, 21

*California v. Sutter Health System*
130 F. Supp. 2d 1109 (N.D. Cal. 2001) .............................................. 14

*Catholic Social Services Inc. v. INS*
232 F.3d 1139 (9th Cir. 2000) .......................................................... 12

*Continental T.V., Inc. v. GTE Sylvania Inc.*
433 U.S. 36 (1977) .................................................................. 13, 14

*Crown, Cork & Seal Co.  v. Parker*
462 U.S. 345 (1983) .................................................................. 9, 13

*Dagher v. Saudi Refining, Inc.*
No. CV 99-6114 GHK, 2002 WL 34099815(C.D. Cal. Aug. 13,
2002) ................................................................................ 4, 5, 6

*Dagher v. Saudi Refining, Inc.*
No. CV 99-6114 GHK, 2002 WL 34099816 (C.D. Cal. May 21,
2002) .............................................................................. 4, 5, 18

*Dagher v. Saudi Refining, Inc.,*
369 F.3d 1108 (9th Cir. 2004) ............................................................5

*Electronic for Imaging, Inc. v. Coyle.*
No. C 01-4853 MJJ & C 05-0619 MJJ, 2005 WL 1661958 (N.D.
Cal. July 14, 2005) ........................................................................ 21

*Eminence Capital, LLC v. Aspeon, Inc.*
316 F.3d 1048 (9th Cir. 2003) ............................................................8

MOTION TO DISMISS
CV-07 04296 MJJ

# TABLE OF AUTHORITIES
## (continued)

Page

*Griffin v. Singletary*
  17 F.3d 356 (11th Cir. 1994) ................................................................ 11

*Immigrant Assistance Project of the L.A. County Fed'n of Labor v. INS*
  306 F.3d 842 (9th Cir. 2002) .............................................................. 16

*In re Colonial Ltd. P'ship Litig.*
  854 F. Supp. 64 (D. Conn. 1994) ........................................................ 17

In re Copper Antitrust Litig.
  436 F.3d 782 (7th Cir. 2006) ........................................................ 15, 16

*In re Crazy Eddie Sec. Litig.*
  747 F. Supp. 850 (E.D.N.Y. 1990) ...................................................... 18

*In re Enron Corp.*
  465 F. Supp. 2d 687 ............................................................................ 16

*In re Exodus Commc'ns, Inc. Sec. Litig.*
  No. C-01-2661, 2006 WL 2355071 (N.D. Cal. Aug. 14, 2006) ............ 17

*In re Hanford Nuclear Reservation Litig.*
  497 F.3d 1005 (9th Cir. 2007) ...................................................... 10, 17

In re *Westinghouse Securities Litig.*
  982 F. Supp. 1031 (W.D. Pa. 1997) ............................................. passim

*Jablon v. Dean Witter & Co.*
  614 F.2d 677 (9th Cir. 1980) ................................................................. 7

*Johnson v. Railway Express Agency, Inc.*
  421 U.S. 454 (1975) ............................................................................ 13

*Kaplan v. Burroughs*
  611 F.2d 286 (9th Cir. 1979) .......................................................... 7, 14

*Korwek v. Hunt*
  827 F.2d 874 (2d Cir. 1987) ............................................................... 11

*Los Angeles Memorial Coliseum Comm'n v. National Football League*
  726 F.2d 1381 (9th Cir. 1984) ............................................................ 14

*Morales v. City of Los Angeles*
  214 F.3d 1151 (9th Cir. 2000) ............................................................... 7

*Palmer v. Stassinos*
  236 F.R.D. 460 (N.D. Cal. 2006) ................................................... 10, 17

*Port Dock. & Stone Corp. v. Oldcastle Northeast, Inc.*
  No. 06-4908-CV, 2007 WL 3071637 (2d Cir. Oct. 23, 2007) ............. 20

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*
  124 F.3d 430 (3d Cir. 1997) ............................................................... 19

*Robbin v. Fluor Corp.,*
  835 F.2d 213 (9th Cir. 1987) .......................................................... 9, 11

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*
  765 F.2d 1334 (5th Cir. 1985) ............................................................ 11

MOTION TO DISMISS
CV-07 04296 MJJ

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Southwire Co. v. J.P. Morgan Chase & Co.*
307 F. Supp. 2d 1046 (W.D. Wisc. 2004) .................................................. 16

*Stone Container Corp. v. United States*
229 F.3d 1345 (Fed. Cir. 2000) ............................................................... 15

*Tanaka v. University of Southern California*
252 F.3d 1059 (9th Cir. 2001) ............................................................ 19, 21

*Texaco Inc. v. Dagher*
547 U.S. 1 (2006) ......................................................................... passim

*Torrance Redevelopment Agency v. Solvent Coating Co.*
763 F. Supp. 1060 (C.D. Cal. 1991) ..........................................................7

*Tosti v. City of Los Angeles*
754 F.2d 1485 (9th Cir. 1985) ............................................................... 13

*U.S. Football League v. National Football League*
842 F.2d 1335 (2d Cir. 1988) ................................................................ 14

*United States v. Philadelphia Nat'l Bank*
374 U.S. 321 (1963).................................................................... 14, 19

*United States v. Ritchie*
342 F.3d 903 (9th Cir. 2003) ..................................................................4

*Valley Liquors, Inc. v. Renfield Importers, Ltd.*
822 F.2d 656 (7th Cir. 1987) ................................................................ 21

*Veliz v. Cintas Corp.*
No. C03-1180 SBA, 2007 WL 841776 (N.D. Cal. Mar. 20, 2007)................. 16

*Walters v. Edgar*
163 F.3d 430 (7th Cir. 1998) ................................................................ 17

*Weston v. Ameribank*
265 F.3d 366 (6th Cir. 2001) ................................................................ 10

**FEDERAL STATUTES**

15 U.S.C. § 15b............................................................................7

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2              PLEASE TAKE NOTICE that on December 18, 2007 at 9:30 a.m., or as soon

3    thereafter as the matter may be heard, before the Honorable Martin J. Jenkins, Courtroom 11 of

4    the above-entitled Court, located on the 19th floor of the Philip Burton Federal Building, 450

5    Golden Gate Avenue, San Francisco, California, defendants Shell Oil Company, Chevron

6    Corporation, and Saudi Refining, Inc. will move, pursuant to Rule 12(b)(6) of the Federal Rules

7    of Civil Procedure, to dismiss this action for failure to state a claim.

