Westlaw.

126 S.Ct. 1276
547 U.S. 1, 126 S.Ct. 1276, 164 L.Ed.2d 1, 74 USLW 4147, 2006-1 Trade Cases P 75,143, 06 Cal. Daily Op. Serv. 1650, 2006 Daily Journal D.A.R. 2329
(Cite as: 547 U.S. 1, 126 S.Ct. 1276)

Page 1

H
Texaco Inc. v. Dagher
U.S.,2006.

Supreme Court of the United States
TEXACO INC., Petitioner,
v.
Fouad N. DAGHER et al.
Shell Oil Company, Petitioner,
v.
Fouad N. Dagher et al.
**Nos. 04-805, 04-814.**

Argued Jan. 10, 2006.
Decided Feb. 28, 2006.

**Background:** Gasoline service station owners brought class action antitrust action, accusing two oil companies of price fixing. The United States District Court for the Central District of California, George H. King, J., granted summary judgment for companies, and owners appealed. The Court of Appeals, Reinhardt, Circuit Judge, 369 F.3d 1108, reversed in part. Certiorari was granted.

**Holding:** The Supreme Court, Justice Thomas, held that Decision by companies' joint venture to sell separately branded gasoline to service station owners at same price was not per se illegal horizontal price fixing agreement.

Reversed.

Justice Alito did not participate.
West Headnotes
**[1] Antitrust and Trade Regulation 29T ⚷925**

29T Antitrust and Trade Regulation
    29TXIII Antitrust Law and Joint Ventures
        29Tk925 k. In General. Most Cited Cases
            (Formerly 265k17(1.12))
It is not per se illegal under Sherman Act § 1 for lawful, economically integrated joint venture to set prices at which it sells its products. Sherman Act, § 1, 15 U.S.C.A. § 1.

**[2] Antitrust and Trade Regulation 29T ⚷535**

29T Antitrust and Trade Regulation
    29TVI Antitrust Regulation in General
        29TVI(A) In General
            29Tk532 Judicially Created Tests of Legality
                29Tk535 k. Rule of Reason. Most Cited Cases
            (Formerly 265k12(1.10))
Sherman Act § 1 proscribes only unreasonable restraints of trade. Sherman Act, § 1, 15 U.S.C.A. § 1.

**[3] Antitrust and Trade Regulation 29T ⚷535**

29T Antitrust and Trade Regulation
    29TVI Antitrust Regulation in General
        29TVI(A) In General
            29Tk532 Judicially Created Tests of Legality
                29Tk535 k. Rule of Reason. Most Cited Cases
            (Formerly 265k12(1.10))
Under presumptively applied "rule of reason analysis," Sherman Act § 1 plaintiff must demonstrate that particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful. Sherman Act, § 1, 15 U.S.C.A. § 1.

**[4] Antitrust and Trade Regulation 29T ⚷534**

29T Antitrust and Trade Regulation
    29TVI Antitrust Regulation in General
        29TVI(A) In General
            29Tk532 Judicially Created Tests of Legality
                29Tk534 k. Per Se. Most Cited Cases
            (Formerly 265k12(1.10))
"Per se liability," under Sherman Act § 1, is reserved for only those agreements that are so plainly anticompetitive that no elaborate study of industry is needed to establish their illegality.

**[5] Antitrust and Trade Regulation 29T ⚷822**

29T Antitrust and Trade Regulation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.
3791437.1

Case 3:07-cv-04296-MJJ    Document 28-2    Filed 11/01/2007    Page 2 of 5

126 S.Ct. 1276                                                                                                         Page 2
547 U.S. 1, 126 S.Ct. 1276, 164 L.Ed.2d 1, 74 USLW 4147, 2006-1 Trade Cases P 75,143, 06 Cal. Daily Op. Serv. 1650, 2006 Daily Journal D.A.R. 2329
(Cite as: 547 U.S. 1, 126 S.Ct. 1276)

29TX Antitrust and Prices
    29TX(B) Price Fixing in General
        29Tk822 k. Horizontal Arrangements. Most Cited Cases
        (Formerly 265k17(1.12))
Price-fixing agreements between two or more competitors, otherwise known as "horizontal price-fixing agreements," fall into category of arrangements that are per se unlawful. Sherman Act, § 1, 15 U.S.C.A. § 1.

