

1  Joseph M. Alioto
   ALIOTO LAW FIRM
2  One Embarcadero Center
   Suite 4000
3  San Francisco, CA 94111-3607
   Telephone   : (415) 434-8900
4
5  Daniel R. Shulman
   Terry M. Walcott
   SHULMAN, WALCOTT & SHULMAN, P.A.
6  121 Franklin Avenue
   Minneapolis, MN 55404
7  Telephone   : (612) 874-2909

8  John H. Boone
   LAW OFFICE OF JOHN H. BOONE
9  One Embarcadero Center
   Fortieth Floor
10 San Francisco, CA 94111
   Telephone   : (415) 434-1133
11
12 Thomas P. Bleau
   BLEAU, FOX & ASSOCIATES, A.P.C.
   3575 Cahuenga Blvd., West, Suite 580
13 Los Angeles, CA 90068
   Telephone   : (323) 874-8613
14
15 Attorneys for Plaintiffs

16

17            UNITED STATES DISTRICT COURT

18            CENTRAL DISTRICT OF CALIFORNIA

19                                 CASE NO: 99-06114 GHK JWJx
   FOUAD N. DAGHER; BISHARAT
20 ENTERPRISES, INC.; ALFRED
   BUCZKOWSKI; ESEQUIEL DELGADO;
21 MAHWASH FARZANEH; NASSER EL-
   RADI; G.G.&R. PETROLEUM, INC.; H.J.F.   COMPLAINT FOR DAMAGES AND
22 INC.; KALECO, CO.; MIKE M. MADANI;      INJUNCTIVE RELIEF UNDER THE
   CARLOS MARQUEZ; SAMI MERHI;            ANTITRUST LAWS
23 EDGARDO R. PARUNGAO; PAUL E.
   PETERSON; RON ABEL SERV. CENTER,
24 INC.; JERRY'S SHELL SERV. CENTER,
   INC; GULLERMO RAMIREZ; LEOPOLOO         JURY TRIAL DEMANDED
25 RAMIREZ; NAZAR SHEIBAINI; SITARA
   MANAGEMENT CORPORATION; TINSEL
26 ENTERPRISES, INC.; QUANG TRUONG;
   and STEVEN RAY VEZERIAN, LOS FELIZ
27 SHELL, INC., NASSIM HANNA,

28              Plaintiffs,

                          -1-

v.

SAUDI REFINING, INC.; TEXACO, INC.;
SHELL OIL COMPANY; MOTIVA
ENTERPRISES LLC; EQUILON
ENTERPRISES LLC; EQUIVA TRADING
COMPANY; and EQUIVA SERVICES LLC,

Defendants.

# I

## INTRODUCTION

1. Plaintiffs bring this action against defendants, Saudi Refining, Inc., Texaco, Inc., Shell Oil Company, Equilon Enterprises LLC, Motiva Enterprises LLC, Equiva Trading Company and Equiva Services LLC, for damages and injunctive relief caused by reason of defendants' violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1. Plaintiffs demand a trial by jury of all issues triable thereby, and for their complaint, allege as follows:

## II

## JURISDICTION

2. This Court has jurisdiction over plaintiffs' Sherman Act claims pursuant to Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C.§§15 and 26, and 28 U.S.C. §1337.

## III

## PLAINTIFFS

3. The plaintiffs are the following individuals and entities, who operate or have operated the following Shell or Texaco branded marketing premises and franchises at the following locations:

| | Plaintiff's Name | Station Brand | Leased Marketing Premises Yes/No | Station Location |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | Fouad N. Dagher | Shell | Yes | Dagher Shell #2 |
| 6 | | | | 916 Santa Anita |
| 7 | | | | Arcadia, CA  01006 |
| 8 | | | | |
| 9 | Bisharat | Shell | Yes | Arcadia Shell Service |
| 10 | Enterprises, Inc. | | | 25 East Foothill Boulevard |
| 11 | | | | Arcadia, CA  91006 |
| 12 | | | | |
| 13 | Alfred Buczkowski | Shell | Yes | Oakview Shell |
| 14 | | | | 905 North Ventura Avenue |
| 15 | | | | Oakview, CA  93022 |
| 16 | | | | |
| 17 | Los Feliz Shell, | Shell | Yes | Los Feliz Shell, Inc. |
| 18 | Inc. | | | 3053 Los Feliz Boulevard |
| 19 | | | | Los Angeles, CA 90039 |
| 20 | | | | |
| 21 | Nassim Hanna | Shell | Yes | Hanna Shell |
| 22 | | | | 1410 South Soto Street |
| 23 | | | | Los Angeles, CA 90023 |
| 24 | | | | |
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |
| 28 | | | | |

