UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - - -

BEFORE THE HONORABLE GEORGE H. KING

UNITED STATES DISTRICT JUDGE

CERTIFIED COPY

FOUAD DAGHER, et al., )
PLAINTIFFS, )
)
VS. ) CASE NO.
) CV-99-6114-GHK
SAUDI REFINING, INC., et al., )
DEFENDANTS. )
_______________________________)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTION BY DEFENDANT TO DISMISS

LOS ANGELES, CALIFORNIA

MONDAY, DECEMBER 6, 1999

IRENE NAKAMURA, CSR
OFFICIAL U.S. REPORTER
1179 ROYBAL FEDERAL BUILDING
255 EAST TEMPLE STREET
LOS ANGELES, CA 90012
(213) 894-6052

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFF:

ALIOTO LAW FIRM
BY: JOSEPH M. ALIOTO, ESQ.
ONE EMBARCADERO CENTER
SUITE 4000
SAN FRANCISCO, CA 94111
(415) 434-8900

FOR THE DEFENDANT TEXACO, INC.:

HOWREY & SIMON
BY: ALAN M. GRIMALDI, ESQ.
1299 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20004
(202) 783-0800

FOR THE DEFENDANT SHELL OIL COMPANY:

MUNGER, TOLLES & OLSON, LLP
BY: STUART N. SENATOR, ESQ.
355 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071
(213) 683-9100

APPEARANCES OF COUNSEL: (CONTINUED)

FOR THE DEFENDANT SAUDI REFINING, INC.:

WHITE & CASE
BY: MICHAEL S. SHUSTER, ESQ.
1155 AVENUE OF THE AMERICAS
NEW YORK, NY 10036
(212) 819-8200

FOR THE DEFENDANT EQUALON, MOTIVA, EQUIVA SERVICES and EQUIVA TRADING:

BAKER & HOSTETLER, LLP
BY: PETER W. JAMES, ESQ.
600 WILSHIRE BOULEVARD
LOS ANGELES, CA 90017
(213) 624-2400

INDEX

PAGE

RE:

MOTION BY DEFENDANT TO DISMISS 4

LOS ANGELES, CALIFORNIA; MONDAY, DECEMBER 6, 1999

9:30 A.M. SESSION

-- o0o --

(CALL TO ORDER OF THE COURT.)

THE CLERK: Calling No. 1 on The Court's calendar, civil 99-6114-GHK, Dagher versus Saudi Refining Company, Inc., et al.

Counsel, would you please state your appearances for the record and the party you are representing.

MR. ALIOTO: May it please Your Honor, Joseph Alioto for the plaintiffs.

THE COURT: Good morning, Counsel.

MR. GRIMALDI: Good morning. Allan Grimaldi for Texaco, Inc.

THE COURT: Good morning.

MR. JAMES: Good morning, Your Honor. Peter James of Baker & Hostetler for Equiva Services, Equiva Trading, Motiva, and Equilon.

THE COURT: Good morning.

MR. SENATOR: Good morning, Your Honor. Stuart Senator of Munger, Tolles and Olson for the Shell Company.

THE COURT: Good morning.

MR. SHUSTER: Good morning, Your Honor.

Michael Shuster of White and Case for Saudi Refining, Inc.

THE COURT: Good morning.

This is matter is on The Court's calendar to consider a series of motions in these matters. In my last count, there were five of them. I hope I haven't missed any. Let's see, we're all on the same page.

First we have a joint motion to dismiss, and I think we have a motion to dismiss by Equilon, a motion to dismiss by Motiva, that is 12(b)(6), motion to dismiss for lack of personal jurisdiction as to Motiva, and motion to dismiss by the -- what I call the Equiva entities. All right.

Let me -- first of all, Counsel, the issues tend to -- in some way, in some respects overlap as we talk about these motions. Especially if we start with the joint motion, some of the issues, tend to overlap. Some of them are legal issues; some are perhaps pleading issues.

Let me start with the joint motion and maybe I can start with you, Mr. Alioto. We can discuss certain things here, and then to some extent, we may be touching upon some of the issues that might really be pertinent also to Equilon and Motiva's 12(b)(6)

motions and Equiva's motion as well.

As we are discussing these matters to the extent that we discuss it within -- within any, context, we're not going to repeat it. I have limited time. I know there are a lot of lawyers here. Everybody wants to be heard, I'm sure, to some extent, but, so let's get going with Mr. Alioto --

MR. ALIOTO: Thank you, Your Honor.

THE COURT: -- on the joint motion.

