BRADLEY S. PHILLIPS (State Bar No. 085263)
STUART N. SENATOR (State Bar No. 148009)
LEE S. TAYLOR (State Bar No. 243863)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Tel: (213) 683-9100; Fax (213) 687-3702
Email: brad.phillips@mto.com; stuart.senator@mto.com;
lee.taylor@mto.com

Attorneys for Defendant Shell Oil Company

ROBERT A. MITTELSTAEDT (State Bar No. 060359)
CRAIG E. STEWART (State Bar No. 129530)
JONES DAY
555 California Street
San Francisco, CA 94104-1500
Tel: (415) 626-3939; Fax (415) 875-5700
Email: cestewart@JonesDay.com

Attorneys for Defendant Chevron, Inc.

BRYAN A. MERRYMAN (State Bar No. 134357)
WHITE & CASE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Tel: (213) 620-7802; Fax (213) 452-2329
Email: bmerryman@whitecase.com

Attorneys for Defendant Saudi Refining, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MIKE M. MADANI, *et al.*,<br><br>            Plaintiffs,<br><br>    vs.<br><br>SHELL OIL COMPANY, *et al.*,<br><br>            Defendants. | CASE NO. CV-07 04296 MJJ<br><br>[PROPOSED] ORDER RE DEFENDANTS' MOTION TO DISMISS<br><br>Date:       December 18, 2007<br>Time:      9:30 a.m.<br>Dept.:      Courtroom 11, 19th Floor<br>Judge:     Hon. Martin J. Jenkins |

Defendants have moved to dismiss the complaint in this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court grants the motion for the reasons stated below.

## I. BACKGROUND

Plaintiffs' complaint ("the *Madani* complaint") alleges that, during the period January 1998 through October 2001, defendants violated federal antitrust laws through the formation and operation of two joint ventures, Equilon and Motiva, which combined defendants' domestic gasoline refining and marketing operations. Plaintiffs allege a *rule of reason* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and an unlawful acquisition that substantially lessened competition under Section 7 of the Clayton Act, 15 U.S.C. § 18.

The *Madani* complaint follows a prior unsuccessful action challenging certain aspects of the joint ventures. An understanding of that prior action is necessary for purposes of evaluating the sufficiency of the current complaint.

### A. *Dagher*

On June 15, 1999, Shell-branded and Texaco-branded service station operators filed a putative nationwide class action against Texaco, Inc., Shell Oil Company, Saudi Refining, Inc., and related entities, in the United States District Court for the Central District of California. *See* Complaint in *Dagher v. Saudi Refining, Inc.,* U.S.D.C., C.D. Cal., Case No. CV-99-06114.[1]

The two joint ventures at issue, Equilon and Motiva, effectively merged the entire United States gasoline refining and marketing operations of the defendants in the current case. *Dagher v. Saudi Refining, Inc.,* No. CV 99-6114 GHK, 2002 WL 34099815 at *5. The Motiva joint venture operated in the Eastern United States and involved Shell, Texaco and Saudi Refining. 2002 WL 34099815 at *5. The Equilon joint venture operated in the Western United States, and involved only Shell and Texaco (Saudi Refining did not have relevant operations in the Western United States). *Id.* at *6. The ventures were reviewed and approved under the

---

[1] The *Madani* complaint centrally references and relies upon *Dagher*. Accordingly, on this motion to dismiss, the Court takes judicial notice of the record in that litigation. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

antitrust laws by the Federal Trade Commission and the attorneys general of four states. *Texaco v. Dagher*, 547 U.S. 1, 4 (2006).

*Dagher* challenged each joint venture's policy of setting the wholesale price of its Shell brand of gasoline the same as the wholesale price of its Texaco brand of gasoline. *Dagher* claimed that this unification of gasoline prices under the two brands of gasoline that each venture sold violated the per se rule against price fixing under Section 1 of the Sherman Act. The claim in *Dagher* was dismissed by the district court with respect to Saudi Refining on May 21, 2002, and with respect to Shell and Texaco on August 13, 2002. *Dagher v. Saudi Refining, Inc.*, No. CV 99-6114 GHK, 2002 WL 34099816 (C.D. Cal. May 21, 2002); 2002 WL 34099815 (C.D. Cal. Aug. 13, 2002). The district dourt found that the ventures were legitimate and that it was not per se illegal price fixing for each venture to set the wholesale price of products that it manufactured as it saw fit. 2002 WL 34099815 at *7. On February 28, 2006, the Supreme Court unanimously affirmed, likewise finding that "[a]s a single entity, a joint venture, like any other firm, must have the discretion to determine the prices of the products that it sells, including the discretion to sell a product under two different brands at a single, unified price." 547 U.S. at 8.[2]

