Joseph M. Alioto (CA Bar #42680)
ALIOTO LAW FIRM
555 California Street, Suite 3160
San Francisco, CA 94104
Telephone: 415-434-8900
Facsimile: 415-434-9200
Email: josephalioto@mac.com

Daniel R. Shulman, *Pro Hac Vice* (MN Bar #100651)
Jeremy L. Johnson, *Pro Hac Vice* (Pending) (MN Bar #328558)
GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
500 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-632-3335
Facsimile: 612-632-4335
Email: daniel.shulman@gpmlaw.com

Thomas P. Bleau (CA Bar #152945)
BLEAU, FOX & ASSOCIATES
3575 Cahuenga Blvd., West, Suite 580
Los Angeles, CA 90068
Telephone: 323-874-8613
Facsimile: 323-874-1234
Email: bleaushark@aol.com

Bradley K. Beasley, *Pro Hac Vice* (OK Bar #628)
BOESCHE MCDERMOTT LLP
610 S Main Ste 300
Tulsa, OK 74119-1258
Telephone: 918-583-1777
Facsimile: 918-592-5809
Email: bbeasley@bme-law.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MIKE M. MADANI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SHELL OIL COMPANY; CHEVRON CORPORATION; and SAUDI REFINING, INC.,<br><br>Defendants. | Court File No. C 07-4296 MJJ<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: December 18, 2007<br>Time: 9:30 a.m.<br>Judge: Martin J. Jenkins<br>Courtroom: 11, 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

FACTS ................................................................................................................... 1

ARGUMENT .......................................................................................................... 5

I.  BY REASON OF THE CLASS ACTION ALLEGATIONS IN
    *DAGHER*, THE APPLICABLE STATUTE OF LIMITATIONS
    WAS TOLLED FROM JUNE 15, 1999, UNTIL NOVEMBER 15,
    2006, FOR ALL MEMBERS OF THE ALLEGED CLASS ................................... 5

    A.  The Supreme Court Created the *American Pipe* Tolling Rule to
        Promote Judicial Efficiency and Fairness to Putative Class
        Plaintiffs and Defendants. ................................................................ 6

    B.  Courts, Including the Ninth Circuit, Have Applied the *American
        Pipe* Tolling Rule to Subsequent Class Actions and to Do So Is
        Consistent With Statute of Limitations and Class Action Policies ................. 7

    C.  Under *Crown, Cork*, Plaintiffs' Claims Need Not Be Identical
        to Those Asserted in the *Dagher* Action for *American Pipe*
        Tolling to Apply .......................................................................... 11

    D.  Since the Court Never Certified a Class in the *Dagher* Action, the
        Named Plaintiffs' Waiver of a Full Rule of Reason Claim Does
        Not Bar Plaintiffs Here .................................................................. 13

    E.  Class Action Tolling Applied During Appellate Review of the
        District Court's *Dagher* Decision ..................................................... 15

        1.  Controlling Precedent Requires, at Minimum, a Ruling
            on Class Certification to Cease Class Action Tolling ........................... 15

        2.  Defendants Improperly Equate a Judgment on the Merits
            With a Denial of Class Certification .......................................... 16

    F.  The State of Limitations for Plaintiffs' Claims Against Saudi
        Refining Was Tolled Until November 15, 2006 ...................................... 19

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

II.     PLAINTIFFS' COMPLAINT MEETS THE "NOTICE PLEADING"
        REQUIREMENT ......................................................................................... 20

        A.     *Twombly* Has Not Abolished Notice Pleading ................................. 20

        B.     Plaintiffs Have Sufficiently Pled Relevant Market........................ 21

CONCLUSION............................................................................................................ 22

ii

# TABLE OF AUTHORITIES

**Page**

## CASES

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987) ............................................................................ 11

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000)........................................................... 13

*American Pipe & Construction v. Utah*,
414 U.S. 538 (1974) ........................................ 5, 6, 7, 10, 11, 13, 16, 17, 18, 19, 20

*Andrews v. Orr*,
851 F.2d 146 (6th Cir. 1988) ...................................................... 9, 10, 16

*Armstrong v. Martin Marietta Corp.*,
138 F.3d 1374 (11th Cir. 1998)........................................................ 17

*Basch v. The Ground Round, Inc.*,
139 F.3D 6 (1st Cir. 1998)............................................................. 9, 10

*Bell Atlantic Corp. v. Twonbly*,
___ U.S. ____, 127 S.Ct. 1995 (2007) .................................................. 20

*Boyertown Burial Casket Co. v. Walco Nat'l.Corp.*,
344 F. Supp. 1357 (E.D. Pa. 1972) ................................................ 21-22

*California Dental Assoc. v. Federal Trade Commission*,
526 U.S. 756 (1999) ...................................................................... 12

*Catholic Social Services, Inc. v. Immigration and Naturalization Service*,
232 F.3d 1139 (9th Cir. 2000)........................................... 6, 7, 8, 9, 10, 16

*Catlin v. United States*,
324 U.S. 229 (1945) ...................................................................... 18

*Conley v. Gibson*,
355 U.S. 41 (1957) ........................................................................ 20

*Crouse-Hinds Co. v. InterNorth, Inc.*,
518 F. Supp. 416 (N.D.N.Y. 1980) .................................................... 21

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Crown, Cork & Seal Co., Inc. v. Parker,*
    462 U.S. 345 (1983) .................................................. 5, 6, 7, 8, 9, 11, 15, 16, 18, 19

*Cullen v. Margiotta,*
    811 F.2d 698 (2d Cir. 1987)................................................................ 11, 14

*Dagher v. Saudi Refining, Inc.,*
    369 F.3d 1108 (9th Cir. 2004)............................................................ *Passim*

*Erickson v. Pardus,*
    ___ U.S. ____, 127 S.Ct. 2197 (2007) ................................................. 20

*Glater v. Eli Lilly & Co.,*
    712 F.2d 735 (1st Cir. 1983)................................................................. 17

*Griffin v. State of Florida,*
    17 F.3d 356 (11th Cir. 1994) ............................................................. 9, 10

*Haas v. Pittsburgh National Bank,*
    526 F.2d 1083 (3d Cir. 1975).......................................................... 19, 20

*In re Enron Corporation Securities,*
    465 F.Supp. 2d 687 (S.D. Tex. 2006)...................................................... 14

*In re Hanford Nuclear Reservation Litigation,*
    497 F.3d 1005 (9th Cir. 2007)......................................................... 16, 17

*In re: Independent Service Organizations Antitrust Litigation,*
    1997 WL 161940 (D. Kan., Mar. 12, 1997) ............................................ 15

*Jensen v. Allison-Williams,*
    1999 U.S. Dist. LEXIS 22170 (S.D. Cal. August 23, 1999) .................... 11

*Johnson v. Railway Express Agency, Inc.,*
    421 U.S. 454 (1975) ............................................................................ 13

*Korwek v. Hunt,*
    827 F.2d 874 (2d Cir. 1987)................................................................... 9