8              Defendants seek an order dismissing the complaint on the bases that (1) the claims

9    asserted in the complaint are barred by the applicable statute of limitations, and (2) the allegations

10   in the complaint are insufficient to state an antitrust claim.

11

## MEMORANDUM OF POINTS AND AUTHORITIES

12   I.    **INTRODUCTION**

13             Plaintiffs' complaint ("the *Madani* complaint") alleges that, during the period

14   January 1998 through October 2001, defendants violated federal antitrust laws through the

15   formation and operation of two joint ventures, Equilon and Motiva, which combined defendants'

16   domestic gasoline refining and marketing operations.  Plaintiffs allege a *rule of reason* violation

17   of Section 1 of the Sherman Act, 15 U.S.C. § 1, and an unlawful acquisition that substantially

18   lessened competition under Section 7 of the Clayton Act, 15 U.S.C. § 18.

19             On its face, the *Madani* complaint is time-barred.  The complaint was filed on

20   August 21, 2007, more than four years after the last date on which any of the claims could have

21   arisen, and it is therefore barred by four-year statute of limitations in Section 4B of the Clayton

22   Act, 15 U.S.C. § 15b.  Recognizing this time-bar, the *Madani* complaint purports to invoke "class

23   action tolling" based upon an earlier putative class action, *Dagher v. Saudi Refining, et al.*  That

24   lawsuit was filed in 1999 but dismissed by the United States District Court for the Central District

25   of California in 2002, a ruling that was affirmed by a unanimous United States Supreme Court in

26   February 2006. *See Texaco Inc. v. Dagher*, 547 U.S. 1 (2006) (Exh. A).[1]

27   _____

28   [1] All exhibits are attached to the Declaration of Stuart N. Senator filed concurrently herewith.

- 1 -

This Court should dismiss the *Madani* complaint at the threshold because the complaint, in conjunction with the *Dagher* litigation record (of which judicial notice is appropriate), shows as a matter of law that class action tolling is unavailable here. The class action tolling doctrine was developed to eliminate the need for named plaintiffs to file duplicative non-class lawsuits—or for other individuals to intervene in a putative class action—to prevent their individual claims from being time-barred if class action status were denied. The doctrine has no application here for the following independent reasons.

First, *Madani* is a putative class action, not an individual lawsuit. The class action tolling doctrine generally extends the statute of limitations only for *individual* claims, not putative class action claims.

Second, the claims in *Madani* are different from the claim in *Dagher*. The class action tolling doctrine does not extend the limitations period on claims that are different from or peripheral to the claims that were asserted in the original class action. In *Dagher*, the plaintiffs asserted only that—to use the Supreme Court's words—the joint ventures at issue had "unif[ied] gasoline prices under the two brands" of gasoline that the joint ventures sold (the Texaco and Shell brands) and thereby "violated the per se rule against price fixing . . . under §1 of the Sherman Act." 547 U.S. at 4. *Dagher* did not assert a rule of reason challenge to any aspect of the joint ventures under Section 1 of the Sherman Act. *See Id.* at 7 n. 2 ("Respondents have not put forth a rule of reason claim"). In fact, the *Dagher* plaintiffs repeatedly and expressly waived a Section 1 rule of reason claim. Further, *Dagher* did not assert a claim under Section 7 of the Clayton Act (which could have been brought only under the rule of reason).

In *Madani*, plaintiffs allege *only* rule of reason claims under Section 1 of the Sherman Act and Section 7 of the Clayton Act—claims that involve substantially different issues and evidence from the *Dagher* per se claim. The class action tolling doctrine was not developed to permit claims "eschewed" in an initial class action (547 U.S. at 4) to be preserved and asserted years later in another class action in the event that the first case is lost. Such do-over class actions, brought by an overlapping group of named plaintiffs with the same class counsel, are the very sort of manipulation of the class action tolling doctrine that the courts refuse to permit.

- 2 -

1    Third, even if the limitations period on the *Madani* claims had been tolled by

2  *Dagher*, that tolling ended more than four years before the *Madani* complaint was filed, because

3  summary judgment was entered in *Dagher* on August 12, 2002.  The *Madani* claims would

4  therefore be barred in any event.

5    Finally, there can be no tolling as against Saudi Refining because the plaintiffs in

6  *Dagher* lacked standing against Saudi Refining.  Class action claims asserted by parties without

7  proper standing do not toll the statute of limitations.

8    Plaintiffs' claims also fail on the separate and independent basis that plaintiffs

9  have failed to allege any relevant market in which, based on the allegations of the complaint, the

10 challenged conduct could have had an anticompetitive effect.  Such allegations are a prerequisite

11 to pursuing either a rule of reason claim under Section 1 of the Sherman Act or a claim under

12 Section 7 of the Clayton Act.

13    Defendants are concurrently filing a motion to transfer this litigation to the Central

14 District of California, so that it can be heard by the District Judge who presided over the *Dagher*

15 case.  This Court has the discretion to decide the transfer motion first and leave a decision on this

16 motion to Judge King, who has first-hand knowledge of *Dagher*.

17 **II.    BACKGROUND**

18    **A.    *Dagher***

19    On June 15, 1999, Shell-branded and Texaco-branded service station operators

20 filed a putative nationwide class action against Texaco, Inc., Shell Oil Company, Saudi Refining,

21 Inc., and related entities, in the United States District Court for the Central District of California.

22 *See* Complaint in *Dagher v. Saudi Refining, Inc.,* U.S.D.C., C.D. Cal., Case No. CV-99-06114

23 (Exh. B).[2]

24    *Dagher* related to two joint ventures that effectively merged the entire United

25

26 [2] The *Madani* complaint centrally references and relies upon *Dagher*. *See* Madani complaint ¶¶
57-63. Accordingly, on this motion to dismiss, the Court can and should take judicial notice of the
27 record in that litigation. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (materials
central to a complaint may be considered on a motion to dismiss even if not attached to the
28 complaint).  Defendants' are concurrently filing a separate request for judicial notice.