[6] **Antitrust and Trade Regulation 29T ⟶887**

29T Antitrust and Trade Regulation
    29TX Antitrust and Prices
        29TX(G) Particular Industries or Businesses
            29Tk887 k. Oil, Gas and Mining. Most Cited Cases
            (Formerly 265k17(1.10))
Decision by two oil companies' production and marketing joint venture, to sell separately branded gasoline to service station owners at same price, was not per se illegal horizontal price fixing agreement, as companies were not competing in relevant market; rather, decision amounted to no more than price setting by single entity. Sherman Act, § 1, 15 U.S.C.A. § 1.

**1277 *1 Syllabus [FN*]

    FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Petitioners, Texaco Inc. and Shell Oil Co., collaborated in a joint venture, Equilon Enterprises, to refine and sell gasoline in the western United States under the two companies' original brand names. After Equilon set a single price for both brands, respondents, Texaco and Shell Oil service station owners, brought suit alleging that, by unifying gas prices under the two brands, petitioners had violated the per se rule against price fixing long recognized under § 1 of the Sherman Act, see, e.g., Catalano, Inc. v. Target Sales, Inc., 446 U.S. 643, 647, 100 S.Ct. 1925, 64 L.Ed.2d 580. Granting petitioners summary judgment, the District Court determined that the rule of reason, rather than a per se rule, governs respondents' claim, and that, by eschewing rule of reason analysis, respondents had failed to raise a triable issue of fact. The Ninth Circuit reversed, characterizing petitioners' position as a request for an exception to the per se price-fixing prohibition, and rejecting that request.

Held: It is not per se illegal under § 1 of the Sherman Act for a lawful, economically integrated joint venture to set the prices at which it sells its products. Although § 1 prohibits "[e]very contract [or] combination ... in restraint of trade," 15 U.S.C. § 1, this Court has not taken a literal approach to that language, recognizing, instead, that *2 Congress intended to outlaw only unreasonable restraints, e.g., State Oil Co. v. Khan, 522 U.S. 3, 10, 118 S.Ct. 275, 139 L.Ed.2d 199. Under rule of reason analysis, antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive. See, e.g., id., at 10-19, 118 S.Ct. 275. Per se liability is reserved for "plainly anticompetitive" agreements. National Soc. of Professional Engineers v. United States, 435 U.S. 679, 692, 98 S.Ct. 1355, 55 L.Ed.2d 637. While "horizontal" price-fixing agreements between two or more competitors are per se unlawful, see, e.g., Catalano, supra, at 647, 100 S.Ct. 1925, this case does not present such an agreement, because Texaco and Shell Oil did not compete with one another in the relevant market-i.e., gasoline sales to western service stations-but instead participated in that market jointly through Equilon. When those who would otherwise be competitors pool their capital and share the risks of loss and opportunities for profit, they are regarded as a single **1278 firm competing with other sellers in the market. Arizona v. Maricopa County Medical Soc., 457 U.S. 332, 356, 102 S.Ct. 2466, 73 L.Ed.2d 48. As such, Equilon's pricing policy may be price fixing in a literal sense, but it is not price fixing in the antitrust sense. The court below erred in reaching the opposite conclusion under the ancillary restraints doctrine, which governs the validity of restrictions imposed by a legitimate joint venture on nonventure activities. That doctrine has no application here, where the challenged business practice involves the core activity of the joint venture itself-the pricing of the very goods produced and sold by Equilon. Pp. 1279-1281.

369 F.3d 1108, reversed.

THOMAS, J., delivered the opinion of the Court, in which all other Members joined, except ALITO, J., who took no part in the consideration or decision of the cases.