| | | | | |
|---|---|---|---|---|
| 1 | Esequiel Delgado | Shell | Yes | Delgado Shell Service |
| 2 | | | | 4357 East Brooklyn Avenue |
| 3 | | | | Los Angeles, CA 90022 |
| 4 | | | | |
| 5 | Nasser El-Radi | Shell | Yes | Delamo Shell |
| 6 | | | | 5910 Dell |
| 7 | | | | Lakewood, CA 90713 |
| 8 | | | | |
| 9 | Carlos Marquez | Shell | Yes | Marquez Shell #12 |
| 10 | | | | 2600 Pellissier Place |
| 11 | | | | Industry, CA 91746 |
| 12 | | | | |
| 13 | Fouad N. Dagher | Shell | Yes | Dagher Shell #5 |
| 14 | | | | 5533 East Washington Blvd. |
| 15 | | | | Commerce, CA 90040 |
| 16 | | | | |
| 17 | Tinsal Enterprises, | Shell | Yes | N. Hill Shell |
| 18 | Inc. | | | 16961 Devonshire Street |
| 19 | | | | Granada Hills, CA 91344 |
| 20 | | | | |
| 21 | Fouad N. Dagher | Shell | Yes | Dagher Shell #10 |
| 22 | | | | 1900 East Ceasar Chavez |
| 23 | | | | Los Angeles, CA 90033 |
| 24 | | | | |
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |
| 28 | | | | |

| | | | |
|---|---|---|---|
| 1 | Mahwash Farzaneh | Shell | Yes | Lawndale Shell |
| 2 | | | | 15808 South Inglewood |
| 3 | | | | Lawndale, CA 90260 |
| 4 | | | | |
| 5 | | | | |
| 6 | Fouad N. Dagher | Shell | Yes | Dagher Shell #4 |
| 7 | | | | 2219 Garfield |
| 8 | | | | Monterey Park, CA 91754 |
| 9 | | | | |
| 10 | Nasser El-Radi | Shell | Yes | Shell 4U |
| 11 | | | | 430 Petrogrande |
| 12 | | | | Monterey Park, CA 91754 |
| 13 | | | | |
| 14 | Carlos Marquez | Shell | Yes | Marquez Shell #7 |
| 15 | | | | 3701 East Valley Boulevard |
| 16 | | | | West Covina, CA 91744 |
| 17 | | | | |
| 18 | | | | |
| 19 | Nasser El-Radi | Shell | Yes | UR Shell |
| 20 | | | | 9305 East Firestone |
| 21 | | | | Downey, CA 90241 |
| 22 | | | | |
| 23 | | | | |
| 24 | G.G.&R | Shell | Yes | Holiday Shell Service |
| 25 | Petroleum, Inc. | | | 800-M East Lugenia Avenue |
| 26 | | | | Redlands, CA 92374 |
| 27 | | | | |
| 28 | | | | |

| | | | |
|---|---|---|---|
| 1 | H.J.F. Inc. | Shell | Yes | Simi Shell Food Mart |
| 2 | | | | 1120 East Los Angeles Avenue |
| 3 | | | | Simi Valley, CA 93065-2802 |
| 4 | | | | |
| 5 | Kaleco, Co. | Shell | Yes | Camarillo Shell |
| 6 | | | | 1604 Ventura Boulevard |
| 7 | | | | Camarillo, CA 93010 |
| 8 | | | | |
| 9 | Mike M. Madani | Texaco | No | South Bay Texaco |
| 10 | | | | 1700 Artesia Boulevard |
| 11 | | | | Redondo Beach, CA 90278 |
| 12 | Quang Truong | Shell | Yes | Kathleen's Shell |
| 13 | | | | 4405 North Maine Avenue |
| 14 | | | | Baldwin Park, CA 91706 |
| 15 | | | | |
| 16 | Fouad N. Dagher | Shell | Yes | Dagher Shell #13 |
| 17 | | | | 8801 Lanewood |
| 18 | | | | Downey, CA 90240 |
| 19 | | | | |
| 20 | Carlos Marquez | Shell | Yes | Marquez Shell #13 |
| 21 | | | | 19910 Beach Boulevard |
| 22 | | | | La Mirada, CA 90638 |