Let me tell you what my sense of it is, and then I'll give you an opportunity to respond, and during the course of your response, I may have particular questions that I want to ask you. I hope you understand that if I interrupt you, it's not because I want to be rude, but given the limited time, I want to get to the point that I really want to get some answers to.

MR. ALIOTO: Very good, Your Honor.

THE COURT: My first question to you is that, you know, and this really applies to both sides. My sense of it is that this is not the appropriate time, given the facts of this case even as plead. This is not the appropriate time for me to be making any ultimate decisions as to whether the ultimate analysis in this case, section 1 case will be per se

or quick look and we'll go through these.

I think the allegations here, despite the fact that there are allegations of price fixing, nevertheless, also include allegations of joint activity. I know you didn't say "joint ventures" specifically, but the allegations of the jointly undertaken activity between the -- what shall I say -- the three main defendants at least at this point suggested, somewhere along the line, it might be that the analysis would not be per se, but would be the Rule of Reason.

On the other hand, I cannot say, at this point, that it would absolutely be the Rule of Reason at the end of the day. Because there are perhaps factual developments that will have to be made in terms of whether or not this is really an integrated contractual agreement, whether or not it is an agreement which has some potential or pro-competitive benefits, and whether the particular restraint that we are talking about in this case, perhaps the price fixing, perhaps the alleged marketing allocation are really ancillary to that agreement or not. I just don't see it that we can take care of this in the 12(b)(6) time, so that is where I am on that. Now that is the background.

Beyond that then, what we are looking at is really a matter of pleading, at least at this point. A matter of pleading then, in this case, is my question to you then, Mr. Alioto, which I would like you to take a look at and address with The Court, is -- let's talk about the price-fixing aspect.

Well, let me back up. Are you satisfied to proceed in this case solely on the theories -- not the theories, solely under a per se analysis or even a quick look analysis, so that if I determine that you have not sufficiently plead under the Rule of Reason analysis, that you are going to tell me, I am so confident at the end of the day, this is only going to be the analysis applicable that I don't even want to take a shot at improving my pleadings on the Rule of Reason, if I were to determine that you need to improve on your pleadings under the Rule of Reason?

MR. ALIOTO: Frankly, Your Honor, our approach to it is exactly that.

THE COURT: Which is?

MR. ALIOTO: It is our view -- it is our view that this is a simple price-fixing agreement and a market allocation agreement, in which they have used certain methods in order to do it, which are a little

different, but they are consistent with what has been done in the past, especially during the turn of the century. The same kind of vehicles were used before.

I -- I do say, however, that -- and we have approached it on a per se basis. I do say, however, that as we have plead it, what we have plead is basically that price fixing and market allocation, both of which are illegal, regardless of how you look at it. But it is my view, and I intend to press the view, that the charges are per se violations of the antitrust laws.

THE COURT: Well, let me --

MR. ALIOTO: Whether we are going to make a straight commitment on that, Your Honor, at least at the moment, I don't know, but -- but I will say point blank, that it is, and has been my view about this and that seems to be, I think, what we are going to ultimately do.

THE COURT: Here's the problem that I see; all right?

I am tentatively of the view that you have not sufficiently plead these claims under or this claim under any of these theories under the analysis of rule or reason. And you may agree or disagree, but that's my view on it. So, what I am willing to

do is, if you tell me you want leave to amend, is to give you leave to amend to more fully flesh out a case under the analysis of Rule of Reason.

Now, I will let you do that if you want to because, you take a look at the Big Bear case from the Ninth Circuit, and it is very clear as to what it is that you have to allege. And in my judgment, you have not made sufficient allegations.

What I don't want you to do is for you to tell me, oh, no, we are going straight ahead with per se, and that's what we want to do. So we do that. We have discovery.

While it turns out, let's say, I'm not saying it will, but what if it were to turn out that down the road, discovery shows that this was a fully-integrated joint venture, and that it did have some of the, at least, potential for pro-competitive benefits from it, and if it were to show, that this particular restraint that you are complaining about, whether it's price fixing or market allocation, I'm not saying it will turn out that way, but let's say it does, even though those restraints were deemed to be absolutely ancillary to the joint venture, which does have pro-competitive benefits, at that point, are you then going to come and tell me, well, if

that's the case, Judge, let's go ahead and amend the complaint? Let me start making allegations which has to do with market, geographic product market, what is the anti-competitive effect and so forth. Then they can come and tell you why the balance ought to be struck in favor of their agreement as opposed to against it. I don't want to do that.