The named plaintiffs in *Dagher* included Mike Madani, the lead plaintiff here.[3] Lead counsel in *Dagher* were the same as lead counsel here, Joseph A. Alioto of the Alioto law firm, Dan Shulman of the Gray, Plant, Mooty law firm, Tom Bleau of the Bleau, Fox law firm, and John H. Boone.

In *Dagher*, the plaintiffs and their counsel limited themselves to asserting a claim of per se illegal price fixing and waived any rule of reason challenge to any aspect of the joint ventures. The following exchange took place in the district court at the December 6, 1999 hearing on defendants' motion to dismiss the first amended complaint:

---

[2] The May 21, 2002 ruling in favor of Saudi Refining found that plaintiffs lacked standing with respect to sales of gasoline by Motiva, because plaintiffs bought their gasoline only from Equilon. 2002 WL 34099816, at *7. That ruling was affirmed by the Ninth Circuit and was not appealed. *Dagher v. Saudi Refining, Inc.*, 369 F.3d 1108, 1115-16 (9th Cir. 2004). Thus, the Supreme Court focused exclusively on Equilon.

[3] Mr. Madani was ultimately dismissed from the litigation by stipulation on November 20, 2000.

> MR. ALIOTO: I want to proceed, Your Honor, but please, Your Honor, we wish to proceed on the basis that it is either a per se or quick look violation; that it is not the customary Rule of Reason type violation; that the issues of market power and impact upon the market are not an issue.
>
> THE COURT: All right. So you are, in essence, waiving any future reliance upon the Rule of Reason.
>
> MR. ALIOTO: Correct, Your Honor.

Transcript of Record at 14:22-15:6. When the district court entered summary judgment in defendants' favor, the district court likewise noted that "Plaintiffs have eschewed an exhaustive rule of reason analysis." 2002 WL 34099815, at *12. In the Ninth Circuit, plaintiffs again expressly "disclaimed any reliance on the traditional 'rule of reason' test, instead resting their entire claim on either the per se rule or a 'quick look' theory of liability." 369 F.3d at 1113. The same was true in the Supreme Court. *See* 547 U.S. at 4.

**B.    *Madani***

The current complaint was filed on August 21, 2007, more than five years after the district court entered summary judgment in *Dagher*. Like *Dagher,* the case is styled as a putative class action on behalf of a nationwide class of Shell-branded and Texaco-branded service station operators, not as an individual action. *Madani*'s lead named plaintiff and putative class representative is one of the *Dagher* plaintiffs, Mike Madani. Plaintiffs' lead counsel in *Madani* are identical to the lead plaintiffs' counsel in *Dagher*.

While there is an overlap in the named plaintiffs and proposed class representatives and plaintiffs' lead counsel are the same, the claims asserted in *Madani* are different from the claim asserted in *Dagher*. *Madani* alleges only rule of reason violations of the antitrust laws—a rule of reason violation of Section 1 of the Sherman Act and a violation of Section 7 of the Clayton Act. Whereas a per se Sherman Act claim requires proof only of the allegedly unlawful agreement (there, the decision to price the Texaco and Shell brands of gasoline

in a unified manner) as well as resulting damage, a Sherman Act rule of reason claim requires proof of actual anticompetitive effects in a relevant geographic and product market, as well as consideration of any pro-competitive effects. *See American Ad Mgmt., Inc. v. GTE Corp.* 92 F.3d 781, 789 (9th Cir. 1996); *Kaplan v. Burroughs*, 611 F.2d 286, 291 (9th Cir. 1979). With regard to the Clayton Act Section 7 claim, there is no such thing as a per se violation of Section 7, and no Section 7 claim was included in *Dagher*. Any Section 7 challenge to a joint venture must show that the venture unreasonably decreased competition in the relevant market.

## II. LEGAL STANDARD

A complaint should be dismissed where its legal insufficiency is apparent on its face, or in conjunction with materials of which the Court may take judicial notice. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000); *accord Torrance Redevelopment Agency v. Solvent Coating Co.*, 763 F. Supp. 1060, 1066 (C.D. Cal. 1991).

## III. ANALYSIS

### A. The Complaint Is Time Barred

The statute of limitations applicable to plaintiffs' claims is four years under Section 4B of the Clayton Act, which applies to any claims under the federal antitrust laws. 15 U.S.C. § 15b. Here, the complaint alleges a class period from January 1998 through October 2001, the period during which the joint ventures between Shell and Texaco are alleged to have been in existence. The complaint was filed more than four years after October 2001. Because the time-bar is not merely a defect in pleading and could not be cured, the Court will dismiss the complaint with prejudice. *See Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Court finds that the class action tolling doctrine does not save the complaint, for a number of independent reasons.

First, the doctrine generally tolls the statutory period only for later-filed *individual* actions, not for later-filed class actions. *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir. 1987); *accord Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987); *Basch v. Ground Round, Inc.*,

139 F.3d 6, 10-11 (1st Cir. 1998); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994); *Andrews v. Orr*, 851 F.2d 146, 149-50 (6th Cir. 1988).

While the Ninth Circuit made a limited exception in *Catholic Social Services Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000) ("*CSS*"), that exception is inapplicable here. The court in *CSS* expressly cited to *Robbin* as controlling law, *id.* at *1147*, but held that the statute of limitations should be tolled on the specific facts presented, where "[t]he substantive claims asserted in" the subsequent later action were "within the scope of those asserted in the earlier action, and the dismissal of that action did not result from an adverse decision on the merits of any of those claims." *Id.* at 1149. Unlike *CSS*, the claims in *Madani* go beyond that asserted in *Dagher* and the claim in *Dagher* was fully litigated to a final judgment on the merits after development of a full record. There also is no intervening change in law here that affects who has standing to raise these claims such as was present in *CSS*.

Second, class action tolling is unavailable for "different or peripheral claims" not asserted in the initial class action. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (Powell, J., concurring). "[W]hen a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that concern the same evidence, memories, and witnesses as the subject matter of the original class suit, so that the defendant will not be prejudiced." *Id.* at 355. The significant differences between a per se claim (as asserted in *Dagher*) and rule of reason claims (as asserted here and expressly waived in *Dagher*) are well-recognized. For example, a per se claim requires no "elaborate inquiry as to the precise harm . . . caused or the business excuse for [the restraint.]" *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 50 (1977). By contrast, a rule of reason claim involves a detailed and wide-ranging factual inquiry into the circumstances of the market and the effects of the agreement on the market: "[T]he court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts." *Id.* at 50 n.15 (quoting *Bd. of Trade of Chicago v. United*

*States*, 246 U.S. 231, 238 (1918); *accord Los Angeles Memorial Coliseum Comm'n v. National Football League*, 726 F.2d 1381, 1387 (9th Cir. 1984) (rule of reason claim requires analysis of "all the circumstances of the case"); *Kaplan v. Burroughs*, 611 F.2d 286, 290 (9th Cir. 1979) (discussing difference between *per se* and rule-of-reason claims); *U.S. Football League v. National Football League*, 842 F.2d 1335, 1360 (2d Cir. 1988) ("Unlike a *per se* price-fixing case, a Rule-of-Reason case requires the fact finder to balance the procompetitive and anticompetitive *effects* of any restraint.") (emphasis in original).

Third, even were class action tolling available, it would not save the *Madani* claims because it would toll the limitations period only until the date on which it was determined in the district court that *Dagher* would not proceed. *In re Copper Antitrust Litig.*, 436 F.3d 782, 793 (7th Cir. 2006). Tolling is not available during appellate proceedings. *Id.*; *Stone Container Corp. v. United States*, 229 F.3d 1345, 1355-56 (Fed. Cir. 2000); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1391 (11th Cir. 1998). In some cases the issue has arisen in the context of whether the doctrine tolls the limitations period during appellate proceedings following the denial of class certification; here, by contrast with those cases, the district court entered judgment in *Dagher* prior to ruling on class certification. But the rule that tolling does not apply during appellate proceedings is not limited to appellate proceedings following the denial of class certification. *See Southwire Co. v. J.P. Morgan Chase & Co.*, 307 F. Supp. 2d 1046, 1064 (W.D. Wisc. 2004), *aff'd in relevant part, In re Copper Antitrust Litig.*, 436 F.3d 782, 793 (7th Cir. 2006); *In re Enron Corp.*, 465 F. Supp. 2d 687, 703 (S.D. Tex. 2006); *In re Westinghouse Securities Litig.*, 982 F. Supp. 1031-1035 (W.D. Pa. 1997); *see also Hanford Nuclear Reservation Litig.*, 497 F.3d 1005, 1027 (9th Cir. 2007).

Finally, tolling is unavailable for the claims against Saudi Refining for the additional reason that the district court in *Dagher* found that the plaintiffs there lacked standing to assert their claim against Saudi Refining. 2002 WL 34099816, at *7. The Ninth Circuit affirmed that determination. *Dagher,* 369 F.3d at 1115. When a representative plaintiff in a putative class action lacks standing, that action does not toll the statute of limitations for later plaintiffs. *Palmer v. Stassinos*, 236 F.R.D. 460, 465-66 (N.D. Cal. 2006); *see also Walters v. Edgar*, 163

F.3d 430, 432 (7th Cir. 1998).

### B. The Complaint Fails To State An Antitrust Claim

Although this Court concludes that the complaint is time-barred, the Court also notes that the complaint fails to state a claim for the additional reason that it fails to allege a relevant market in which there plausibly could have been anti-competitive effects of the conduct at issue.

An essential element of a rule of reason claim under Section 1 of the Sherman Act or Section 7 of the Clayton Act is the existence of a relevant market—that is an area of effective competition in which there is cross-elasticity of demand—in which the defendants' conduct has had an anticompetitive effect. *United States v. Phila. Nat'l Bank*, 374 U.S. at 362; *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999). The complaint does not sufficiently allege any relevant geographic market for gasoline in which the joint ventures could plausibly be said to have exercised market power.

First, the complaint's passing and contradictory allusions to certain geographies falls far short of minimum pleading requirements. The complaint variously refers to geographies including the entire United States (¶ 115), individual states (¶ 89), certain individual cities (¶¶ 108, 115), and "thousands of distinct pricing areas throughout the United States" (¶ 101). None of these references is buttressed with any hint as to the rationale by which one would determine the contours of the market or any factual allegation that would qualify it as a relevant market for antitrust purposes.

Second, the general market share numbers that the complaint affirmatively alleges make clear that anticompetitive effects are, at best for plaintiffs, implausible and speculative, for the geographies that the complaint references. For example, the joint ventures' overall market share in the United States is alleged to have been just 15 percent. ¶ 89. In 11 unnamed states the share was below 10 percent, in 24 additional but unnamed states (for a total of 35) the share was below 20 percent, in 12 additional but unnamed states (for a total of 47 states) the share was some unspecified amount below 30 percent, and in only 3 additional but still unnamed states was the

share above 30 percent. *Id.* Further, the complaint affirmatively alleges that, throughout the United States, there were at least four significant competitors to the joint ventures, Exxon, Mobil, Chevron and Amoco. *Id.* ¶ 82. These allegations are insufficient as a matter of law. *See generally Valley Liquors, Inc. v. Renfield Imps., Ltd.,* 822 F.2d 656, 666 (7th Cir. 1987) ("Market share analyses in section 1 cases have led to conclusions that approximately 70%-75% of market share constitutes market power, and that a 20%-25% market share or less does not constitute market power.") (collecting numerous cases); *Tanaka,* 252 F.3d at 1063 ; *Big Bear Lodging Ass'n,* 182 F.3d at 1105.

## IV.    CONCLUSION

The complaint is dismissed. Because the applicability of the statute of limitations is not a technical defect that can be "cured" by amendment, the dismissal is without leave to amend. This dismissal is on the merits as to all causes of action.

SO ORDERED.

Dated: _____    _____
                                    Hon. Martin J. Jenkins