*Link v. Mercedes-Benz of N. Am.,*
    550 F.2d 860 (3d Cir. 1975), *cert. denied,* 431 U.S. 933 (1977)...................... 17-18

*National Collegiate Athetic Assn. v. Board of Regents of Univ. of Okla.,*
    468 U.S. 85 (1984) .............................................................................. 12

iv

*Palmer v.Far West Collection Services, Inc.*,
   236 F.R.D. 460 (N.D. Cal. 2006) ........................................................................ 19

*Robbin v. Flour Corp.*,
   835 F.2d 213 (9th Cir. 1987) ......................................................... 8, 9, 15-16

*Roman v. ESB, Inc.*,
   550 F.2d 1343 (4th Cir. 1976) .......................................................................... 14

*Salazar-Calderon v. Presidio Valley Farmers Association*,
   765 F.2d 1334 (5th Cir. 1985) ...................................................................... 9, 10

*Shelton v. Pargo, Inc.*,
   582 F.2d 1298 (4th Cir. 1978) .......................................................................... 14

*Shields v. Smith*,
   1992 U.S. Dist. LEXIS 15718 (N.D. Cal. August 19, 1992) ............................... 8

*Schur v. Friedman & Schaftan*,
   123 F.R.D. 611 (N.D. Cal. 1988) ....................................................................... 8

*Texaco v. Dagher*,
   547 U.S. 1 (2006 ....................................................................................... 4, 5

*Tosti v. City of Los Angeles*,
   754 F.2d 1485 (9th Cir. 1985) .................................................................. 11, 14

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977) ........................................................................................ 11

*United States v. Kimberly-Clark Corp.*,
   264 F. Supp. 439 (N.D. Cal. 1967) ................................................................... 21

*United States v. Pabst Brewing*,
   384 U.S. 546 (1966) ........................................................................................ 21

*Wright v. Schock*,
   742 F.2d 541 (9th Cir. 1984) ..................................................................... 13-14

*Wyser-Pratte Mgmt. Co., Inc. v. Telxon*,
   413 F.3d 553 (6th Cir. 2005) ........................................................................... 17

*Yang v. Odom*,
   392 F.3d 97 (3d Cir. 2004), *cert. denied*, 125 S.Ct. 2294 (2005) ...................... 8

v

# RULES AND STATUTES

28 U.S.C. § 1291 ............................................................................................. 17, 18

28 U.S.C. § 1292(b) .............................................................................................. 17

42 U.S.C. § 1981 ................................................................................................... 13

Clayton Antitrust Act, Section 4
     15 U.S.C. § 15 .............................................................................................. 13

Clayton Antitrust Act, Section 7
     15 U.S.C. § 18 ...................................................................................... 1, 4, 21

Federal Rules of Appellate Procedure, 41 (Advisory Notes) .............................. 18

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 1, 4

Federal Rule of Civil Procedure 23 ..................................................................... 10

Sherman Antitrust Act, Section 1
     15 U.S.C. § 1 ........................................................................................... 1, 21

Title VII ................................................................................................................ 13

# OTHER AUTHORITIES

C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*
     § 1789 (2d ed. 1986) ................................................................................... 14

vi

## INTRODUCTION

Plaintiffs above-named, Mike M. Madani, et al., submit this memorandum in opposition to the joint motion of defendants Shell Oil Company ("Shell"), Chevron Corporation ("Chevron"), and Saudi Refining, Inc. ("Saudi Refining") to dismiss plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants move to dismiss plaintiffs' claims for violation of the Sherman Act Section 1, 15 U.S.C. §1, and Clayton Act Section 7, 15 U.S.C. §18, on the grounds that plaintiffs' claims are time-barred and that plaintiffs have failed to allege a relevant market.  Defendants' motion should be denied for the following reasons:

(1)    Because of the class allegations in the previously-filed *Dagher* action, the applicable statute of limitations was tolled from June 15, 1999 until November 15, 2006 for all members of the alleged class, this action was therefore timely filed, and principles of res judicata have no application to plaintiffs here.

(2)    Plaintiffs' Complaint meets the "notice pleading" requirements of Fed. R. Civ. P. 12(b)(6), and plaintiffs have sufficiently pled a relevant market for purposes of Sections 1 and 7.

## FACTS

On January 1, 1998, defendants Shell and Texaco, which is now owned by defendant Chevron, combined their marketing and refining assets in the Western United States in Equilon Enterprises LLC ("Equilon").  (Compl., ¶ 33.)  On July 1, 1998, they did the same in the Eastern United States through a second combination, Motiva Enterprises LLC ("Motiva"), in which defendant Saudi Refining, also joined.  (*Id.*)  Defendants regarded their combination as "almost breathtaking in its simplicity and audacity:  the whole U.S. Downstream."  (Compl., ¶ 34.)

Between January 1998 and October 2001, Equilon refined and marketed gasoline and other petroleum products under both the Shell and Texaco brand names in all or parts of 32 states, with sales to 9,002 Shell and Texaco retail outlets.  (Compl., ¶ 38.)  Equilon was the fourth largest retail gasoline marketer and the fourth largest refiner in the United States, with annual gross revenues of approximately $22 billion.  (Compl., ¶¶ 39-40.)  Equilon was number

one in market share in gasoline sales in Oregon, Arizona, Nebraska, Oklahoma, Missouri, Arkansas, and Kentucky, and was number two in Alaska, Hawaii, California, Nevada, Idaho, Wyoming, Colorado, New Mexico, Indiana, and Illinois.  (Compl., ¶ 41.)

Between July 1998 and October 2001, Motiva refined and marketed gasoline under the Shell and Texaco brand names in 27 states, with sales to 13,900 Shell and Texaco retail outlets.  (Compl., ¶ 48.)  Motiva was the second largest retail gasoline marketer and the eighth largest refiner in the United States, with annual gross revenues of approximately $11 billion.  (Compl., ¶¶ 49-50.)  Motiva was number one in market share in gasoline sales in Texas, Louisiana, Alabama, Mississippi, Tennessee, Florida, North Carolina, Rhode Island, New Jersey, Maryland, and Delaware, and was number two in Georgia, Virginia, Pennsylvania, New Hampshire, Vermont, Massachusetts, and Connecticut.  (Compl., ¶¶ 51-52.)

Until September 1998, Equilon and Motiva set separate and distinct dealer tankwagon prices for the Shell and Texaco brands of gasoline through their own pricing departments, as Shell and Texaco had done before the ventures.  (Compl., ¶ 78.)  At that time, the defendants agreed that Equilon and Motiva would charge the same dealer tankwagon prices for the Shell and Texaco brands of gasoline in each area in which Equilon and Motiva priced and sold the two brands of gasoline.  (Compl., ¶ 79.)  Immediately after the implementation of the new pricing policy, dealer tankwagon prices rose precipitously, while the price of crude oil fell to its lowest level since the Depression.  (Compl., ¶ 80.)

Saudi, Texaco, and Shell referred to the overall combination of Equilon, Motiva, and related service companies as "The Alliance," the purpose of which was to fix the prices of Shell and Texaco branded gasoline throughout the United States  (Compl., ¶ 82.)  At its formation, The Alliance had a market share of 15% of gasoline sales in the United States, double that of its next largest competitor.  (Compl., ¶ 90.)  In 39 states, The Alliance's share exceeded 10%; in 15 of those states, its share exceeded 20%; in three states, it exceeded 30%; on the West Coast, its share exceeded 25%.  (*Id.*)

Once the Texaco and Shell brands were priced identically by Equilon and Motiva, the price differential of the Texaco brand, which had been a low price brand, disappeared, rising to the level of the Shell brand, and the Alliance sharply raised the price of both brands, even as crude oil prices were falling to historic lows. (Compl., ¶ 102.) On September 1, 1989, the price of crude oil was stable at $12 per barrel and fell below $10 per barrel during January and February of 1999. (Compl., ¶ 103.) During this same period, Equilon raised prices for Shell and Texaco gasoline from $.62 per gallon to $1.02 per gallon in Los Angeles, and from less than $.60 to more than $.90 per gallon in Portland and Seattle. (Compl., ¶ 104.) In Chicago, Motiva raised brand prices from $.55 to $.75 per gallon. (*Id.*) In San Francisco, from January to April, 1999, Equilon raised prices from $.72 to $1.12 per gallon. (*Id.*)

These price increases by defendants affected not only the purchasers of defendants' gasoline, amounting to a substantial share of the market in those areas where defendants raised prices, but also virtually the entire market, as defendants' major competitors availed themselves of the price umbrella created by defendants' price increases by raising their prices, so that all buyers ended up paying higher prices for gasoline in those markets where defendants raised prices, not just defendants' customers. (*Id.*) The Alliance lasted three years, ending in 2001 with Chevron's acquisition of Texaco. (Compl., ¶ 112.)

On or about June 15, 1999 Fouad N. Dagher et al. filed suit against the defendants in the United States District Court for the Central District of California in case no. CV-99-06114 GHK (JWJx) ("the *Dagher* action"). That same day, the plaintiffs in the *Dagher* action filed a first amended complaint "on behalf of themselves and the approximately 23,000 Shell and Texaco branded dealers nationwide who operate or have operated Shell and Texaco branded marketing premises and franchises throughout the United States and who have purchased gasoline from Defendants MOTIVA ENTERPRISES, LLC and/or EQUILON ENTERPRISES LLC, or both, since January 1998 to the present time."[1] The claims asserted in the first amended complaint in

---

[1] Equilon and Motiva were originally named as defendants in the *Dagher* action, but were subsequently dismissed from the case.

the *Dagher* action were that the conduct of the defendants in forming Equilon and Motiva and causing them to charge the same prices for the Shell and Texaco brands of gasoline constituted price fixing in violation of Section 1 of the Sherman Act under the per se rule or the quick look rule of reason.

The *Dagher* action terminated on or about November 15, 2006, when the District Court received the mandate of the United States Court of Appeals for the Ninth Circuit affirming the District Court's grant of summary judgment for the defendants pursuant to a decision of the United States Supreme Court on February 28, 2006. *Texaco v. Dagher*, 547 U.S. 1 (2006). The District Court had granted summary judgment for the defendants in 2002, but was reversed by the Ninth Circuit. *Dagher v. Saudi Refining, Inc.*, 369 F.3d 1108 (9th Cir. 2004).[2] The Supreme Court granted certiorari, reversed the Ninth Circuit, and remanded the case to the Ninth Circuit, which then affirmed the District Court and issued its mandate to the District Court, which entered its final judgment on November 15, 2006.

During the pendency of the *Dagher* action, although the plaintiffs asked the District Court for leave to file a motion for class certification, the Court declined to hear any class motion, and hence never entertained or ruled on a motion for class certification.

On August 21, 2007, plaintiffs filed this action on behalf of themselves and a class of persons similarly situated, approximately 25,000 Shell and Texaco branded dealers nationwide who operated or have operated Shell or Texaco branded marketing premises and franchises throughout the United States and who purchased gasoline from Equilon or Motiva, or both, from January 1998 to October 2001. Expressly excluded from the class are those dealers who were plaintiffs in the *Dagher* action.

Plaintiffs contend that the formation of Equilon and Motiva violated Section 7 of the Clayton Act, and that the defendants' agreement to fix the price of Shell and Texaco gasoline sold by Equilon and Motiva violated Section 1 of the Sherman Act under the full rule of reason.

---

[2]  The Ninth Circuit, however, affirmed the District Court's summary judgment in favor of defendant Saudi. This aspect of the Ninth Circuit's decision was not reviewed by the Supreme Court.

1

## ARGUMENT

2

3

**I.    BY REASON OF THE CLASS ACTION ALLEGATIONS IN *DAGHER*, THE APPLICABLE STATUTE OF LIMITATIONS WAS TOLLED FROM JUNE 15, 1999, UNTIL NOVEMBER 15, 2006, FOR ALL MEMBERS OF THE ALLEGED CLASS.**

4

5

6            It is well-settled that the filing of a class action complaint tolls the statute of limitations

7    applicable to the claims of putative class members.  *See American Pipe & Construction v. Utah*,

8    414 U.S. 538, 554 (1974).  Further, it is axiomatic that "once the statute of limitations is tolled, it

9    remains tolled for all members of the putative class ***until class certification is denied***."  *Crown,*

10   *Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354,  (1983) (emphasis added).  Here, by reason

11   of the class allegations of the complaint in *Dagher v. Saudi Refining, Inc.*, and the District

12   Court's never entertaining or ruling on a motion for class certification, the statute of limitations

13   for the claims asserted in this case was tolled from the filing of the *Dagher* action on June 15,

14   1999, until the entry of final judgment by the District Court on November 15, 2006, in response

15   to the issuance of the mandate of the United States Court of Appeals for the Ninth Circuit,

16   following the decision of the United States Supreme Court in *Texaco, Inc. v. Dagher*, 547 U.S. 1

17   (2006).

18            Defendants argue that *American Pipe* class tolling is inapplicable to a later class action

19   and even during appellate review of a district court's decision on the merits made prior to

20   reaching a decision on class certification.  Such a result would have required plaintiffs here –

21   putative class members in the *Dagher* action – to clog the courts with individual claims

22   immediately following the district court's granting of defendants' motion for summary judgment

23   to protect their claims.  An application of class action tolling in these circumstances avoids such

24   absurd results.

25            Courts that have addressed the application of *American Pipe* class tolling to later class

26   actions have been primarily concerned with putative class members attempting to resuscitate and

27   relitigate a denial of class certification in a second class action.  Since class certification was

28   never decided in the *Dagher* action, that concern is not present here.

An application of class tolling to plaintiffs' claims from the date the *Dagher* action was filed until the entry of final judgment in the District Court is both consistent with controlling precedent and with the principles underlying class actions and statutes of limitation. Accordingly, defendants' motion should be denied, and plaintiffs should be allowed to proceed with their claims.

A.    **The Supreme Court Created the *American Pipe* Tolling Rule to Promote Judicial Efficiency and Fairness to Putative Class Plaintiffs and Defendants.**

In creating the class action tolling rule, as articulated in *American Pipe*, 414 U.S. at 553-54, and confirmed in *Crown, Cork*, 462 U.S. 345 (1983), the Supreme Court balanced the purposes behind class actions and statutes of limitations. Class actions promote "'efficiency and economy of litigation' by consolidating numerous individual suits into a single suit." *Catholic Social Services, Inc. v. Immigration and Naturalization Service*, 232 F.3d 1139, 1146-47 (9th Cir. 2000) (en banc) (citing *American Pipe*, 414 U.S. at 553). Statutes of limitations "'promote justice by preventing surprises through revival of claims that have been allowed to slumber . . .'" *Id.* (citing *American Pipe*, 414 U.S. at 554). The Supreme Court accordingly created the class action tolling rule because it was "convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe*, 414 U.S. at 554. The class action tolling rule protects a putative class member, fearing the uncertainty of a class certification ruling and the expiration of the limitations period, from having to file a separate action prior to a ruling on class certification to protect his claim. A contrary rule would result in "a needless multiplicity of actions – precisely the situation that Federal of Civil Procedure 23 and the tolling rule in *American Pipe* were designed to avoid." *Crown, Cork*, 462 U.S. at 351.

Further, the class action tolling rule is consistent with the protection afforded defendants by statutes of limitations:

[A] class action complaint notifies the defendants not only of the substantive claims brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. The defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification.

*Id.* at 353.

The class allegations in the *Dagher* action notified defendants that plaintiffs were challenging, under federal antitrust laws, the pricing practices of Equilon and Motiva –the same practices challenged here. The class allegations in the *Dagher* action also notified defendants of the number and type of potential plaintiffs – 23,000 Shell and Texaco retail gas station owners – the same class of plaintiffs here. The purpose of the underlying statute of limitation will therefore be no more frustrated here, in a later class action, than if plaintiffs had filed individual actions, which the Supreme Court has expressly permitted. *See Crown, Cork*, 462 U.S. at 354.

### B. Courts, Including the Ninth Circuit, Have Applied the *American Pipe* Tolling Rule to Subsequent Class Actions and to Do So Is Consistent With Statute of Limitations and Class Action Policies.

Defendants contend that class action tolling is inapplicable to subsequent class actions, as opposed to individual non-class claims. While the Supreme Court has not addressed whether a later class action can rely on the tolling rule announced in *American Pipe* and extended in *Crown, Cork*, courts, including the Ninth Circuit, have applied class action tolling to subsequent class actions.

In *Catholic Social Services, Inc. v. Immigration and Naturalization Service*, the Ninth Circuit, sitting en banc, concluded that the statute of limitations for claims in a successor class action was tolled during the pendency of the first class action in which class certification was denied:

We hold that under the doctrine of *American Pipe* and *Crown, Cork & Seal* the statute of limitations was tolled during the pendency of the first class action for the class members and would-be class members in the action now before us, and that plaintiffs in this case may aggregate their individual actions into a class action.

232 F.3d at 1149.   The Court noted that "[s]trictly speaking, this is not a statute of limitations question at all.  It is rather, a question of whether plaintiffs whose individual actions are not barred may be permitted to use a class action to litigate those actions." *Id.* at 1147.  Although the facts in *Catholic Social Services* were slightly unusual – a class was initially certified before being decertified – the Ninth Circuit's primary concern was not the form of the later action (whether individual or class), but whether the plaintiffs in the subsequent class action were merely seeking to relitigate the correctness of the district court's denial of class certification. *Id.* (citing *Robbin v. Flour Corp.*, 835 F.2d 213 (9th Cir. 1987)).  In support of its holding, the Court noted that two California District Courts had allowed tolling during the pendency of a first class action for the benefit of a second class action, "specifically noting that the second action did not seek to relitigate an earlier certification denial or to cure an earlier procedural deficiency." *Id.* at 1149 n.3 (citing *Shields v. Smith*, 1992 U.S. Dist. LEXIS 15718 (N.D. Cal. August 19, 1992); *Schur v. Friedman & Shaftan*, 123 F.R.D. 611 (N.D. Cal. 1988)).

The Third Circuit has also concluded that the statute of limitations may be tolled for successive class actions.  *See Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004), *cert. denied*, 125 S.Ct. 2294 (2005).  In *Yang*, the District Court for the Northern District of Georgia denied the plaintiffs' joint motion for certification of the three subclasses asserted in the class complaint, on the basis that each subclass failed to meet one of the requirements under Rule 23. *Id.* at 99. Several months later, three new plaintiffs (each a member of one of the subclasses in the first action) filed a "substantively identical" class action in the District Court of New Jersey against the same defendants. *Id.* at 100.  The District Court in New Jersey dismissed the class complaint, holding that the claims were time barred. *Id.* at 101.  On appeal, the Third Circuit reversed in part, and framed the issue as "the extent to which the suits contemplated in *Crown, Cork & Seal* – i.e., those brought by individuals following a denial of class certification – can be aggregated in a subsequent substantively identical class action." *Id.* at 102.  The Court held that class action tolling applied for the benefit of the subsequent class action:

> Given that *American Pipe* tolling would unquestionably apply were the plaintiffs here to bring individual actions, it would be at odds with the policy undergirding the class action device, as stated by the Supreme Court, to deny plaintiffs the benefit of tolling, and thus the class action mechanism, when no defect in the class itself has been shown.

392 F.3d at 106.

Moreover, in dicta, the Second Circuit left open the possibility that it might toll the statute of limitations in successive class actions. In *Korwek v. Hunt*, a case relied on by defendants, the Second Circuit held that the statute of limitations was not tolled in a successive class action filed on behalf of a broad class of commodities traders. 827 F.2d 874 (2d Cir. 1987). In an earlier class action, the district court had declined to certify the broad class and significantly limited the scope of the class certified. *Id.* at 875. Although the Second Circuit declined to toll the statute of limitations in the successive class action filed on behalf of the broader class that had been rejected by the district court, "it le[ft] for another day the question of whether the filing of a potentially proper subclass would be entitled to tolling under *American Pipe*." *Id.* at 879. Hence, the court acknowledged the possibility that the statute of limitations and Rule 23 policies, taken together, might justify tolling in a case where the putative representative in the successive class action was not seeking certification of a previously rejected class.

Defendants cite *Robbin v. Flour Corp.*, in support of their argument that class tolling does not apply to successive class actions. 835 F.2d 213 (9th Cir. 1987). In *Robbin*, the Ninth Circuit refused to toll the statute of limitations for a successor class action following the denial of class certification in the first action. *Id.* at 215. *Robbin's* seemingly broad holding, however, was limited by the Ninth Circuit in *Catholic Social Services*, which distinguished *Robbin* as being a situation in which plaintiffs were seeking to relitigate the denial of certification in the prior action. The remaining cases cited by defendants, are not controlling and follow the broad holding in *Robbin*. *See Basch v. The Ground Round, Inc.*, 139 F.3d 6 (1st Cir. 1998) (denying application of class tolling to subsequent class action after class certification denied); *Griffin v. State of Florida*, 17 F.3d 356 (11th Cir. 1994) (same); *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988) (same); *Salazar-Calderon v. Presidio Valley Farmers Association*, 765 F.2d 1334 (5th Cir. 1985) (same).

The underlying concern of the courts in each of these cases providing the *ratio decidendi* was that application of *American Pipe* tolling to successive attempts to certify a previously rejected class would sanction an endless succession of class actions seeking to relitigate the class certification issue. *See Basch*, 139 F.3d at 15-16 ("Permitting such tactics would allow lawyers to file successive putative class actions with the hope of attracting more potential plaintiffs and perpetually tolling the statute of limitations . . . regardless of how many times a court declines to certify a class."); *Griffin*, 17 F.3d at 359 (plaintiffs may not "'piggy back one class action onto another and thereby engage in endless rounds of litigation . . . over the adequacy of successive named plaintiffs to serve as class representatives.'") (citing *Salazar-Calderon*, 765 F.2d at 1351; *Andrews*, 851 F.2d at 150 ("The Supreme Court . . . certainly did not intend to afford plaintiffs the opportunity to argue and reargue the question of class certification by filing new but repetitive complaints.") (citing *Korwek*, 827 F.2d at 879).

Each case thus addressed the application of *American Pipe* tolling following a district court's ***denial*** of class certification – a threshold decision clearly never reached here. Accordingly, plaintiffs, by definition, are not seeking to resuscitate and relitigate a denial of class certification, and the Ninth Circuit's decision in *Catholic Social Services* controls and mandates tolling.

In addition, putative class members who wait until resolution of the certification issue in the original class action before pursuing other litigation options can hardly be accused of sleeping on their rights. A primary Rule 23 policy is efficiency and judicial economy. A successive class action would be far more efficient and require fewer judicial resources than would, in this case, 23,000 successive individual actions filed throughout the country. Such efficiency would certainly benefit defendants, who would presumably rather defend against a single class action than thousands of individual claims.

As a matter of both precedent and policy, tolling applies to a successor class action when the court in the prior case never reached the issue of class certification in disposing of the matter, as happened here.

1

2     **C.    Under *Crown, Cork*, Plaintiffs' Claims Need Not Be Identical to Those**
       **Asserted in the *Dagher* Action for *American Pipe* Tolling to Apply.**

3

4          In *Crown, Cork*, Justice Powell stated that application of *American Pipe* was appropriate

5     where the subsequent claims "concern the same evidence, memories, and witnesses as the

6     subject matter of the original class suit."  462 U.S. at 355.  Subsequent decisions have

7     accordingly held that a later-filed action need not be identical to the original class action and

8     need "only share a factual and legal relationship such that the defendant would likely rely on the

9     same evidence or witnesses to put on its defense."  *Jenson v. Allison-Williams*, 1999 U.S. Dist.

10    LEXIS 22170 at *14 (S.D. Cal. August 23, 1999) (citing *e.g.*, *Cullen v. Margiotta*, 811 F.2d 698,

11    719-20 (2d Cir. 1987), overruled on other grounds *Agency Holding Corp. v. Malley-Duff &*

12    *Assocs., Inc.*, 483 U.S. 143 (1987); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir.

13    1985)).  Requiring plaintiffs here to plead claims identical to those asserted in the *Dagher* action

14    would undermine the goal of Rule 23 – the fair and efficient adjudication of a controversy.  As

15    the Second Circuit explained in *Cullen*:

16
          Limiting *American Pipe* tolling to the identical 'causes of action' asserted in the
17        initial class action would encourage and require absent class members to file
          protective motions to intervene and assert their new legal theories prior to class
18        certification, thereby producing the very results the New York courts seek to
          prevent by such tolling, court congestion, wasted paperwork and expense.
19

20    811 F.2d at 721 (applying class tolling where first suit asserted state law claims and later suit

21    asserted federal RICO and First Amendment claims).  Consequently, *American Pipe* tolling is

22    properly extended to claims of absent class members that involve the same evidence, memories,

23    and witnesses as were involved in the initial putative class action.  *See United Airlines, Inc. v.*

24    *McDonald*, 432 U.S. 385, 393-94 n.14 (1977); *Crown, Cork*, 462 U.S. at 355 (Powell, J.,

25    concurring, joined by Rhenquist and O'Connor, JJ.); *American Pipe*, 414 U.S. at 562 (Blackmun,

26    J., concurring).

27         The claims asserted in the *Dagher* action were that the conduct of the defendants in

28    forming Equilon and Motiva and causing them to charge the same prices for the Shell and

Texaco brands of gasoline constituted price fixing in violation of Section 1 of the Sherman Act under the per se rule or the quick look rule of reason.  Plaintiffs here challenge the same joint ventures and pricing practices under the federal antitrust laws, although plaintiffs must necessarily assert different theories because of the Supreme Court's decision.  Notwithstanding that plaintiffs' claims here require a somewhat different and more extended analysis of the challenged conduct and its effects on competition in a relevant market, as required by Section 7 and the full rule of reason, these claims unquestionably "concern the same evidence, memories, and witnesses as the subject matter of the original class suit."  Defendants, in their moving papers, misstate and greatly exaggerate the distinction between quick look rule of reason analysis and full rule of reason analysis in trying to show how different the claims in this case are from the claims in *Dagher*.  As the Supreme Court stated in *California Dental Assoc. v. Federal Trade Commission*:

> The truth is that our categories of analysis of anticompetitive effect are less fixed than terms like "*per se*," "quick look," and "rule of reason" tend to make them appear. We have recognized, for example, that "there is often no bright line separating *per se* from Rule of Reason analysis . . ."
>
> \*        \*        \*
>
> "Whether the ultimate finding is the product of a presumption or actual market analysis, the essential inquiry remains the same -- whether or not the challenged restraint enhances competition." *468 U.S. at 104*. Indeed, the scholar who enriched antitrust law with the metaphor of "the twinkling of an eye" for the most condensed rule-of-reason analysis himself cautioned against the risk of misleading even in speaking of a 'spectrum' of adequate reasonableness analysis for passing upon antitrust claims: "There is always something of a sliding scale in appraising reasonableness, but the sliding scale formula deceptively suggests greater precision than we can hope for . . . .  Nevertheless, the quality of proof required should vary with the circumstances." P. Areeda, Antitrust Law P1507, p. 402 (1986).

526 U.S. 756, 779-80 (1999) (citing *National Collegiate Athletic Assn. v. Board of Regents of Univ. of Okla.,* 468 U.S. 85 (1984).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, the basic evidentiary record will be exactly the same record developed in the *Dagher* action, supplemented by expert testimony and other industry and market evidence. The same evidence, memories, and witnesses will be involved as in *Dagher*, with the inquiry broadened to focus on "whether the challenged restraint enhances competition," as the rule of reason requires. Certainly, the defendants will rely on the same evidence and witnesses in this case as they did in *Dagher* to mount their defense. Tolling is therefore mandated.[3]

**D.    Since the Court Never Certified a Class in the *Dagher* Action, the Named Plaintiffs' Waiver of a Full Rule of Reason Claim Does Not Bar Plaintiffs Here.**

It is axiomatic that a court's order does not bind members of a putative class if no class has been certified. *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1013 n.1 (9th Cir. 2000). In *Aguilera*, the plaintiffs had been putative class members of a prior class action, which was dismissed on the defendant's motion for summary judgment before any ruling on class certification. *Id.* at 1013. The plaintiffs subsequently brought actions against the defendant based on the same operative facts and legal arguments as in the dismissed class action. *Id.* The Ninth Circuit held that since the prior class action was never certified, "there is no res judicata effect as to unnamed members of the purported class. Thus, the [plaintiffs] in the instant case remained free to assert their rights against Pirelli despite the [prior] ruling" *Id.* at n. 1 (citing *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984) ("The judgment will not be res judicata as to other individual plaintiffs or other members of any class that may be certified. These individuals

---

[3]  Defendants incorrectly rely on *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975). In *Johnson*, the Supreme Court addressed whether the filing of an individual charge of Title VII employment discrimination with the EEOC had the effect of tolling the statute of limitations for a subsequent individual 42 U.S.C. § 1981 suit based on the same facts. In holding that *American Pipe* tolling did not apply, the Court found that Title VII and § 1981 were "separate, distinct, and independent" avenues of relief. *Id.* at 461. Here, however, both actions have been brought under Section 4 of the Clayton Act, 15 U.S.C. §15, which provides for treble damages for violations of the antitrust laws. There is thus only a single avenue for relief, not separate, distinct, and independent avenues as in *Johnson*.

or class members remain free to assert any claims they may have against the bank and title company defendants.").

Similarly, there is no res judicata effect from the *Dagher* action as to plaintiffs here. Although the parties and this Court are bound by *stare decisis* to follow the decision of the Supreme Court, plaintiffs are in no way barred by any rulings in *Dagher* or any of the strategic decisions of the named plaintiffs' counsel. *See Cullen*, 811 F.2d at 719-20 ("***An absent putative class member in an action where a class was never certified thus is not legally bound either by the named plaintiffs' choice of legal claims*** or by a dismissal for failure to allege sufficient facts to state a cause of action, even if that dismissal would have res judicata effect against the named plaintiffs.") (emphasis added), (citing *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1314-15 (4th Cir. 1978); *Roman v. ESB, Inc.*, 550 F.2d 1343, 1355-56 (4th Cir. 1976); C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1789, at 243 (2d ed. 1986).

Moreover, the law is clear that a plaintiff's claims in a later action do not have to be identical to the claims in a prior class action in order to have the benefit of tolling, so long as the claims in the latter action involve the same evidence, memories, and witnesses, as is the case here. *Tosti*, 754 F.2d at 1489. As the Ninth Circuit said in *Tosti*:

> The City argues that because Tosti's claim of discrimination is different from that presented in *Blake,* the tolling rule should not apply to her. We find no persuasive authority for a rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled. Such a rule would be illogical because one of the primary reasons a member will opt out of a class suit is that she has strong individual claims against the defendant that she believes will not be redressed by the overall class settlement.

*In re Enron Corporation Securities*, 465 F.Supp.2d 687, 718 (S.D. Tex. 2006):

> The majority of courts have followed Justice Powell's reasoning and concluded that subsequent individual claims, filed after denial of class certification or after granting class certification and opting out, need not be identical to the original class action's for tolling to apply as long as they share a common factual basis and legal nexus so that the defendant would rely on the same evidence and witnesses in his defense.

See, also, *In re: Independent Service Organizations Antitrust Litigation*, 1997 WL 161940, *3-5 (D. Kan., Mar. 12, 1997).

Accordingly, the waiver of a full rule of reason analysis in the *Dagher* action applies only to the named plaintiffs in *Dagher* and cannot bar the plaintiffs here from pressing that claim in this action, in which parties not bound by the result in *Dagher* merely present a new theory applied to the same evidence, memories, and witnesses defendants confronted or availed themselves of in the *Dagher* action.

The soundness of this rule becomes apparent when one considers that the damages sought by the class in this case on both the Section 1 and Section 7 claims are exactly the same as the damages sought by the plaintiff class in the *Dagher* action under their per se and quick look Section 1 claims: the overcharges paid by the class for gasoline purchased from Equilon and Motiva as a result of the defendants' formation and operation of the Alliance.  Thus, had the *Dagher* action produced a judgment for the plaintiffs, the class in this case would have been fully compensated for their losses, and there would have been no need to file this case.  Such a result would conserve judicial resources and promote efficiency.  Under these circumstances, it would be wasteful and counterproductive to hold that the class in this case cannot have the benefit of tolling from the *Dagher* action, but instead should have brought this case before the entry of the final judgment in *Dagher*,  and thereby burdened the courts with a second action by the same parties seeking the same relief.

   **E.     Class Action Tolling Applied During Appellate Review of the District Court's *Dagher* Decision.**

         1.     Controlling Precedent Requires, at Minimum, a Ruling on Class Certification to Cease Class Action Tolling.

In *Crown, Cork*, the Supreme Court held that the commencement of a class action suspends the applicable statute of limitations for all asserted members of the putative class "***until class certification is denied***."  462 U.S. at 354-55 (emphasis added).  The Ninth Circuit decisions have followed the holding of *Crown, Cork*.  *See Robbin*, 835 F.2d at 214 (9th Cir.

1987); *Catholic Social Services*, 232 F.3d at 1147.  Neither the Supreme Court nor the Ninth Circuit has addressed *American Pipe* tolling in the current context, where a decision on the merits of a putative class action was reached prior to a decision on class certification.  However, the clear language of these cases and the cases cited by defendants[4], and the practical differences between a ruling on class certification and a ruling on the merits as discussed below, make clear that a ruling on class certification is required to cease class action tolling.  This threshold decision was never reached in the *Dagher* action.  Accordingly, the statute of limitations on plaintiffs' claims was tolled until at least November 15, 2006, when the District Court entered its final judgment following the mandate from the Ninth Circuit.

 2.    Defendants Improperly Equate a Judgment on the Merits With a
 Denial of Class Certification.

Defendants argue that class action tolling does not apply during appellate review and that "[t]his rule should apply all the more where the district court has entered judgment on the merits against the plaintiffs in the initial action . . ."  This argument fails for several reasons.

First, as shown, *supra*, controlling precedent requires a denial of class certification to recommence running of the statute of limitations for class members.  *See Crown, Cork*, 462 U.S. at 354; *Catholic Social Services*, 232 F.3d at 1147; *Robbin*, 835 F.2d at 214.  None of these cases states that class tolling ends upon a judgment on the merits reached prior to a decision on class certification.

In support of their argument, defendants cite one Ninth Circuit decision, which actually supports plaintiffs.  *See, In re Hanford Nuclear Reservation Litigation*, 497 F.3d 1005 (9th Cir. 2007).  In *Hanford Nuclear*, a class certification motion was pending in the district court when a class member filed a separate, individual suit after the limitations period.  *Id.* at 1026.  The plaintiff argued that she was entitled to *American Pipe* tolling based on the pending class action.

---

[4] *See e.g., Andrews*, 851 F.2d at 148-49 (Noting that in *Crown, Cork*, the Supreme Court "clarified the duration and effect of tolling.  There the court stated that 'once the statute of limitations has been tolled, *it remains tolled* for all members of the putative class *until class certification is denied.*'") (emphasis in original) (citing *Crown, Cork*, 462 U.S. at 354).

*Id.* The Ninth Circuit noted that "[t]he issue in this case, which is one of first impression in our circuit, is whether *American Pipe* also permits tolling for a plaintiff who files a separate action pending class certification." *Id* In affirming the District Court's refusal to apply class tolling to the plaintiff's individual claim, the Ninth Circuit observed that "the purposes of class action tolling under *American Pipe* 'are not furthered when plaintiffs file independent actions before decision on the issue of class certification.'" *Id.* (citing *Wyser-Pratte Mgmt. Co., Inc. v. Telxon*, 413 F.3d 553, 569 (6th Cir. 2005); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983) ("[t]he policies behind Rule 23 and *American Pipe* would not be served, and in fact would be disserved, by guaranteeing a separate suit at the same time that a class action is ongoing.")).

Second, defendants' argument and the authorities on which defendants rely from outside the Ninth Circuit fail to take into account the procedural distinctions between denial of class certification and a district court's decision on the merits––namely, that reliance upon the finality of a district court's class certification decision is more reasonable than reliance on a district court's decision on the merits. In *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374 (11th Cir. 1998), a case cited by defendants, the Eleventh Circuit based its ruling to deny extension of class tolling beyond the district court's denial of class certification on this practical consideration. ("[I]nterlocutory appeals of denials of class certification are relatively uncommon and are very rarely successful. Therefore, reliance on the possibility of reversal upon an interlocutory appeal is unreasonable."). 138 F.3d at 1389. The Court noted that district courts have broad discretion with respect to class certification decisions, and a district court's denial of class certification will not be disturbed absent an abuse of discretion. *Id.* at 1381 (citations omitted). The Court also observed that a district court's class certification decision is not a "final decision" within the meaning of 28 U.S.C. § 1291 and is therefore not appealable as a matter of right. Further, interlocutory appellate review pursuant to 28 U.S.C. § 1292(b) of a class certification decision is rare because a such a decision "does not present a 'controlling question of law' to which this court should be hospitable." *Id.* (citing *Link v. Mercedes-Benz of N. Am.*, 550 F.2d 860, 862-63 (3d Cir. 1976), *cert. denied*, 431 U.S. 933 (1977)). Moreover, "[s]uccessful appeals under §

1292(b) may be expected to be rarer still; this court has not accepted a § 1292(b) appeal from a denial of class certification and reversed that denial in over a decade." *Id.*

In contrast, the district court's decision in the *Dagher* action was a "final judgment" and appealable by plaintiffs as of right. *See* 28 U.S.C. § 1291; *Catlin v. United States*, 324 U.S. 229 (1945) (decision ending litigation on merits, leaving court to execute judgment, is final). Further, unlike a decision on class certification, an appeal of right from a final judgment is far more exposed to reversal, as clearly evidenced by the Ninth Circuit's decision to reverse the District Court here and remand for further proceedings, which were to include the class issue. *See Dagher*, 369 F.3d at 1125.

Finally, refusal to extend class action tolling during the appeal of a final judgment when the class issue has not been decided would lead to "a needless multiplicity of actions – precisely the situation that Federal of Civil Procedure 23 and the tolling rule in *American Pipe* were designed to avoid." *Crown, Cork*, 462 U.S. at 351. Here, it would have been absurd for plaintiffs to have had to file individual actions to preserve their claims when the District Court made complete disposition on the merits; a timely appeal was taken; and the District Court was reversed, with a remand to continue the case, including the class motion. At that time, the putative class action was alive again until the Supreme Court granted certiorari and reversed. The District Court's dismissal of the *Dagher* action on the merits did not occur until the case was finally decided by the Supreme Court, it was sent back to the Ninth Circuit, and the District Court entered judgment for defendants following the Ninth Circuit's mandate. *See Advisory Notes* to Fed. R. App. P. 41 ("[T]he mandate is effective when the court issues it. A court of appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed."). It was at that time – November 15, 2006 – that the statute of limitations on plaintiffs' claims began to run again.

### F. The Statute of Limitations for Plaintiffs' Claims Against Saudi Refining Was Tolled Until November 15, 2006.

As discussed above, the statute of limitations is tolled for putative class members from the time of filing a class action complaint until class certification is denied. *See Crown, Cork*, 462 U.S. at 354-55. The District Court in the *Dagher* action never ruled on class certification and did not enter its final judgment for Saudi Refining until November 15, 2006, following the mandate from the Ninth Circuit. Accordingly, the statute of limitations for plaintiffs' claims against Saudi Refining was tolled until at least November 15, 2006. Contrary to defendants' argument, *American Pipe* tolling is available for plaintiffs regardless of the reason the District Court granted summary judgment for Saudi Refining. To hold otherwise is inconsistent with statute of limitations and class action principles.

Defendants rely on *Palmer v. Far West Collection Services, Inc.*, 236 F.R.D. 460 (N.D. Cal. 2006), for the proposition that *American Pipe* tolling is unavailable for later plaintiffs when a representative plaintiff in a putative class action lacks standing. (Defs'. Mem. Dismiss. at 14.). *Palmer* is distinguishable. In *Palmer*, the district court refused to allow the representative plaintiffs to amend their complaint following class certification to add new class representatives in an effort to pursue state law claims that the court had previously found the representative plaintiffs lacked standing to pursue. Here, plaintiffs were not parties to the *Dagher* action and are not precluded by the District Court's finding that the *Dagher* plaintiffs lacked standing to pursue claims against Saudi Refining. Moreover, Saudi Refining's argument that *American Pipe* tolling is unavailable to plaintiffs here simply because the named plaintiffs in the *Dagher* action were found to lack standing, is contrary to the principles underlying statutes of limitation and class actions. *See Haas v. Pittsburgh National Bank*, 526 F.2d 1083 (3d Cir. 1975) (approving *American Pipe* tolling for a later class representative on a claim that the original representative was without standing to pursue). In *Haas*, the Third Circuit stated that the original complaint provided the defendant with notice of "the claims against which it would be required to defend and also the 'number and generic identities of the potential plaintiffs.'" *Id.* at 1097. The Third Circuit concluded that "these plaintiffs were in existence at the time the action was originally

1   brought and were described as claimants in the complaint.  The only change effectuated by the

2   district court's order was the prompt addition of a nominal plaintiff [with standing]."  *Id.*  Again,

3   to make *American Pipe* tolling unavailable here would lead to the absurd result of forcing

4   putative class plaintiffs to file duplicative individual or class actions to preserve their claims.

5

6   ## II.    PLAINTIFFS' COMPLAINT MEETS THE "NOTICE PLEADING" REQUIREMENT.

7

8   ### A.    *Twombly* Has Not Abolished Notice Pleading.

9          Defendants cite *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1995 (2007), apparently in

10  support of the argument that plaintiffs' complaint needs to plead more than a short and plain

11  statement sufficient to put defendants on notice of the claims asserted against them.  The

12  Supreme Court made clear however in *Erickson v. Pardus*, 127 S.Ct. 2197 (2007), issued two

13  weeks after *Twombly*, that the "notice pleading" standard still applies.  In *Pardus*, the Court

14  stressed that:

15

16          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement
            of the claim showing that the pleader is entitled to relief."  Specific facts are not
17          necessary; the statement need only "'give the defendant fair notice of what the . . .
            claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*,
18          550 U.S. ____, ____, 127 S. Ct. 1955, ___ L. Ed. 2d ___, ___ - ___ (2007) (slip
            op., at 7-8) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d
19          80 (1957)).  In addition, when ruling on a defendant's motion to dismiss, a judge
            must accept as true all of the factual allegations contained in the complaint.  *Bell*
20          *Atlantic Corp., supra*, at ____, 127 S. Ct. 1955 (slip op., at 8-9) (citing
            *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1, 122 S. Ct. 992, 152 L. Ed.
21          2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed.
            2d 338 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.
22          2d 90 (1974)).  [127 S. Ct. at 2200.][5]

23

24                                    *       *       *

25

26  _____

    [5]  The Court's citation of *Conley v. Gibson* should also put to rest any contention that *Twombly*
27  overruled that case.  In *Twombly*, the Court discussed *Conley v. Gibson* only to clarify the
    language "no set of facts," which the Court explained meant, "once a claim has been stated
28  adequately, it may be supported by showing any set of facts consistent with the allegations in the
    complaint."  127 S. Ct. at 1969.

1
2
3

In reaching this conclusion, we do not apply any "heightened" pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished "'by the process of amending the Federal Rules, and not by judicial interpretation.'" [*Id*. at 1973, n. 14.]

4
5
6
7
8

Accordingly, plaintiffs here need only plead a short and plain statement of their Sherman Act Section 1 and Clayton Act Section 7 claims sufficient to give defendants fair notice of the violations charged.  Significantly, nowhere in defendants' papers do they claim that the Complaint does not provide them with sufficient notice of what the claims against them are in this action.

9

**B.      Plaintiffs Have Sufficiently Pled Relevant Market.**

10
11
12
13
14
15

As to the adequacy of plaintiffs' allegations of a relevant geographic market, to prove an anticompetitive merger or joint venture, a plaintiff need only show that "the merger may have a substantial anticompetitive effect *somewhere* in the United States—'in *any* section' of the United States."  *United States v. Pabst Brewing*, 384 U.S. 546, 549-50 (1966) (emphasis added).  The "crucial question in . . . every § 7 case . . . is whether a merger may substantially lessen competition *anywhere* in the United States." *Id*. at 550.  (Emphasis added.)

16
17
18
19
20
21
22
23

Here, plaintiffs did just that.  Plaintiffs alleged specific geographic markets in which Equilon and Motiva operated.  These included Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Mississippi, Missouri, Nebraska, New Mexico, Nevada, New Hampshire, New Jersey, North Carolina, Oklahoma, Pennsylvania, Rhode Island, Tennessee, Texas, Vermont, Virginia, and Wyoming.  (Compl., ¶¶ 41, 51-52.)  Moreover, the Complaint alleges the specific effects Equilon and Motiva had on gasoline prices in San Francisco, Los Angeles, Portland, Seattle, and Chicago.  (Compl., ¶ 104.)

24
25
26
27
28

Section 7 does not require mathematical precision in pleading or proof of a relevant geographic market.  Section 7 "does not call for the delineation of a 'section of the country' by metes and bounds as a surveyor would lay off a plot of ground." *Pabst, id.*;  *United States v. Kimberly-Clark Corp.*, 264 F. Supp. 439, 455 (N.D. Cal. 1967); *Crouse-Hinds Co. v. InterNorth, Inc.*, 518 F. Supp. 416, 421 n.9 (N.D.N.Y. 1980); *Boyertown Burial Casket Co. v. Walco Nat'l.*

*Corp.*, 344 F. Supp. 1357, 1361-62 (E.D. Pa. 1972).  Under this liberal standard, the allegations in the Complaint need not be more specific in identifying geographic areas where competition in the sale of gasoline might have been substantially lessened by the Equilon and Motiva joint ventures.  These allegations are clearly sufficient.  More is not required in alleging a relevant geographic market.

**CONCLUSION**

On the basis of the arguments and authorities set forth above, defendants' motion to dismiss should and must be denied.

Dated:   November 27, 2007

> ALIOTO LAW FIRM
> GRAY, PLANT, MOOTY,
> MOOTY & BENNETT, P.A.
> BLEAU, FOX & ASSOCIATES, A.P.C.
> BOESCHE MCDERMOTT LLP
>
>
> By :  _____/s/Daniel R. Shulman_____
>        Daniel R. Shulman, Esq.
>
> Joseph M.  Alioto (CA Bar #42680)
> ALIOTO LAW FIRM
> 555 California Street, Suite 3160
> San Francisco, CA  94104
> Telephone:  415-434-8900
> Facsimile:  415-434-9200
> Email:  josephalioto@mac.com
>
> Daniel R.  Shulman, *Pro Hac Vice* (MN Bar #100651)
> Jeremy L. Johnson, *Pro Hac Vice* (Pending)
> (MN Bar #328558)
> GRAY, PLANT, MOOTY, MOOTY
>   & BENNETT, P.A.
> 500 IDS Center, 80 South Eighth Street
> Minneapolis, MN  55402
> Telephone:  612-632-3335
> Facsimile:  612-632-4335
> Email:  daniel.shulman@gpmlaw.com

1

2      Thomas P.  Bleau (CA Bar #152945)
       BLEAU, FOX & ASSOCIATES
3      3575 Cahuenga Blvd., West, Suite 580
       Los Angeles, CA  90068
4      Telephone:  323-874-8613
       Facsimile:  323-874-1234
       Email:  bleaushark@aol.com
5
       Bradley K. Beasley, *Pro Hac Vice* (OK Bar #628)
6      BOESCHE MCDERMOTT LLP
       610 S Main Ste 300
7      Tulsa, OK  74119-1258
       Telephone: 918-583-1777
8      Facsimile: 918-592-5809
       Email:  bbeasley@bme-law.com
9

10     GP:2293547 v1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28