MOTION TO DISMISS
                                                 CV-07 04296 MJJ

1   States gasoline refining and marketing operations of the defendants in the current case. *Dagher v.*

2   *Saudi Refining, Inc.,* No. CV 99-6114 GHK, 2002 WL 34099815,  *5 (C.D. Cal. Aug. 13, 2002)

3   (Exh. C); 547 U.S. at 4.  The Motiva joint venture operated in the Eastern United States and

4   involved Shell, Texaco and Saudi Refining.  2002 WL 34099815 at *5.  The Equilon joint venture

5   operated in the Western United States, and involved only Shell and Texaco (Saudi Refining did

6   not have relevant operations in the Western United States).  *Id.* at *6.  The ventures were

7   reviewed and approved under the antitrust laws by the Federal Trade Commission and the

8   attorneys general of four states.  547 U.S. at 4.

9           *Dagher* challenged each joint venture's policy of setting the wholesale price of its

10  Shell brand of gasoline the same as the wholesale price of its Texaco brand of gasoline.  *Dagher*

11  claimed that this "unifying of gasoline prices under the two brands" of gasoline that each venture

12  sold "violated the per se rule against price fixing that this Court has long recognized under §1 of

13  the Sherman Act."  547 U.S. at 4.

14          The claim in *Dagher* was dismissed by the district court with respect to Saudi

15  Refining on May 21, 2002, and with respect to Shell and Texaco on August 13, 2002.  *Dagher v.*

16  *Saudi Refining, Inc.*, No. CV 99-6114 GHK, 2002 WL 34099816 (C.D. Cal. May 21, 2002) (Exh.

17  D); 2002 WL 34099815.  The district court found that the ventures were legitimate and that it was

18  not per se illegal price fixing for each venture to set the wholesale price of products that it

19  manufactured as it saw fit.  2002 WL 34099815 at *7.  On February 28, 2006, the Supreme Court

20  unanimously affirmed, likewise finding that "[a]s a single entity, a joint venture, like any other

21  firm, must have the discretion to determine the prices of the products that it sells, including the

22  discretion to sell a product under two different brands at a single, unified price."  547 U.S. at 7.[3]

23          The named plaintiffs in *Dagher* included Mike Madani, the lead plaintiff here.  *See*

24  Exh. B (original *Dagher* complaint), Exh. F (*Dagher* First Amended Complaint ("FAC"), filed

25

26  [3] The May 21, 2002 ruling in favor of Saudi Refining found that plaintiffs lacked standing with
    respect to sales of gasoline by Motiva, because plaintiffs bought their gasoline only from Equilon.

27  2002 WL 34099816, at *7.  That ruling was affirmed by the Ninth Circuit and was not appealed.
    *Dagher v. Saudi Refining, Inc.*, 369 F.3d 1108, 1115-16 (9th Cir. 2004) (Exh. E).  Thus, the

28  Supreme Court focused exclusively on Equilon.

MOTION TO DISMISS
CV-07 04296 MJJ

1    June 15, 1999), Exh. G (*Dagher* Second Amended Complaint ("SAC"), filed Jan. 26, 2000).[4]

2    Lead counsel in *Dagher* were the same as lead counsel here, Joseph A. Alioto of the Alioto law

3    firm, Dan Shulman of the Gray, Plant, Mooty law firm, Tom Bleau of the Bleau, Fox law firm,

4    and John H. Boone. *See* Exhs. B, F & G.

5            Throughout the proceedings in *Dagher*, the plaintiffs and their counsel expressly

6    and unambiguously limited themselves to asserting a claim of per se illegal price fixing and

7    waived any rule of reason challenge to any aspect of the joint ventures. For example, the

8    following exchange took place in the district court at the December 6, 1999 hearing on

9    defendants' motion to dismiss the first amended complaint:

10           MR. ALIOTO: I want to proceed, Your Honor, but please, Your Honor, we wish

11           to proceed on the basis that it is either a per se or quick look violation; that it is not

12           the customary Rule of Reason type violation; that the issues of market power and

13           impact upon the market are not an issue.

14           THE COURT: All right. So you are, in essence, waiving any future reliance upon

15           the Rule of Reason.

16           MR. ALIOTO: Correct, Your Honor.

17   Transcript of Dec. 6, 1999 Hearing at 14:22-15:6 (Exh. I). When the district court entered

18   summary judgment in defendants' favor, the district court likewise noted that "Plaintiffs have

19   eschewed an exhaustive rule of reason analysis." 2002 WL 34099815, at *12.

20           During the appellate process, plaintiffs never attempted to revisit their waiver of a

21   rule of reason claim. To the contrary, in the Ninth Circuit, plaintiffs again expressly "disclaimed

22   any reliance on the traditional 'rule of reason' test, instead resting their entire claim on either the

23   per se rule or a 'quick look' theory of liability." 369 F.3d at 1113. The same was true in the

24   Supreme Court. *See* 547 U.S. at 4.

25       **B.    *Madani***

26           The current complaint was filed on August 21, 2007, more than five years after the

27   ───────────────
[4] Mr. Madani was ultimately dismissed from the litigation by stipulation on November 20, 2000
28   (Exh. H).

MOTION TO DISMISS
                                                 CV-07 04296 MJJ

1  District Court entered summary judgment in *Dagher*. Like *Dagher*, the case is styled as a

2  putative class action on behalf of a nationwide class of Shell-branded and Texaco-branded service

3  station operators, not as an individual action. *Madani*'s lead named plaintiff and putative class

4  representative is one of the *Dagher* plaintiffs, Mike Madani. Plaintiffs' lead counsel in *Madani*

5  are identical to the lead plaintiffs' counsel in *Dagher*.

6  　　　　While there is an overlap in the named plaintiffs and proposed class

7  representatives and plaintiffs' lead counsel are the same, the claims asserted in *Madani* are

8  different from the claim asserted in *Dagher*. Indeed, the *Madani* claims are the very claims that

9  were "eschew[ed]" in *Dagher*. That is, *Madani* alleges only rule of reason violations of the

10  antitrust laws—a rule of reason violation of Section 1 of the Sherman Act and a violation of

11  Section 7 of the Clayton Act.

12  　　　　The distinction between the claims will make this litigation, if it progresses past

13  the pleadings, significantly different from *Dagher*.   Whereas a per se Sherman Act claim requires

14  proof only of the allegedly unlawful agreement (there, the decision to price the Texaco and Shell

15  brands of gasoline in a unified manner) as well as resulting damage, a Sherman Act rule of reason

16  claim requires proof of actual anticompetitive effects in a relevant geographic and product

17  market, as well as consideration of any pro-competitive effects. *See American Ad Mgmt., Inc. v.*

18  *GTE Corp.* 92 F.3d 781, 789 (9th Cir. 1996); *Kaplan v. Burroughs*, 611 F.2d 286, 291 (9th Cir.

19  1979).   With regard to the Clayton Act Section 7 claim, there is no such thing as a per se

20  violation of Section 7, and no Section 7 claim was included in *Dagher*. Any Section 7 challenge

21  to a joint venture must show that the venture unreasonably decreased competition in the relevant

22  market.

23  **III.    ARGUMENT**

24  　　　　**A.    The Complaint Should Be Dismissed As Time-Barred**

25  　　　　A complaint should be dismissed where the bar of the statute of limitations is

26  apparent on the face of the complaint, in conjunction with materials of which the Court may take

27  judicial notice. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (face of

28  complaint); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) (judicial notice

- 6 -

of judgments from prior action in determining Rule 12(b)(6) challenge to tolling of statute of

limitations); *accord Torrance Redevelopment Agency v. Solvent Coating Co.*, 763 F. Supp. 1060,

1066 (C.D. Cal. 1991) (judicial notice of public records in determining Rule 12(b)(6) challenge to

timeliness of complaint).

The statute of limitations applicable to plaintiffs' claims is four years under

Section 4B of the Clayton Act, which applies to any claims under the federal antitrust laws.  15

U.S.C. § 15b.  ("Any action to enforce any cause of action under section 15, 15a, or 15c of this

title shall be forever barred unless commenced within four years after the cause of action

accrued.")  Here, the complaint alleges a class period from January 1998 through October 2001,

the period during which the joint ventures between Shell and Texaco are alleged to have been in

existence.  *Madani* complaint ¶ 1 (specifying class period); *see also id.* ¶ 55 (joint ventures

unwound in October 2001).  The start date of the class period is approximately nine years prior to

plaintiffs' filing of this litigation; the end date of the class period is approximately six years prior.

Under any measure, the limitations period has unquestionably expired.  Because

the time-bar is not merely a defect in pleading and could not be cured, the complaint should be

dismissed with prejudice.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th

Cir. 2003) (dismissal with prejudice appropriate where complaint "could not be saved by

amendment").

### B.     Class Action Tolling Is Unavailable Here

Plaintiffs invoke the doctrine of class action tolling to try to save their time-barred

claims.  *Madani* complaint ¶¶ 62-63.  That doctrine is as a matter of law inapplicable to plaintiffs'

claims.

The Supreme Court first articulated the class action tolling doctrine in *American*

*Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).  That case was a putative class action in which

class certification was denied and unnamed members of the putative class thereafter sought to

intervene in the action to assert their claims individually.  The basis for the doctrine was that

tolling the claims of absent class members pending a determination of class certification

promoted the efficiencies behind Rule 23.  The doctrine sought to avoid the "needless duplication

MOTION TO DISMISS
CV-07 04296 MJJ

1  of motions" that would otherwise be caused by protective motions to intervene, filed before the

2  running of the statute of limitations to preserve the timeliness of individual claims in the event

3  that class action status were later denied.  An alternative rule, the Supreme Court noted, would

4  "deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal

5  purpose of the procedure." *Id.* at 553-54.

6          While the doctrine was initially enunciated to permit intervention of an individual

7  plaintiff in the putative class action, the doctrine was later extended to apply to subsequently-filed

8  individual actions. The rationale was the same as stated in *American Pipe*—to ensure that

9  individual plaintiffs would not have to file protective individual actions to preserve their claims in

10  the event that class certification were denied in the putative Rule 23 action.  *Crown, Cork & Seal*

11  *Co. v. Parker*, 462 U.S. 345, 349 (1983).

12          At the same time, however, Justice Powell cautioned against additional extensions,

13  noting that "the tolling rule of *American Pipe* is a generous one, inviting abuse." *Id.* at 354

14  (Powell, J., concurring).  For example, Justice Powell stated:  "It is important to make certain . . .

15  that *American Pipe* is not abused by the assertion of claims that differ from those raised in the

16  original class suit." *Id.* at 355.

17          Taking this caution to heart, the federal courts have consistently refused to extend

18  class action tolling.  For example, the Ninth Circuit has generally limited tolling to subsequent

19  *individual* actions, and not allowed invocation of the doctrine in subsequent putative class

20  actions:  "[T]o extend tolling to class actions tests the outer limits of the *American Pipe* doctrine

21  and . . . falls beyond its carefully crafted parameters into the range of abusive options." *Robbin v.*

22  *Fluor Corp.*, 835 F.2d 213, 214 (9th Cir. 1987) (internal quotation marks omitted); *see Andrews*

23  *v. Orr*, 851 F.2d 146, 149 (6th Cir. 1988) ("The courts of appeals that have dealt with [this] issue

24  appear to be in unanimous agreement that the pendency of a previously filed class action does not

25  toll the limitations period for additional class actions by the putative members of the original

26  asserted class.")

27          Further, the courts have also refused to extend tolling to "different or peripheral

28  claims" not asserted in the initial class action. *Crown, Cork*, 462 U.S. at 354 (Powell, J.,

MOTION TO DISMISS
CV-07 04296 MJJ

1    concurring).  For example, in *Weston v. Ameribank*, 265 F.3d 366, 368-69 (6th Cir. 2001), the

2    Court of Appeals found that the prior pendency of a class action that challenged certain conduct

3    under state law did not toll the limitations period with respect to a subsequent action challenging

4    the same conduct under federal law.  *See also Palmer v. Stassinos*, 236 F.R.D. 460, 464 (N.D.

5    Cal. 2006) (pendency of federal law class action claim did not toll limitations period for

6    subsequent state law claim based on same conduct).[5]

7            Relatedly, in *In re Westinghouse Securities Litig.*, 982 F. Supp. 1031 (W.D. Pa.

8    1997), the court refused to extend *American Pipe* to a claim that had been abandoned in the initial

9    putative class action, when that same claim was asserted by the same counsel in a subsequent

10    putative class action, albeit with a different named plaintiff.  The court found that using "the

11    expedient of a new, named plaintiff" to attempt to assert an abandoned claim, was an "abusive

12    manipulation[]" that "should not be countenanced" and "appear[ed] to fall precisely within

13    Justice Powell's cautionary admonition in [*Crown, Cork*]."  *Id.* at 1034; *see also In re Hanford*

14    *Nuclear Reservation Litig.*, 497 F.3d 1005, 1027 (9th Cir. 2007) (rejecting tolling in individual

15    action filed before certification determination in putative class action because it was clear that the

16    plaintiff "intend[ed] all along to pursue individual claims" and was invoking [t]olling only as "a

17    tool to manipulate limitations periods").

18            As discussed below, these limitations on class action tolling make clear that the

19    doctrine is unavailable to save plaintiffs' belated claims here.

20         **1.**      **Tolling does not apply to subsequent class actions**

21            Consistent with the need to guard against abuse of class action tolling, federal

22    courts will generally toll the statutory period only for later-filed *individual* actions, not for later-

23    filed class actions.  *Robbin*, 835 F.2d at 214; *accord Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir.

24    1987); *Basch v. Ground Round, Inc.*, 139 F.3d 6, 10-11 (1st Cir. 1998); *Griffin v. Singletary*, 17

25    F.3d 356, 359 (11th Cir. 1994); *Andrews*, 851 F.2d at 149-50.  If tolling were generally available

26    in subsequent class actions, plaintiffs and their lawyers could improperly string out class action

27

28

---

[5] As these cases illustrate, claims can be different for purposes of the class action tolling doctrine even if they arise from a common nucleus of operative facts.

MOTION TO DISMISS
CV-07 04296 MJJ

1  litigation indefinitely by "piggybacking" a second (or third) class action on top of a prior

2  unsuccessful class action. *See Salazar-Calderon v. Presidio Valley Farmers Ass'n,* 765 F.2d

3  1334, 1351 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class

4  members may piggyback one class action onto another and thus toll the statute of limitations

5  indefinitely, nor have we found any.").

6          *Robbin* arose after a securities fraud putative class action had been dismissed on

7  the pleadings in the Southern District of New York, appealed to the Second Circuit and

8  remanded, and then denied class certification by the district court. *Robbin,* 835 F.2d at 213-14.

9  Two years later, *Robbin* was filed as putative class action in the Central District of California,

10 alleging the same claims as those in the earlier case. The district court dismissed the case as time-

11 barred and the Ninth Circuit affirmed, holding that "to extend tolling to [successive] class actions

12 'tests the outer limits of the *American Pipe* doctrine and . . . falls beyond its carefully crafted

13 parameters into the range of abusive options.'" *Id.* at 214 (quoting *Korwek,* 827 F.2d at 879).

14 This is precisely the situation presented by plaintiffs' claims here.

15          The Ninth Circuit has departed from the rule against tolling in the context of a

16 subsequent class action in only one situation that involved extreme facts of a sort not even

17 arguably present here. In *Catholic Social Services Inc. v. INS,* 232 F.3d 1139 (9th Cir. 2000)

18 ("CSS"), the district court in the initial case had originally certified a class that included both

19 immigrants who had tendered applications for legalization and those who had not yet done so,

20 and it had granted injunctive relief. *Id.* at 1142. During the pendency of the initial action, and

21 partly in response to it, Congress amended the governing statute. When plaintiffs brought a new

22 putative class action governed by the newly amended statute, the Ninth Circuit applied the class

23 action tolling rule and permitted the successor class action to proceed. The court expressly cited

24 to *Robbin* as controlling law, *id.* at 1147, but held that the statute of limitations should be tolled

25 on the specific facts presented, where "[t]he substantive claims asserted in" the subsequent later

26 action were "within the scope of those asserted in the earlier action, and the dismissal of that

27 action did not result from an adverse decision on the merits of any of those claims." *Id.* at 1149.

28 Unlike *CSS,* the claims in *Madani* go beyond that asserted in *Dagher* and the claim in *Dagher*

- 10 -

1   was fully litigated to a final judgment on the merits after development of a full record.  There also

2   is no intervening change in law here that affects who has standing to raise these claims such as

3   was present in *CSS*.

4          Plaintiffs here are trying to do precisely what the *Robbin* rule is designed to

5   prevent—"piggybacking" a new class action on a prior failed class action.  The circumstances are

6   especially egregious here, where in the prior action one of the same named plaintiffs and the same

7   counsel expressly waived the very claims they now seek to revive.  Even were there no overlap of

8   named plaintiffs, using "the expedient of a new, named plaintiff" to attempt to assert a claim

9   abandoned in the initial action is an "abusive manipulation[]" that "should not be countenanced."

10  *In re Westinghouse*, 982 F. Supp. at 1034.  It does not matter that the court may have disposed of

11  the first action without actually ruling on class certification:  "[I]t is beyond cavil that the

12  dismissal of an entire civil action is about as 'definitive' a disposition of a motion for class

13  certification as one is likely to find."  *Id.* at 1035.

14          2.    ***Madani* alleges different claims that were expressly waived or not**

15                **asserted in *Dagher***

16          Class action tolling does not apply for the additional reason that the claims in

17  *Madani* are different from the single claim asserted in *Dagher*.  As the Supreme Court has stated,

18  "perhaps most importantly, the tolling effect given to the timely prior filings in *American Pipe*

19  and in *Burnett* depended heavily on the fact that those filings involved exactly the same cause of

20  action subsequently asserted."  *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 467

21  (1975).[6]  For this reason, "when a plaintiff invokes *American Pipe* in support of a separate

22  lawsuit, the district court should take care to ensure that the suit raises claims that concern the

23  same evidence, memories, and witnesses as the subject matter of the original class suit, so that the

24  defendant will not be prejudiced."  *Crown, Cork*, 462 U.S. at 355 (Powell, J., concurring) (internal

25  quotation marks and citation omitted).

26  _____

27  [6] Even where courts have suggested that something less than complete identity of claims is
    necessary, the claims have been substantially similar.  *See Tosti v. City of Los Angeles*, 754 F.2d

28  1485, 1489 (9th Cir. 1985).

MOTION TO DISMISS
CV-07 04296 MJJ

1    The significant differences between per se and rule of reason antitrust claims are

2    well-recognized and often lead to plaintiffs' deciding to pursue only a per se claim. For example,

3    a per se claim requires no "elaborate inquiry as to the precise harm . . . caused or the business

4    excuse for [the restraint.]" *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 50 (1977).

5    By contrast, a rule of reason claim involves a detailed and wide-ranging factual inquiry into the

6    circumstances of the market and the effects of the agreement on the market: "[T]he court must

7    ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition

8    before and after the restraint was imposed; the nature of the restraint and its effect, actual or

9    probable. The history of the restraint, the evil believed to exist, the reason for adopting the

10    particular remedy, the purpose or end sought to be attained, are all relevant facts." *Id.* at 50 n.15

11    (quoting *Bd. of Trade of Chicago v. United States*, 246 U.S. 231, 238 (1918); *accord Los Angeles*

12    *Memorial Coliseum Comm'n v. National Football League*, 726 F.2d 1381, 1387 (9th Cir. 1984)

13    (rule of reason claim requires analysis of "all the circumstances of the case"); *Kaplan*, 611 F.2d at

14    290 (discussing difference between *per se* and rule-of-reason claims); *U.S. Football League v.*

15    *National Football League*, 842 F.2d 1335, 1360 (2d Cir. 1988) ("Unlike a *per se* price-fixing

16    case, a Rule-of-Reason case requires the fact finder to balance the procompetitive and

17    anticompetitive *effects* of any restraint.") (emphasis in original).

18    These differences are highlighted in the *Madani* complaint itself, which purports to

19    allege the existence of relevant markets in which the joint ventures purportedly exercised market

20    power, ¶ 108, as well as the purported creation of a situation in which other market participants

21    would likely raise their prices, ¶ 105. The additional elements of proof in a rule of reason claim

22    exist both with respect to *Madani*'s Sherman Act claim and *Madani*'s Clayton Act Section 7

23    claim (a statutory provision not even relied upon in *Dagher*), *See United States v. Philadelphia*

24    *Nat'l Bank*, 374 U.S. 321, 362 (1963) (on a Section 7 claim, a plaintiff must first define the

25    relevant market, and then establish that the proposed merger will create an appreciable danger of

26    anticompetitive consequences.); *California v. Sutter Health System*, 130 F. Supp. 2d 1109, 1118

27    (N.D. Cal. 2001) (similar).[7]

28    [7] As shown below, the *Madani* complaint's rule of reason allegations are too cursory to be

- 12 -

1    Indeed, the rule of reason claims asserted here were omitted from *Dagher*

2    precisely because they require substantial additional evidence, memories and witnesses. As

3    Judge King specifically noted, the later assertion of a rule of reason claim would have meant

4    "start[ing] at ground zero" with "a different complaint." Transcript (Exh. I) at 12:13-14.

5    Application of class action tolling to permit assertion, "years after the original action was filed,"

6    of claims that were expressly abandoned  would, again, be the sort of "abusive manipulation[]"

7    that "should not be countenanced." *In re Westinghouse*, 982 F. Supp. at 1034. The class action

8    tolling doctrine was not developed to allow a do-over, years after the events at issue, of strategic

9    decisions made in an initial putative class action. Such claim-splitting and resultant *seriatim*

10   litigation would be directly contrary to the doctrine's purposes of "efficiency and economy of

11   litigation." *American Pipe,* 414 U.S. at 553.

12            **3.    Class Action Tolling Does Not Apply During Appellate Review**

13    Even if class action tolling were available, it would not save the *Madani* claims.

14   The district court entered summary judgment in *Dagher* May 21, 2002 as to Saudi Refining and

15   on August 13, 2002 as to Shell and Texaco, in each instance more than four years before plaintiffs

16   filed *Madani*. The class action tolling doctrine tolls the limitations period only until the date on

17   which it is determined in the district court that a class action will not proceed. *In re Copper*

18   *Antitrust Litig.*, 436 F.3d 782, 793 (7th Cir. 2006). Tolling is not available during appellate

19   proceedings. *Id.*; *Stone Container Corp.* v. *United States*, 229 F.3d 1345, 1355-56 (Fed. Cir.

20   2000); *Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1391 (11th Cir. 1998). Courts have

21   held that tolling does not apply even where a district had made an adverse interim ruling on a

22   motion for class certification—a ruling that does not result in a final judgment in the district court

23   and is subject to reconsideration in the district court. *See Immigrant Assistance Project of the L.A.*

24   *County Fed'n of Labor v. INS*, 306 F.3d 842, 856 (9th Cir. 2002) ("[w]e do not agree that the time

25   between the denial of class certification and the filing of the Second Amended Complaint [later

26   _____

27   sufficient. This deficiency highlights the difference between the claims in this case and the claim
in *Dagher*. As also shown below, proving the "relevant markets" requires examining the sources
of supply to customers in a given area, the likelihood of new entrants to that area in the event

28   price increase, and numerous other factors that may vary from market to market.

MOTION TO DISMISS
                                                              CV-07 04296 MJJ

1   certified as a class action] should be tolled"); *see also Veliz v. Cintas Corp.*, No. C 03-1180 SBA,

2   2007 WL 841776, at *7 (N.D. Cal. Mar. 20, 2007) (where initial class action claims had been

3   held subject to arbitration, no class action was pending to toll later-filed claims). This is because,

4   once class certification is denied even on an interim basis, "the parties are on notice that they

5   must take steps to protect their rights or suffer the consequences." *In re Copper*, 436 F.3d at 793.

6           This rule should apply all the more where the district court has entered judgment

7   on the merits against the plaintiffs in the initial action, rather than allowed individual claims to

8   proceed. At that juncture, the parties are likewise on notice that they must take steps to protect

9   their rights or suffer the consequences. *See Southwire Co. v. J.P. Morgan Chase & Co.*, 307 F.

10  Supp. 2d 1046, 1064 (W.D. Wisc. 2004), *aff'd in relevant part, In re Copper Antitrust Litig.*, 436

11  F.3d at 793 (holding that tolling ended upon dismissal of first suit in district court and rejecting

12  argument that tolling applies unless district court actually denied class certification in the first

13  suit); *In re Enron Corp.*, 465 F. Supp. 2d 687, 703 (S.D. Tex. 2006) (tolling, if available at all,

14  would apply only for the period between filing of complaint and pre-certification dismissal of

15  claims on merits in the district court); *In re Westinghouse*, 982 F. Supp. at 1035 ("[I]t is beyond

16  cavil that the dismissal of an entire civil action about as 'definitive' a disposition of a motion for

17  class certification as one is likely to find."); *see also Hanford Nuclear Reservation,* 497 F.3d at

18  1027 (rejecting tolling where second action filed before any class certification decision in first

19  case).

20          **4.      The Statute of Limitations Was Not Tolled As Against Saudi Refining**

21                  **Because the *Dagher* Plaintiffs Lacked Standing As Against Saudi**

22                  **Refining**

23          Saudi Refining moves to dismiss individually on the additional basis that class

24  action tolling is inapplicable to the claims against it because the *Dagher* plaintiffs lacked standing

25  to assert their claim against it. When a representative plaintiff in a putative class action lacks

26  standing, that action does not toll the statute of limitations for later plaintiffs. *Palmer*, 236 F.R.D.

27  at 465-66; *see also Walters v. Edgar,* 163 F.3d 430, 432 (7th Cir. 1998). This rule is grounded on

28  the principle that, under Article III of the Constitution, federal courts may decide only cases and

MOTION TO DISMISS
CV-07 04296 MJJ

controversies, and a plaintiff without standing presents no bona fide case or controversy. *Palmer*, 236 F.R.D. at 465; *Walters,* 163 F.3d at 432 (Posner, J.) (federal jurisdiction never attached in the class action because the named plaintiffs never had standing); *see also In re Exodus Commc'ns, Inc. Sec. Litig.*, No. C-01-2661, 2006 WL 2355071, at *1 (N.D. Cal. Aug. 14, 2006) ("[W]here the named plaintiffs in a class action lack standing, the action must be dismissed . . . [i]ntervention will not be permitted to breathe life into a nonexistent lawsuit."). In other words, an action brought by a party that lacks standing is a nullity and a putative class action brought by representative plaintiffs who lack standing has no tolling effect. *See, e.g., Palmer,* 236 F.R.D. at 465-66; *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994) ("[I]f the original plaintiffs lacked standing to bring their claims in the first place, the filing of a class action complaint does not toll the statute of limitations for other members of the purported class."); *In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 856 (E.D.N.Y. 1990) (tolling does not apply to a "class action brought after a previous class action has been dismissed for lack of standing").

As noted, Saudi Refining participated only in Motiva (the joint venture in the Eastern United States), not in Equilon (the joint venture in the Western United States). *Dagher,* 2002 WL 34099816, at *2. All named plaintiffs in *Dagher* were from the Western United States; none purchased any gasoline from Motiva. *Id.* at *4. Plaintiffs asserted standing to sue Saudi Refining based upon the allegation that Saudi Refining participated with Shell and Texaco in a nation-wide price-fixing conspiracy. In its May 2002 ruling, the district court concluded that the plaintiffs were unable to show "some connection between SRI and the alleged price fixing in the Western United States," where the named plaintiffs had actually made their purchases. *Id.* at *4. Accordingly, the district court granted Saudi Refining's summary judgment motion on the basis that plaintiffs lacked standing. *Id.* at *7. The Ninth Circuit affirmed, noting that the "plaintiffs have failed to provide evidence sufficiently implicating SRI in the nationwide price-fixing scheme." 369 F.3d at 1115.

Because the named plaintiffs in *Dagher* lacked standing to assert their claim against Saudi Refining, *Dagher* did not toll the statute of limitations with respect to any claims against Saudi Refining. The claims against Saudi Refining in the *Madani* complaint are barred on

MOTION TO DISMISS
CV-07 04296 MJJ

1   this additional basis.

2   C.   **The Complaint Should be Dismissed On The Additional Basis That Its**

3        **Allegations Are Insufficient To State An Antitrust Claim**

4            The foregoing is by itself sufficient to require that the complaint be dismissed with

5   prejudice as time-barred, without regard to whether the complaint is otherwise sufficient to state a

6   claim.  Were it necessary to reach the latter issue, however, the complaint does not in fact state a

7   valid claim.

8            As noted above, an essential element of a rule of reason claim under Section 1 of

9   the Sherman Act or Section 7 of the Clayton Act is the existence of a relevant market—that is an

10  area of effective competition in which there is cross-elasticity of demand—in which the

11  defendants' conduct has had an anticompetitive effect.  *Phila. Nat'l Bank*, 374 U.S. at 362 (on a

12  Section 7 claim, a plaintiff must first define the relevant market, and then establish that the

13  proposed merger will create an appreciable danger of anticompetitive consequences); *Tanaka v.*

14  *University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001) (affirming dismissal of

15  Section 1 rule of reason claim for failure sufficiently to allege relevant market and noting that

16  "[t]he plaintiff bears the initial burden of showing that the restraint produces significant

17  anticompetitive effects within a relevant market"); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*,

18  182 F.3d 1096, 1101 (9th Cir. 1999) ("Proving injury to competition in a rule of reason case

19  almost uniformly requires a claimant to prove the relevant market and to show the effects upon

20  competition within that market"); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430,

21  436 (3d Cir. 1997) (affirming dismissal of Section 1 and Section 2 claims for failure sufficiently

22  to allege relevant market); *see also America Channel, LLC v. Time Warner Cable, Inc.*, No. 06-

23  2175, 2007 WL 1892227, at *6 (D. Minn. June 28, 2007) (relevant market allegations insufficient

24  to withstand dismissal).

25          Further, under *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the

26  complaint must plead "more than labels and conclusions, and a formulaic recitation of the

27  elements of a cause of action."  *Id.* at 1964-65.  The complaint must plead facts showing an

28  "entitlement to relief" that is "plausible" and "above the speculative level."  *Id.* 1965-66.  *See also*

- 16 -

1    *Port Dock. & Stone Corp. v. Oldcastle Northeast, Inc.*

2    No. 06-4908-CV, 2007 WL 3071637 (2d Cir. Oct. 23, 2007) (applying *Twombly*).  Especially in

3    light of the significant burden of antitrust discovery, the Supreme Court held that, when the

4    allegations in a complaint are insufficient, "this basic deficiency should be exposed at the point of

5    minimum expenditure of time and money by the parties and the court."  *Twombly*, 127 S. Ct. at

6    1966 (citations omitted).

7    Even if the *Madani* complaint were not time-barred, it would be fatally flawed on

8    the separate and independent basis that it does not sufficiently allege any relevant geographic

9    market for gasoline in which the joint ventures could plausibly be said to have exercised market

10    power.  First, the complaint's passing and contradictory allusions to certain geographies falls far

11    short of minimum pleading requirements.  The complaint at one point refers to a "market"

12    consisting of the entire United States.  *Madani* complaint ¶ 115 (alleging that Defendants'

13    conduct "unreasonably restrained trade in the market for the sale of gasoline in the United

14    States").)  Elsewhere, the complaint identifies "various geographic submarkets . . . including San

15    Francisco, Los Angeles, Seattle, Portland and Chicago," *id.* ¶¶ 108, 115, and also alleges that

16    Equilon and Motiva set prices "in each of thousands of distinct pricing areas throughout the

17    United States" (*id.* ¶ 101.)  None of these purported "markets," "submarkets" or "pricing areas" is

18    buttressed with any hint as to the rationale by which one would determine the contours of the

19    purported market or any factual allegation that would qualify it as a relevant market for antitrust

20    purposes.  *See America Channel,* 2007 WL 1892227, at \*6 (holding that by referencing different

21    local and regional market segments as the basis for its antitrust claim, plaintiff alleged no

22    cognizable geographic market and therefore its claim failed as a matter of law)[8]; *see also*

23    *Electronic for Imaging, Inc. v. Coyle*, No. C 01-4853 MJJ & C 05-0619 MJJ, 2005 WL 1661958,

24    \* 3 (N.D. Cal. July 14, 2005) (dismissing complaint for failure to identify a relevant geographic

25    market where the complaint "fail[ed] to provide any information of the market's purported

26    geographical scope (regional, national, or global).").

27    ───────────────
28    [8] The infirm *America Channel* complaint, with its vague and deficient market allegations, was
       filed by the same counsel who filed the *Madani* complaint.  2007 WL 1892227 at \*1.

MOTION TO DISMISS
CV-07 04296 MJJ

Second, the general market share numbers that the complaint affirmatively alleges make clear that anticompetitive effects are, at best for plaintiffs, implausible and speculative, for the geographies that the complaint references.  For example, the joint ventures' overall market share in the United States is alleged to have been just 15 percent.  *Madani* complaint ¶ 89.  In 11 unnamed states the share was below 10 percent, in 24 additional but unnamed states (for a total of 35) the share was below 20 percent, in 12 additional but unnamed states (for a total of 47 states) the share was some unspecified amount below 30 percent, and in only 3 additional but still unnamed states was the share above 30 percent.  *Id*[9]  Further, the complaint affirmatively alleges that, throughout the United States, there were at least four significant competitors to the joint ventures, Exxon, Mobil, Chevron and Amoco.  *Id.* ¶ 82.  These allegations are insufficient as a matter of law to support any claim of actual market power in a relevant market.  The complaint should be dismissed on this basis alone.  *See generally Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 666 (7th Cir. 1987) ("Market share analyses in section 1 cases have led to conclusions that approximately 70%-75% of market share constitutes market power, and that a 20%-25% market share or less does not constitute market power.") (collecting numerous cases; internal quotation marks omitted); *Tanaka*, 252 F.3d at 1063; *Big Bear Lodging Ass'n*, 182 F.3d at 1101.

## IV.    CONCLUSION

The Court should dismiss plaintiffs' complaint in its entirety and with prejudice.

DATED: Nov. 1, 2007                    MUNGER, TOLLES & OLSON LLP

By: _____
                            STUART N. SENATOR

Attorneys for Defendant SHELL OIL COMPANY

---

[9] To the extent plaintiffs allege that Equilon and Motiva possessed market power in a handful of cities, *id.* ¶ 113, the complaint fails because it lacks any specific market share or facts to support this conclusion. *See Twombly*, 127 S. Ct. at 1966 (requiring "factual allegations" rather than merely "labels and conclusions, and a formulaic recitation of the elements of a cause of action").

MOTION TO DISMISS
CV-07 04296 MJJ

1

DATED: Nov. 1, 2007

Robert A. Mittelstaedt (State Bar No. 060359)

2

Craig E. Stewart (State Bar No. 129530)
JONES DAY

3

555 California Street, 26th Floor
San Francisco, CA 94104

4

ramittelstaedt@jonesday.com; cestewart@jonesday.com;
pdavids@jonesday.com; ebooth@jonesday.com

5

Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700

6

By:_____/s/_____

7

CRAIG E. STEWART

8

Attorneys for Defendant

9

CHEVRON CORPORATION

10

DATED: Nov. 1, 2007

Bryan A. Merryman (State Bar No. 134357)

11

WHITE & CASE LLP
633 West Fifth Street, Suite 1900

12

Los Angeles, CA 90071-2007
Telephone:    (213) 620-7700

13

Facsimile:    (213) 452-2329
bmerryman@whitecase.com

14

15

By:_____/s/_____

16

BRYAN A. MERRYMAN

17

Attorneys for Defendant SAUDI REFINING, INC.

18

**Filer's Attestation:**  Pursuant to General Order No. 45, § X(B), I attest under

19

penalty of perjury that concurrence in the filing of this document has been obtained from each of

20

its signatories.

21

22

Dated: November 1, 2007    _____

23

Stuart N. Senator

24

25

26

27

28

- 19 -