Joe Sims, Glen D. Nager, Louis K. Fisher, Jones Day,

Case 3:07-cv-04296-MJJ    Document 28-2    Filed 11/01/2007    Page 3 of 5

126 S.Ct. 1276 Page 3
547 U.S. 1, 126 S.Ct. 1276, 164 L.Ed.2d 1, 74 USLW 4147, 2006-1 Trade Cases P 75,143, 06 Cal. Daily Op. Serv. 1650, 2006 Daily Journal D.A.R. 2329
**(Cite as: 547 U.S. 1, 126 S.Ct. 1276)**

Washington, D.C., Robert A. Mittelstaedt, Craig E. Stewart, Martha Boersch, Jones Day, San Francisco, CA, for Petitioner Texaco Inc.

Ronald L. Olson, Bradley S. Phillips, Stuart N. Senator, Paul J. Watford, Munger, Tolles & Olson LLP, Los Angeles, CA, for Petitioner Shell Oil Company.

Daniel R. Shulman, Gregory Merz, Gray, Plant, Mooty Mooty & Bennett, P.A., Minneapolis, MN, Joseph M. Alioto, Alioto Law Firm, San Francisco, CA, for Respondents.For U.S. Supreme Court briefs, see:2005 WL 2229874 (Pet.Brief)2005 WL 2237113 (Pet.Brief)2005 WL 3067186 (Resp.Brief)2005 WL 3464475 (Reply.Brief)2005 WL 3476622 (Reply.Brief)

Justice THOMAS delivered the opinion of the Court.

[1] *3 From 1998 until 2002, petitioners Texaco Inc. and Shell Oil Co. collaborated in a joint venture, Equilon Enterprises, to refine and sell gasoline in the western United States under the original Texaco and Shell Oil brand names. Respondents, a class of Texaco and Shell Oil service station owners, allege that petitioners engaged in unlawful price fixing when Equilon set a single price for both Texaco and Shell Oil brand gasoline. We granted certiorari to determine whether it is *per se* illegal under § 1 of the Sherman Act, 15 U.S.C. § 1, for a lawful, economically integrated joint venture to set the prices at which the joint venture sells its products. We conclude that it is not, and accordingly we reverse the contrary judgment of the Court of Appeals.

I

Historically, Texaco and Shell Oil have competed with one another in the national and international oil and gasoline *4 markets. Their business activities include refining crude oil into gasoline, as well as marketing gasoline to downstream purchasers, such as the service stations represented in respondents' class action.

In 1998, Texaco and Shell Oil formed a joint venture, Equilon, to consolidate their operations in the western United States, thereby ending competition between the two companies in the domestic refining and marketing of gasoline. Under the joint venture agreement, Texaco and Shell Oil agreed to pool their resources and share the risks of and profits from Equilon's activities. Equilon's board of directors would comprise representatives of Texaco and Shell Oil, and Equilon gasoline would be sold to downstream purchasers under the original Texaco and Shell Oil **1279 brand names. The formation of Equilon was approved by consent decree, subject to certain divestments and other modifications, by the Federal Trade Commission, see *In re Shell Oil Co., 125 F.T.C. 769, 1998 WL 34077373 (1998)*, as well as by the state attorneys general of California, Hawaii, Oregon, and Washington. Notably, the decrees imposed no restrictions on the pricing of Equilon gasoline.

After the joint venture began to operate, respondents brought suit in district court, alleging that, by unifying gasoline prices under the two brands, petitioners had violated the *per se* rule against price fixing that this Court has long recognized under § 1 of the Sherman Act, ch. 647, 26 Stat. 209, as amended, 15 U.S.C. § 1. See, e.g.,*Catalano, Inc. v. Target Sales, Inc., 446 U.S. 643, 647, 100 S.Ct. 1925, 64 L.Ed.2d 580 (1980)**(per curiam)*. The District Court awarded summary judgment to Texaco and Shell Oil. It determined that the rule of reason, rather than a *per se* rule or the quick look doctrine, governs respondents' claim, and that, by eschewing rule of reason analysis, respondents had failed to raise a triable issue of fact. The Ninth Circuit reversed, characterizing petitioners' position as a request for an "exception to the *per se* prohibition on price fixing," and rejecting that request. *5*Dagher v. Saudi Refining, Inc., 369 F.3d 1108, 1116 (2004)*. We consolidated Texaco's and Shell Oil's separate petitions and granted certiorari to determine the extent to which the *per se* rule against price fixing applies to an important and increasingly popular form of business organization, the joint venture. 545 U.S. 1138, 125 S.Ct. 2957, 2958, 162 L.Ed.2d 887 (2005).

II

[2][3][4] Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. This Court has not taken a literal approach to this language, however. See, e.g.,*State Oil Co. v. Khan, 522 U.S. 3, 10, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997)* ("[T]his Court has long recognized that Congress intended to outlaw only *unreasonable* restraints" (emphasis added)). Instead, this Court presumptively applies rule of reason analysis, under which antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful. See, e.g.,*id.*, at 10-19, 118 S.Ct.

Case 3:07-cv-04296-MJJ    Document 28-2    Filed 11/01/2007    Page 4 of 5

126 S.Ct. 1276                                                                                                    Page 4
547 U.S. 1, 126 S.Ct. 1276, 164 L.Ed.2d 1, 74 USLW 4147, 2006-1 Trade Cases P 75,143, 06 Cal. Daily Op. Serv.
1650, 2006 Daily Journal D.A.R. 2329
(Cite as: 547 U.S. 1, 126 S.Ct. 1276)

275 (concluding that vertical price-fixing arrangements are subject to the rule of reason, not *per se* liability). *Per se* liability is reserved for only those agreements that are "so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *National Soc. of Professional Engineers v. United States,* 435 U.S. 679, 692, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978). Accordingly, "we have expressed reluctance to adopt *per se* rules ...'where the economic impact of certain practices is not immediately obvious.'" *State Oil, supra,* at 10, 118 S.Ct. 275 (quoting *FTC v. Indiana Federation of Dentists,* 476 U.S. 447, 458-459, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986)).

[5][6] Price-fixing agreements between two or more competitors, otherwise known as horizontal price-fixing agreements, fall into the category of arrangements that are *per se* unlawful. See, *e.g., Catalano, supra,* at 647, 100 S.Ct. 1925. These cases do not present such an agreement, however, because Texaco and Shell Oil did not compete with one another in the relevant market-namely, the sale of gasoline to service stations in the western United States-but instead participated in that *6 market jointly through their investments **1280 in Equilon.[FN1] In other words, the pricing policy challenged here amounts to little more than price setting by a single entity-albeit within the context of a joint venture-and not a pricing agreement between competing entities with respect to their competing products. Throughout Equilon's existence, Texaco and Shell Oil shared in the profits of Equilon's activities in their role as investors, not competitors. When "persons who would otherwise be competitors pool their capital and share the risks of loss as well as the opportunities for profit ... such joint ventures [are] regarded as a single firm competing with other sellers in the market." *Arizona v. Maricopa County Medical Soc.,* 457 U.S. 332, 356, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982). As such, though Equilon's pricing policy may be price fixing in a literal sense, it is not price fixing in the antitrust sense. See *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. 1, 9, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979) ("When two partners set the price of their goods or services they are literally 'price fixing,' but they are not *per se* in violation of the Sherman Act").

FN1. We presume for purposes of these cases that Equilon is a lawful joint venture. Its formation has been approved by federal and state regulators, and there is no contention here that it is a sham. As the court below noted: "There is a voluminous record documenting the economic justifications for creating the joint ventures. [T]he defendants concluded that numerous synergies and cost efficiencies would result" by creating Equilon as well as a parallel venture, Motiva Enterprises, in the eastern United States, and "that nationwide there would be up to $800 million in cost savings annually." 369 F.3d 1108, 1111 (C.A.9 2004). Had respondents challenged Equilon itself, they would have been required to show that its creation was anticompetitive under the rule of reason. See *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 768, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984).

This conclusion is confirmed by respondents' apparent concession that there would be no *per se* liability had Equilon simply chosen to sell its gasoline under a single brand. See Tr. of Oral Arg. 34. We see no reason to treat Equilon differently just because it chose to sell gasoline under two distinct*7 brands at a single price. As a single entity, a joint venture, like any other firm, must have the discretion to determine the prices of the products that it sells, including the discretion to sell a product under two different brands at a single, unified price. If Equilon's price unification policy is anticompetitive, then respondents should have challenged it pursuant to the rule of reason.[FN2] But it would be inconsistent with this Court's antitrust precedents to condemn the internal pricing decisions of a legitimate joint venture as *per se* unlawful.[FN3]

FN2. Respondents have not put forth a rule of reason claim. 369 F.3d, at 1113. Accordingly, we need not address petitioners' alternative argument that § 1 of the Sherman Act is inapplicable to joint ventures.

FN3. Respondents alternatively contend that petitioners should be held liable under the quick look doctrine. To be sure, we have applied the quick look doctrine to business activities that are so plainly anticompetitive that courts need undertake only a cursory examination before imposing antitrust liability. See *California Dental Assn. v. FTC,* 526 U.S. 756, 770, 119 S.Ct. 1604,

Case 3:07-cv-04296-MJJ    Document 28-2    Filed 11/01/2007    Page 5 of 5

126 S.Ct. 1276                                                                              Page 5
547 U.S. 1, 126 S.Ct. 1276, 164 L.Ed.2d 1, 74 USLW 4147, 2006-1 Trade Cases P 75,143, 06 Cal. Daily Op. Serv.
1650, 2006 Daily Journal D.A.R. 2329
(Cite as: 547 U.S. 1, 126 S.Ct. 1276)

143 L.Ed.2d 935 (1999). But for the same reasons that *per se* liability is unwarranted here, we conclude that petitioners cannot be held liable under the quick look doctrine.

The court below reached the opposite conclusion by invoking the ancillary restraints doctrine. 369 F.3d, at 1118-1124. That doctrine governs the validity of restrictions imposed by a legitimate business collaboration, such as a business association or joint venture, on nonventure activities. See, e.g., **1281*National Collegiate Athletic Assn. v. Board of Regents of Univ. of Okla.,* 468 U.S. 85, 113-115, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984); *Citizen Publishing Co. v. United States,* 394 U.S. 131, 135-136, 89 S.Ct. 927, 22 L.Ed.2d 148 (1969). Under the doctrine, courts must determine whether the nonventure restriction is a naked restraint on trade, and thus invalid, or one that is ancillary to the legitimate and competitive purposes of the business association, and thus valid. We agree with petitioners that the ancillary restraints doctrine has no application here, where the business practice being challenged involves the core activity of the joint venture itself-namely, the pricing of the very *8 goods produced and sold by Equilon. And even if we were to invoke the doctrine in these cases, Equilon's pricing policy is clearly ancillary to the sale of its own products. Judge Fernandez, dissenting from the ruling of the court below, put it well:

"In this case, nothing more radical is afoot than the fact that an entity, which now owns all of the production, transportation, research, storage, sales and distribution facilities for engaging in the gasoline business, also prices its own products. It decided to price them the same, as any other entity could. What could be more integral to the running of a business than setting a price for its goods and services?" 369 F.3d, at 1127.

See also *Broadcast Music, supra,* at 23, 99 S.Ct. 1551 ("Joint ventures and other cooperative arrangements are ... not usually unlawful, at least not as price-fixing schemes, where the agreement on price is necessary to market the product at all").

\* \* \*

Because the pricing decisions of a legitimate joint venture do not fall within the narrow category of activity that is *per se* unlawful under § 1 of the Sherman Act, respondents' antitrust claim cannot prevail. Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

Justice ALITO took no part in the consideration or decision of these cases.

U.S.,2006.
Texaco Inc. v. Dagher
547 U.S. 1, 126 S.Ct. 1276, 164 L.Ed.2d 1, 74 USLW 4147, 2006-1 Trade Cases P 75,143, 06 Cal. Daily Op. Serv. 1650, 2006 Daily Journal D.A.R. 2329

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3791437.1