| | | | |
|---|---|---|---|
| Sami Merhi | Shell | Yes | Del Amo Shell |
| | | | 20225 South Avalon |
| | | | Carson, CA 90745 |
| | | | |
| Steven Ray Vezerian | Shell | Yes | Steve's Shell Service |
| | | | 800 West Las Tunas Avenue |
| | | | San Gabriel, CA 91776 |
| | | | |
| Guillermo Ramierez | Shell | Yes | West Covina Shell |
| | | | 801 South Glendora Avenue |
| | | | West Covina, CA 91790 |
| | | | |
| Edgardo R. Parungao | Shell | Yes | Gardy's Shell Service |
| | | | 7511 East Rosecrans Avenue |
| | | | Paramount, CA 90723 |
| | | | |
| Fouad N. Dagher | Shell | Yes | Dagher Shell #9 |
| | | | 631 North Garfield |
| | | | Monterey Park, CA 91754 |
| | | | |
| Sitara Management Corporation | Shell | Yes | Ventura/Shoup Shell |
| | | | 22330 Ventura Boulevard |
| | | | Woodland Hills, CA 91364 |

| | | | |
|---|---|---|---|
| 1 | Paul E. Peterson | Shell | Yes | West Torrance Shell |
| 2 | | | | 20805 South Anza Avenue |
| 3 | | | | Torrance, CA  90503 |
| 4 | | | | |
| 5 | | | | |
| 6 | Ron Abel Serv. | Shell | Yes | Ron Abel's #2 |
| 7 | Center, Inc. | | | 21924 Devonshire Street |
| 8 | | | | Chatsworth, CA  90311 |
| 9 | Jerry's Shell Serv. | Shell | Yes | Jerry's Shell |
| 10 | Center, Inc. | | | 5161 Van Nuys Boulevard |
| 11 | | | | Sherman Oaks, CA  91403 |
| 12 | | | | |
| 13 | Guillermo Ramirez | Shell | Yes | Ramirez Shell Autocare |
| 14 | | | | 12004 East Ramona Boulevard |
| 15 | | | | El Monte, CA  91732 |
| 16 | Leopoloo Ramirez | Shell | Yes | Ramirez Shell |
| 17 | | | | 3660 North Puente Avenue |
| 18 | | | | Baldwin Park, CA  91706 |
| 19 | | | | |
| 20 | Nazar Sheibaini | Texaco | Yes | Camarillo Texaco |
| 21 | | | | 256 Carmen Drive |
| 22 | | | | Camarillo, CA  93010 |
| 23 | | | | |
| 24 | Sitara Management | Shell | Yes | Camarillo/Tujunga Shell |
| 25 | Corporation | | | 11339 Camarillo Street |
| 26 | | | | North Hollywood, CA  91602 |
| 27 | | | | |
| 28 | | | | |

| | | | |
|---|---|---|---|
| Tinsal Enterprises, Inc. | Shell | Yes | Victoria Shell 2440 South Victoria Ventura, CA  93003 |
| Fouad N. Dagher | Shell | Yes | Dagher Shell #7 1401 South Garfield Alhambra, CA 91803 |

4.  Each individual plaintiff is a resident of the state of California and the Central District of California.

5.  Each corporate plaintiff is organized, exists, and doing business under the laws of the state of California, with its principal place of business located in the Central District of California.

6.  Each plaintiff who currently operates Shell branded marketing premises, at all times relevant herein, has been in a franchise relationship with Shell Oil Co. or its assignee Equilon Enterprises LLC, and since approximately January 1998 has purchased wholesale Shell branded gasoline from Equilon for resale to the general public.

7.  Each plaintiff who currently operates Texaco branded marketing premises, at all times relevant herein, has been in a franchise relationship with Texaco, Inc. or its assignee Equilon Enterprises LLC, and since approximately January 1998 has purchased wholesale Texaco branded gasoline from Equilon for resale to the general public.

## IV

## DEFENDANTS

### Saudi Refining, Inc.

8.  Defendant SAUDI REFINING, INC. ("Saudi") is a limited liability corporation with its headquarters and principal place of business in Houston, Texas.  It is a corporate affiliate of Saudi Aramco, the state-owned oil company of the Kingdom of Saudi Arabia, the principal member of OPEC, the international oil cartel.

9. Saudi is, and at all times relevant herein, has been directly or indirectly engaged in the business of exploring for and producing crude oil, transporting crude oil, and refining, transporting, storing, and marketing petroleum products, including gasoline, in the United States.

10. Saudi, as part of Saudi Aramco, is one of the world's leading oil and natural gas producers, with substantial manufacturing, transportation and marketing functions.

11. The Chairman of Saudi met with the Chairmen of Shell and Texaco for the purpose of forming and organizing a combination with Shell and Texaco in the refining and marketing of gasoline.

12. The Chairman of Saudi knew and understood that the effect of the agreement with Shell and Texaco would be the elimination of competition between and among Saudi, Texaco and Shell in the refining and marketing of gasoline in the United States.

13. The Chairman of Saudi knew and understood that the agreement with Shell and Texaco was an agreement among competitors to fix the price of gasoline sold to the independent Texaco and Shell retail dealers.

14. The Chairman of Saudi knew and understood that the agreement with Shell and Texaco was an agreement among competitors to divide markets in the United States.

15. The Chairman of Saudi knew and understood that the agreement with Shell and Texaco was an agreement among competitors to divide customers in the United States.

16. Saudi in fact combined with Shell and Texaco to fix the price of gasoline sold to the independent Shell and Texaco retail dealers in the United States.

17. Saudi in fact combined with Shell and Texaco to divide markets in the United States.

18. Saudi in fact combined with Shell and Texaco to divide customers in the United States.

### Shell Oil Co.

19. Defendant SHELL OIL COMPANY ("Shell") is a corporation organized, existing, and doing business under the laws of the state of Delaware, with its headquarters and principal place of business at One Shell Plaza, Houston, Texas. Shell is a subsidiary of the Royal Dutch/Shell Group which is composed of Royal Dutch Petroleum Company (domiciled in the Netherlands) and The

1    "Shell" Transport and Trading Company (domiciled in the United Kingdom).

2        20.  Shell is, and at all times relevant herein, has been engaged in the business of exploring

3    for and producing crude oil, transporting crude oil, and refining, transporting, storing, and

4    marketing petroleum products, including gasoline, in the state of California and throughout the

5    United States.

6        21.  Shell, as part of Royal Dutch/Shell Group, is one of the world's leading oil and natural

7    gas producers, with substantial manufacturing, transportation and marketing functions.

8        22.  The Chairman of Shell met with the Chairmen of Saudi and Texaco for the purpose of

9    forming and organizing a combination with Saudi and Texaco in the refining and marketing of

10   gasoline.

11       23.  The Chairman of Shell knew and understood that the effect of the agreement with

12   Saudi and Texaco would be the elimination of competition between and among Saudi, Texaco and

13   Shell in the refining and marketing of gasoline in the United States.

14       24.  The Chairman of Shell knew and understood that the agreement with Saudi and

15   Texaco was an agreement among competitors to fix the price of gasoline sold to the independent

16   Texaco and Shell retail dealers.

17       25.  The Chairman of Shell knew and understood that the agreement with Saudi and

18   Texaco was an agreement among competitors to divide markets in the United States.

19       26.  The Chairman of Shell knew and understood that the agreement with Saudi and

20   Texaco was an agreement among competitors to divide customers in the United States.

21       27.  Shell in fact combined with Saudi and Texaco to fix the price of gasoline sold to the

22   independent Shell and Texaco retail dealers in the United States.

23       28.  Shell in fact combined with Saudi and Texaco to divide markets in the United States.

24       29.  Shell in fact combined with Saudi and Texaco to divide customers in the United

25   States.

26                                    **Texaco, Inc.**

27       30.  Defendant, TEXACO, INC. ("Texaco") is a corporation organized, existing, and

28   doing business under the laws of the state of Delaware, with its headquarters and principal place of

                                        -11-

1    business at 2000 Westchester Avenue, White Plains, New York.

2         31. Texaco is, and at all times relevant herein, has been engaged in the business of

3    exploring for and producing crude oil, transporting crude oil, and refining, transporting, storing,

4    and marketing petroleum products, including gasoline, in the State of California and throughout

5    the United States.

6         32. Texaco is one of the world's leading oil and natural gas producers, with substantial

7    manufacturing, transportation and marketing functions.

8         33. The Chairman of Texaco met with the Chairmen of Saudi and Shell for the purpose of

9    forming and organizing a combination with Saudi and Texaco in the refining and marketing of

10   gasoline.

11        34. The Chairman of Texaco knew and understood that the effect of the agreement with

12   Saudi and Shell would be the elimination of competition between and among Saudi, Texaco and

13   Shell in the refining and marketing of gasoline in the United States.

14        35. The Chairman of Texaco knew and understood that the agreement with Saudi and

15   Shell was an agreement among competitors to fix the price of gasoline sold to the independent

16   Texaco and Shell retail dealers.

17        36. The Chairman of Texaco knew and understood that the agreement with Saudi and

18   Shell was an agreement among competitors to divide markets in the United States.

19        37. The Chairman of Texaco knew and understood that the agreement with Saudi and

20   Shell was an agreement among competitors to divide customers in the United States.

21        38. Texaco in fact combined with Saudi and Shell to fix the price of gasoline sold to the

22   independent Shell and Texaco retail dealers in the United States.

23        39. Texaco in fact combined with Saudi and Shell to divide markets in the United States.

24        40. Texaco in fact combined with Saudi and Shell to divide customers in the United

25   States.

26                        **Equilon Enterprises LLC**

27        41. Defendant EQUILON ENTERPRISES LLC ("Equilon") is a limited liability

28   corporation with its headquarters and principal place of business in Houston, Texas.

-12-

42. Equilon is a combination between Texaco and Shell that combines their western and mid-western refining, transportation, terminal (storage), and marketing operations and assets. Shell owns 56 percent of Equilon, and Texaco owns the other 44 percent.

43. Equilon began operating during January 1998. Since that time, it has been in the business of refining, transporting, storing, and marketing petroleum products, including gasoline, in the state of California and other western and mid-western states.

44. Equilon refines and markets gasoline and other petroleum products under both the Shell and Texaco brand names in all or parts of 32 states, selling products to 9,002 Shell and Texaco retail outlets.

45. Equilon is the fourth largest retail gasoline marketer and the fourth largest refiner in the United States.

46. Equilon's annual gross revenue is approximately $22 billion.

47. Equilon is number one in market share in Oregon, Arizona, Nebraska, Oklahoma, Missouri, Arkansas and Kentucky. Equilon is number two in market share in Alaska, Hawaii, California, Nevada, Idaho, Wyoming, Colorado, New Mexico, Indiana and Illinois.

48. Equilon has seven refineries, refining approximately 846,000 barrels per day. Equilon owns 76 terminals for crude oil and refined products in the United States.

49. Equilon owns an interest, with its competitors, in 45,600 miles of pipeline throughout the United States.

50. Equilon is a combination, in the form of a trust or otherwise, used by Shell and Texaco to fix the price of gasoline sold to the independent Shell and Texaco retail dealers in the western and midwestern states of the United States.

### Motiva Enterprises LLC

51. Defendant MOTIVA ENTERPRISES LLC ("Motiva") is a limited liability corporation with its headquarters and principal place of business in Houston, Texas.

52. Motiva is a combination between Texaco, Saudi and Shell that combines their eastern United States and Gulf Coast refining, transportation, terminal (storage), and marketing operations and assets. Shell owns 35 percent of Motiva, and Texaco and Saudi each own 32.5 percent.

53. Motiva began operations during July 1998. Since that time, Motiva has been in the business of refining, transporting, storing, and marketing petroleum products, including gasoline, in the Gulf Coast and eastern United States.

54. Motiva refines and markets gasoline under the Shell and Texaco brand names in 27 states of the United States, selling products to 13,900 Shell and Texaco retail outlets.

55. Motiva is the second largest retail gasoline marketer and the eighth largest refiner in the United States.

56. Motiva's annual gross revenue is approximately $11 billion.

57. Motiva is number one in market share in Texas, Louisiana, Alabama, Mississippi, Tennessee, Florida, North Carolina, Rhode Island, New Jersey, Maryland and Delaware.

58. Motiva is number two in market share in Georgia, Virginia, Pennsylvania, New Hampshire, Vermont, Massachusetts and Connecticut.

59. Motiva has four refineries, refining approximately 819,000 barrels per day. Motiva has 50 terminals for crude oil and refined products in the United States.

60. Motiva is a combination, in the form of a trust or otherwise, used by Saudi, Texaco and Shell to fix the price of gasoline sold to the independent Shell and Texaco retail dealers in the eastern and Gulf coast states of the United States.

**Equiva Trading Co.**

61. Defendant EQUIVA TRADING COMPANY ("Equiva Trading") is a general partnership headquartered in Houston, Texas, with offices in Universal City and Burbank, California; and Calgary, Canada.

62. Equilon and Motiva are the general partners in Equiva Trading, each having a 50 percent interest. Equiva Trading became operational in July 1998 and provides supply and trading services to Equilon, Motiva and affiliates of Texaco and Shell.

63. Equiva Trading was formed with the purpose and effect of eliminating competition in the supply and trading services to the Equilon and Motiva combines, and to the affiliates of Saudi, Texaco and Shell.

**Equiva Services LLC**

-14-

1    64. Defendant EQUIVA SERVICES LLC ("Equiva Services") is a limited liability

2    corporation with its headquarters and principal place of business in Houston, Texas.

3    65. Equiva Services is 50 percent owned by Equilon and 50 percent owned by Motiva. It

4    began operations in July 1998, and provides economic and business research, facilities

5    management, financial, human resources, information technology, legal, marketing, and safety,

6    health and environmental services for Equilon and Motiva.

7    66. Equiva Services was formed with the purpose and effect of eliminating competition in

8    services provided to the Equilon and Motiva combines, and to the affiliates of Saudi, Texaco and

9    Shell.

10                                       V

11                           CO-CONSPIRATORS

12    67.    Plaintiffs are informed and believe that persons whose identities are at this time

13    unknown have engaged with defendants in the violations alleged herein. Plaintiffs may at a later

14    time amend this complaint to add said unknown co-conspirators as defendants when and if they

15    become known.

16                                       VI

17                  THE SHELL/TEXACO/SAUDI COMBINATIONS

18    68. In or about October 1996, at a place and time unknown to plaintiffs, Saudi, Shell and

19    Texaco met and entered into an agreement to raise, fix, peg, and stabilize gasoline prices.

20    69. In or about October 1996, Saudi, Shell and Texaco formed their combinations,

21    combining their refining, transportation, terminal (storage), and marketing operations and assets in

22    the United States.

23    70. On or about March 1997, Shell and Texaco entered into a Memorandum of

24    Understanding regarding the formation of a combination to be known as "Westco," which later

25    was renamed "Equilon." Westco was to be organized as a limited liability corporation into which

26    Texaco and Shell would contribute their refining, transportation, terminal (storage), and marketing

27    operations and assets in the western and mid-western United States (roughly corresponding with

28    Petroleum Administration for Defense Districts ("PADDs") II, IV, and V).

71.  On or about July 16, 1997, Shell, Texaco, and Saudi entered into a Memorandum of Understanding regarding the formation of a combination to be called "Eastco," which later was renamed "Motiva." Eastco was to be organized as a limited liability corporation into which Saudi, Shell, and Texaco would contribute their refining, transportation, terminal (storage), and marketing operations and assets in the Gulf Coast and eastern United States (roughly corresponding to PADDs I and III).

72.  At some point during or after January 1998, Texaco and Shell sold, transferred or assigned to Equilon (formerly Westco) their interests in the marketing premises leased to plaintiffs, as well as their interests in and obligations under each plaintiff's franchise agreements.

73.  With regard to those plaintiffs that operate leased marketing premises, prior to and after transferring those premises to Equilon, neither Shell nor Texaco made bona fide offers to sell, transfer, or assign their interests in the premises to plaintiffs.

74.  Equilon was formed for the purpose and with the effect of eliminating competition between and among Saudi, Texaco and Shell in the refining and marketing of gasoline in the United States.

75.  One of the purposes of Shell and Texaco in forming Equilon was to fix prices between themselves on gasoline sold to the independent Shell and Texaco branded dealers.

76.  Shell and Texaco agreed that Equilon would fix the price at which gasoline is sold to the independent Shell and Texaco branded dealers in the western and mid-western states of the United States.

77.  Equilon fixes the price at which gasoline is sold to the independent Shell and Texaco branded dealers in the western and mid-western states of the United States.

78.  Motiva was formed for the purpose and with the effect of eliminating competition between and among Saudi, Texaco and Shell in the refining and marketing of gasoline in the United States.

79.  One of the purposes of Saudi, Shell and Texaco in forming Motiva was to fix prices between and among themselves on gasoline sold to the independent Shell and Texaco branded dealers.

-16-

80. Saudi, Shell and Texaco agreed that Motiva would fix the price at which gasoline is sold to the independent Shell and Texaco branded dealers in the Gulf and east coast states of the United States.

81. Motiva fixes the price at which gasoline is sold to the independent Shell and Texaco branded dealers in the Gulf and east coast states of the United States.

## VII

## TRADE AND COMMERCE

82. The exploration, production, transportation, storage, refining, distribution, marketing, and selling of crude oil and gasoline is carried on in and substantially affects interstate and foreign commerce, and that the combination and conspiracy among and between Saudi, Texaco, and Shell, to fix the price of gasoline sold to retail dealers substantially affects, impedes, and unreasonably restrains the free flow of crude oil and gasoline between and among the various states of the United States, and foreign countries and the United States.

83. Entry into the refining and marketing of gasoline is difficult and would not be timely, likely, or sufficient to prevent anticompetitive effects in those markets.

84. By reason of the violations alleged herein, plaintiffs have paid and continue to pay higher wholesale prices for branded gasoline than they would in a free and competitive market.

85. Since the launch of the Equilon combination, wholesale and retail prices of gasoline sold in the state of California have increased substantially.

86. During that same period, total statewide refinery production and inventories of gasoline rose compared to the same period in the previous year, refinery margins increased, and crude oil prices decreased.

87. Beginning at least during the last two years, crude oil prices, when adjusted for inflation, dropped to their lowest levels since the Great Depression of the 1930's.

88. During the time that crude oil prices were dropping to their lowest levels since the Great Depression, Saudi, Shell and Texaco, by and through Equilon and Motiva, agreed to and did in fact fix and raise the price of gasoline sold to the independent Shell and Texaco branded retail dealers.

1      89. Before Equilon and Motiva were formed, Saudi, Texaco and Shell were actual

2    competitors.

3      90. Saudi, Shell and Texaco combined and conspired to form Motiva and Equilon as the

4    means to fix prices on gasoline sold to the independent Shell and Texaco retail dealers.

5      91. Saudi, Shell and Texaco combined and conspired to form Motiva and Equilon as the

6    means to divide markets and customers.

7      92. Saudi, Shell and Texaco did what they combined and conspired to do.

8      93. Motiva and Equilon combined, conspired and contracted to fix the price of gasoline

9    sold to the independent Texaco and Shell dealers in the United States.

10      94. Motiva and Equilon combined, conspired and contracted to divide the markets in the

11    United States.

12      95. Motiva and Equilon combined, conspired and contracted to divide customers in the

13    United States.

14      96. Motiva and Equilon, as a combination, do the following:

15          (a) Market gasoline in all 50 states of the United States under both the Shell and

16          Texaco brand names;

17          (b) Rank number one in national market share for branded gasoline, refining

18          capacity and lubricant sales;

19          (c) Have annual gross revenue of approximately $33 billion;

20          (d) Provide product to 22,903 Texaco and Shell branded retail outlets;

21          (e) Own 11 refineries with a total refining capacity of 1,665,270 barrels per day;

22          (f) Own or have an interest in 126 crude oil and product terminals;

23          (g) Have ownership interests with their competitors in 45,600 miles of pipeline

24      97. By reason of the combination and conspiracy among Saudi, Texaco and Shell to fix

25    prices by and through their combinations, Equilon and Motiva, independent Shell and Texaco

26    branded retailers paid more for their gasoline than they would have in a free and competitive

27    market.

28      98. After acquiring plaintiffs' marketing premises and franchise agreements from Shell and

1  Texaco, Equilon also imposed substantial rent increases upon each plaintiff operating leased

2  marketing premises.

3       99.  Furthermore, each plaintiff operating leased marketing premises has been deprived of

4  an opportunity to acquire such premises.  Franchisee ownership of marketing premises, as opposed

5  to leasing such premises from a franchisor, substantially increases the value of a gasoline station

6  business because it gives the owner-franchisee the freedom to negotiate arms length franchise

7  agreements or supply contracts with any oil company franchisor on much better terms for the

8  franchisee.

9       100.  By reason of the violations alleged herein, plaintiffs have sustained injury to their

10  businesses and property in amounts yet to be ascertained, but including the loss of sales, profits,

11  and business goodwill, increased rent, increased prices paid to defendants for gasoline and other

12  petroleum products, the value of their businesses as going concerns, the increased costs of doing

13  business, including any debts incurred.

14       101.  Prior to the Equilon and other combinations outlined above, Shell and Texaco were

15  actual competitors.

16                 **VIII**

17        **SECTION 1 OF THE SHERMAN ACT**

18       102.  Each of the Equilon and Motiva combinations described hereinabove constitutes a

19  contract, combination or conspiracy by Saudi, Shell and Texaco to raise, fix, peg, or stabilize

20  prices in *per se* violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. Sec. 1.

21       103.  The Equilon and Motiva combinations constitute contracts, combinations or

22  conspiracies between and among defendants, Saudi, Texaco, Shell, Equilon, Motiva, Equiva

23  Trading and Equiva Services, to raise, fix, peg, or stabilize prices in per se violation of Section 1 of

24  the Sherman Antitrust Act, 15 U.S.C. Section 1.

25       104.  Each Chairman of Saudi, Texaco and Shell knew of and approved of the price fixing

26  agreement.

27       105.  The Equilon and Motiva combinations constitute contracts, combinations or

28  conspiracies between and among defendants, Saudi, Texaco, Shell, Equilon, Motiva, Equiva

1  Trading and Equiva Services, to divide markets in per se violation of Section 1 of the Sherman

2  Antitrust Act, 15 U.S.C. Section 1.

3       106. Each Chairman of Saudi, Texaco and Shell knew of and approved of the agreement

4  to divide markets.

5       107. The Equilon and Motiva combinations constitute contracts, combinations or

6  conspiracies between and among defendants, Saudi, Texaco, Shell, Equilon, Motiva, Equiva

7  Trading and Equiva Services, to divide customers in per se violation of Section 1 of the Sherman

8  Antitrust Act, 15 U.S.C. Section 1.

9       108. Each Chairman of Saudi, Texaco and Shell knew of and approved of the agreement

10  to divide customers.

11       109. The overall conduct of defendants described above also constitutes a contract,

12  combination or conspiracy to raise, fix, peg, or stabilize prices in *per se* violation of Section 1 of

13  the Sherman Antitrust Act, 15 U.S.C. Sec. 1.

14  **IX**

15  **PRAYER FOR RELIEF**

16  WHEREFORE, plaintiffs pray for relief as follows:

17      (a)    that the jury find and this Court adjudge and decree that defendants have violated

18             Section 1 of the Sherman Antitrust Act, 15 U.S.C. Sec. 1;

19      (b)    that plaintiffs recover actual damages as the jury shall find them to have sustained

20             and that the damages be trebled pursuant to Section 4 of the Clayton Act;

21      (c)    that the Court issue a permanent injunction dissolving Equilon, Motiva, Equiva

22             Trading, and Equiva Services pursuant to Section 16 of the Clayton Act;

23      (d)    that the Court issue a permanent injunction enjoining and prohibiting defendants

24             from contracting, combining, and conspiring to raise, fix, peg, or stabilize prices;

25      (e)    that the Court issue a permanent injunction enjoining and prohibiting defendants

26             from contracting, combining, and conspiring to fix plaintiffs' rents at artificially high

27             and noncompetitive levels;

28      (f)    that the Court issue a permanent injunction requiring defendants to allow any dealer

-20-

1    to rebrand, without any penalty;

2    (g)    that the Court award plaintiffs their costs of suit herein, including reasonable

3    attorneys' fees pursuant to Section 4 of the Clayton Act; and

4    (h)    that the Court award plaintiffs such other and further relief as it shall deem just and

5    appropriate.

6

7

8    Dated: June 14, 1999                    ALIOTO LAW FIRM
                                             SHULMAN, WALCOTT & SHULMAN, P.A.
9                                            LAW OFFICE OF JOHN H. BOONE
                                             BLEAU, FOX & ASSOCIATES
10

11

12    By: _____
13        Joseph M. Alioto, Esq.

14

15

16

17                          **DEMAND FOR JURY**

18    NOTICE IS HEREBY GIVEN that the plaintiffs in the above-entitled action demand a trial

19    by jury in the above-entitled action.

20

21    Dated: June 14, 1999                    ALIOTO LAW FIRM
                                             SHULMAN, WALCOTT & SHULMAN, P.A.
22                                           LAW OFFICE OF JOHN H. BOONE
                                             BLEAU, FOX & ASSOCIATES
23

24

25    By: _____
26        Joseph M. Alioto, Esq.

27

28

-21-