I will tell you that right now, because we are not going to go down six months, eight months, twelve months of discovery, and then come back and say, you know, now that we have taken a look at this, this just isn't going to work under this analysis, let's start at ground zero and have a different complaint. I'm not going to do that.

So, what I am telling you is, do it now or don't do it. I will be glad to give you a chance to do it now, because I think you deserve it and you are entitled to an opportunity to do that.

MR. ALIOTO: Let me just say this, if it pleases Your Honor, the customary allegations of a rule of these in case were not alleged in our complaint, as The Court points out. However, I don't know how The Court is viewing, for instance, broadcast music, whether The Court considers that to be a Rule of Reason case. I do not. Certainly not

in the customary sense of the word.

And NCAA is really not the -- it's not the old per se type case, but it's not a Rule of Reason. I guess we can describe it generically as maybe the quick look, but they did analyze and some of those, whether or not there were any justifications or pro-competitive bases for what they did. Even though they analyzed it under quick look, I will say this to The Court, that it is my view that the conduct is illegal on its face, that either under the per se rule or under the quick look rule which does sometimes consider pro- -- whether or not the activity is pro-competitive or not, sometimes considers whether it's ancillary, but do not consider customary Rule of Reason issues, such as market power, impact on the market, and those types of issues. So we would --

THE COURT: Mr. -- I understand where you are going, Mr. Alioto, but I guess what I am telling you is, I also read the BMI case and I also read the NCAA case, and I have also read the Rothery case from Judge Bork, who everyone sees as some sort of an antitrust guru.

MR. ALIOTO: I do not, Your Honor.

THE COURT: All right. Some people consider

that.

MR. ALIOTO: Yes, Your Honor.

THE COURT: But I guess what I am telling you is, it is from my reading of the Supreme Court cases, not Rothery, obviously, the BMI, the NCAA, those cases, which leads me to the belief that we are unable to necessarily decide whether this -- you can call this price fixing, you can call it market allocation; and while it is true, if it's a naked price-fixing case, you're right, it's per se.

But I think the analysis in this case cannot end there, and it has the potential of making the per se analysis and the quick look analysis inapplicable. It may or may not. I'm not saying that I know the answer to it. I am just saying I don't know the answer to it, and I don't suppose any of us here can have any certainty or comfort in knowing what analysis will apply, let's say, even at summary judgment point of view -- at point. And that's -- I want to move ahead. I want you to just tell me one way or the other how you want to proceed.

MR. ALIOTO: I want to proceed, Your Honor, but please, Your Honor, we wish to proceed on the basis that it is either a per se or quick look violation; that it is not the customary Rule of

Reason type violation; that the issues of market power and impact upon the market are not an issue.

THE COURT: All right. So you are, in essence, waiving any future reliance upon the Rule of Reason.

MR. ALIOTO: Correct, Your Honor.

THE COURT: All right.

MR. ALIOTO: I just want to add, though, as I have added, again, under the quick look analysis, those customary issues -- and I want to stay with quick look and per se -- but under the quick look analysis, some of them sometimes consider pro or con -- pro-competitive issues, and those that are against it. But they don't consider market power. They don't consider impacts on the market.

THE COURT: And I --

MR. ALIOTO: That's the customary Rule of Reason.

THE COURT: I fully appreciate the differences that you are trying to make --

MR. ALIOTO: Thank you.

THE COURT: -- between one and the other.

MR. ALIOTO: That's right.

THE COURT: All I want to make sure is that I am giving you an opportunity to at least amend to

include what you call customary allegations of Rule of Reason analysis and you're declining my invitation.

Am I correct in that?

MR. ALIOTO: Yes, Your Honor. I'm not declining any invitation from The Court.

What I am saying is, is that I am committing to go one way, as to the one way.

THE COURT: All right.

MR. ALIOTO: Yes, Your Honor.

THE COURT: All right. Let's move ahead to, if we can, let's talk about the market allocation allegations. In that respect at least, probably will pull in some of the issues that may be relevant to both Equilon and Motiva's separate motions to dismiss.

MR. ALIOTO: Yes.

THE COURT: Although, we should put Motiva somewhat to the side, because they also have a personal jurisdictional, jurisdiction challenge where there may be some legal questions that I wanted to talk to you about.

But tell me, I'm a little bit unclear. From your allegations, other than the fact that Equilon supposedly operates out here in the western United

CITY OF LOS ANGELES )
STATE OF CALIFORNIA ) SS.

C E R T I F I C A T E

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

______________________________ DECEMBER 8, 1999

IRENE NAKAMURA, CSR DATE

OFFICIAL U.S. COURT REPORTER

U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA