# EXHIBIT B

LEXSEE 1999 U.S. DIST. LEXIS 22170

**RODGER JENSON; MARGARET JENSON; MARSHALL ROSS, TRUSTEE OF THE MARSHALL AND WALTA K. ROSS REVOCABLE TRUST, Plaintiffs, vs. ALLISON-WILLIAMS COMPANY, erroneously sued as ALISON-WILLIAMS COMPANY; JOHN DAVID HANSON aka J.D. HANSON, Defendants.**

**CASE NO: 98-CV-2229 TW (JFS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

*1999 U.S. Dist. LEXIS 22170*

**August 23, 1999, Decided**
**August 23, 1999, Filed**

**DISPOSITION:**    [*1] Defendants' motion to dismiss GRANTED IN PART and DENIED IN PART.

**COUNSEL:** For RODGER JENSEN, MARGARET JENSEN, MARSHALL ROSS, plaintiffs: Timothy C Karen, Law Offices of Timothy C Karen, Del Mar, CA.

For ALISON-WILLIAMS COMPANY, defendant: Georgia L Williams, McVay and Corrigan, San Diego, CA.

For ALISON-WILLIAMS COMPANY, defendant: Terrence J Fleming, Randy G Gullickson, Lindquist and Vennum, Minneapolis, MN.

For JOHN DAVID HANSON, defendant: Donald W McVay, McVay and Corrigan, San Diego, CA.

**JUDGES:** THOMAS J. WHELAN, Judge, United States District Court, Southern District of California.

**OPINION BY:** THOMAS J. WHELAN

**OPINION**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

[Doc. No. 23]

**I. Introduction**

Defendants Allison-Williams Company and John David Hanson move to dismiss plaintiffs' first amended complaint pursuant to *Rules 9(b)* and *12(b)(6) of the Federal Rules of Civil Procedure*. Rodger and Margaret Jenson, and Marshall Ross, trustee of the Ross Revocable Trust, collectively oppose. This court has jurisdiction pursuant to *15 U.S.C. § 78aa, 28 U.S.C. §§ 1331, 1332*, and *1367*. For the reasons expressed [*2] below, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

**II. Background**

Between April 28 and March 18, 1992, plaintiffs Marshall Ross, trustee of the Ross Revocable Trust ("the Trust") and Rodger and Margaret Jenson (collectively "Plaintiffs") invested $ 50,000 each in Towers Financial Corporation Promissory Notes ("Towers Notes"). Plaintiffs allege that they purchased Towers Notes on the recommendation of their broker, Defendant John David Hanson ("Hanson"), a stockbroker employed by Defendant Allison-Williams Company ("Allison-Williams"). Plaintiffs contend that Towers Financial was a fraudulent criminal "ponzi scheme" and that, despite the existence of numerous warning signs, Defendants recommended investments in the Towers Notes. (See Pls.' First Am. Compl. PP 19, 25, 26). [1]

> 1 All citations to "(FAC P    )" refer to the numbered paragraphs in plaintiff's first amended complaint filed April 2, 1999.

Plaintiffs commenced this action on December 9, 1998, asserting [*3] numerous claims arising under the federal securities laws, Minnesota's Blue Sky Laws, and common law claims sounding in fraud, breach of fiduciary duty, and negligence. Plaintiffs filed a first amended complaint on April 2, 1999, adding additional claims and changing the identify of the Trust plaintiffs. The com-

plaint states that Minnesota substantive law governs Plaintiffs' state law claims because all of the alleged misconduct detailed in the complaint occurred in Minnesota. (FAC P 170).

On June 6, 1999 Defendants filed a motion to dismiss pursuant to *Rules 9(b)* and *12(b)(6) of the Federal Rules of Civil Procedure*. Defendants' motion argues that the court should dismiss Plaintiffs' first amended complaint because (1) Plaintiffs' securities law claims are time-barred by the applicable statute of limitations, (2) their common law fraud claim fails to plead fraud with the particularity required by *Rule 9(b)*, and (3) the remaining claims are legally deficient under Minnesota law. Plaintiffs filed their opposition on June 22, 1999, asserting that their securities claims are saved by operation of various tolling doctrines and that their claims have substantive merit. Defendants filed [*4] their reply on July 6, 1999. The court took the motion under submission and issues this order without oral argument pursuant to Civil Local Rule 7.1.d.1.

### III. Legal Standard

A motion to dismiss pursuant to *Rule 12(b)(6)* tests the sufficiency of the complaint. See *North Star Int'l. v. Arizona Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983)*. Dismissal of a claim under this Rule is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957))*.

Under *Rule 12(b)(6)*, a court may dismiss a complaint in three instances. First, dismissal is warranted where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984); Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 1832, 104 L. Ed. 2d 338 (1989)* ("*Rule 12(b)(6)* authorizes a court to dismiss a claim on the basis of a dispositive [*5] issue of law."). Second, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson, 749 F.2d at 533*. Third, dismissal is appropriate where the complaint pleads facts that affirmatively establish that the plaintiff has no legal claim. See, e.g., *Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 n.1 (9th Cir. 1997); American Nurses' Ass'n. v. Illinois, 783 F.2d 716, 723 (7th Cir. 1986)* (Posner, C.J.) ("A plaintiff who files a long and detailed complaint may plead himself out of court by including factual allegations which if true show that his legal rights were not invaded.").

In reviewing a motion to dismiss pursuant to *Rule 12(b)(6)*, the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *North Star, 720 F.2d 578*. However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)*; see also *In re Verifone Sec. Litig., 11 F.3d 865, 868 (9th Cir. 1993)*. [*6]

The court may not generally consider material outside the complaint and attached documents when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); Durning v. First Boston Corp., 815 F.2d 1265, 1266 (9th Cir. 1987)* ("when the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true."). The court may, however, consider any documents specifically identified in the complaint whose authenticity is not questioned. See *Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1997)*. The court may consider the full text of those documents, even when the complaint quotes only selected portions. *Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995)*. The court may also consider material properly subject to judicial notice without converting the motion into a motion for summary judgment. *Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994)* (citing *Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986))*. Thus, the court may take judicial notice [*7] of court documents filed other proceedings and consider them in ruling on a motion to dismiss. *Henson v. CSC Credit Svcs., 29 F.3d 280, 284 (7th Cir. 1994)*.

### IV. Discussion

#### A. Plaintiffs' Voluntary Dismissal re: Securities Claims

In their opposition to Defendants' motion to dismiss, Plaintiffs concede that several of their securities claims are time-barred by the applicable statute of limitations. The Trust concedes that its first, second, third, fourth, fifth, seventh and eighth claims for violations of federal and Minnesota state securities laws are time-barred as against Defendant Hanson. (See Pls.' Mem. P. & A. Opp'n. Mot. Dismiss at 14:27-28; 25:27-28). Plaintiffs Rodger and Margaret Jenson concede that their seventh and eighth claims arising under the Minnesota securities laws are time-barred as to all defendants. (Id. at 25:27-28).

The court therefore **DISMISSES** Plaintiff Rodger and Margaret Jenson's seventh and eighth claims as against all defendants, **DISMISSES** the Trust's seventh and eighth claims as against defendant Hanson, and

DISMISSES the Trust's first, second, third, fourth, and fifth claims against Defendant [*8] Hanson. This dismissal leaves standing only the Trust's federal and Minnesota securities claims against *only* Defendant Allison-Williams. The Jenson Plaintiffs are no longer a party to any of the securities law claims in the first amended complaint.

**B. Timeliness of the Trust's Federal and Minnesota Securities Claims**

The first, second, third, fourth, and fifth claims assert that Defendant Allison-Williams violated various antifraud provisions of the federal securities laws, including Sections 10(b) [*15 U.S.C. § 78j(b)*] and 20(a) [*15 U.S.C. § 77t(a)*] of the Securities Exchange Act of 1934 ("Exchange Act") and *Sections 12(a)(1), 12(a)(2)* [*15 U.S.C. § 77l(a)(1)-(a)(2)*], and 15 [*15 U.S.C. § 77o*] of the Securities Act of 1933 ("Securities Act"). The Trust's seventh and eighth claims allege that Allison-Williams violated Section 80A.01 of the Minnesota Securities Act. All of these claims are based on alleged misrepresentations and omissions made in connection with the Trust's purchases of Towers Notes. Defendant Allison-Williams seeks to dismiss these claims with prejudice for [*9] failure to comply with the applicable statute of limitations. Defendant asserts that the Trust commenced this action over six years after it purchased Towers notes.

Numerous lawsuits have been filed concerning the alleged sale of Towers Notes. On March 1, 1993, a class action lawsuit entitled Dinsmore v. Towers Financial Corp. et al. ("Dinsmore") was commenced in the Central District of California. The complaint did not specifically name Allison-Williams as a defendant, but it did create a defendant class consisting of brokerage firms that sold Towers Notes. The action was subsequently consolidated and transferred to the Southern District of New York. On June 10, 1994, the Dinsmore plaintiffs filed an amended complaint that specifically named numerous brokerage firms, including Allison-Williams. In December 1996, the class action plaintiffs voluntarily dismissed, without prejudice, their claims against the brokerage house defendants.

The Trust asserts that its claims are timely because its securities claims were tolled during the pendency of the Dinsmore class action under the doctrine announced in *American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974).* [*10] For the reasons expressed below, the court agrees.

**1. Timeliness - General Principles**

For purposes of this order, all seven of the Trust's securities fraud claims are governed by an identical statute of limitations: plaintiff must assert its claims within one year after discovery of facts constituting the viola-

tion and in no event more than three years after the violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364, 111 S. Ct. 2773, 2782, 115 L. Ed. 2d 321 (1991)* ("Lampf") (statute of limitations for § 10(b) and *Rule 10b-5* claims); *15 U.S.C. § 77m* (statute of limitations for § 12(a) claims); *Bormann v. Applied Vision Sys., Inc., 800 F. Supp. 800, 814 (D. Minn. 1992)* (statute of limitations for Minnesota statutory claims). A plaintiff asserting a claim under the securities laws must affirmatively plead facts showing compliance with the statute of limitations. Cf. *Toombs v. Leone, 777 F.2d 465, 468 (9th Cir. 1985)* (applying to § 12(a) claims). The three-year limitations periods governing these claims are absolute and generally not subject to equitable tolling. [*11] *Lampf, 501 U.S. at 364, 111 S. Ct. at 2782; Meadows v. Pacific Inland Sec. Corp., 36 F. Supp. 2d 1240, 1250 (S.D. Cal. 1999)* (Stiven, J.); *Kopperud v. Agers, 312 N.W.2d 443, 446-447 (Minn. 1981).*

A plaintiff may, however, take advantage of a tolling rule available when a court dismisses or refuses to certify a class action where plaintiff would have been a class member. In *American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554, 94 S. Ct. 756, 766, 38 L. Ed. 2d 713 (1974)* ("American Pipe"), the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted class members who would have been members had the suit been permitted to continue as a class action." The Court reasoned that suspending the limitations period during the pendency of a class action balances defendants' rights to be free from stale clams with plaintiffs' rights to pursue their claims in the event the class action ultimately fails:

> The policies of ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights ... are satisfied when, as here, a [*12] named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation.

*Id. at 555, 94 S. Ct. at 766-67* (internal citations and quotations omitted). "Class members who do not file suit

while the class action is pending cannot be accused of sleeping on their rights," the Court later declared, because "*Rule 23* both permits and encourages class members to rely on the named plaintiffs to press their claims." *Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 352-53, 103 S. Ct. 2392, 2397, 76 L. Ed. 2d 628 (1983)*. A contrary rule would expose class members to the possibility of having their claims time-barred if the court ultimately denied the motion for class certification or dismissed the case on other procedural grounds. *American Pipe, 414 U.S. at 553, 94 S. Ct. at 766*; [*13] *Crown, Cork & Seal Co., 462 U.S. at 349, 103 S. Ct. at 2395*. This risk would encourage class members to opt-out of the class, to file protective motions to intervene, or to commence individual actions to preserve the timeliness of their claims, undermining "the principal purposes of the class-action procedure-promotion of efficiency and economy of litigation..." Id.

A concurring opinion by Justice Powell in Crown, Cork & Seal Co. clarified that American Pipe would not suspend the statute of limitations as to subsequent claims that are *unrelated* to those asserted in the class action because the class action did not place the defendant on notice of those claims. *462 U.S. at 354-55, 103 S. Ct. at 2398* (Powell, J., joined by Rehenquist, J. and O'Connor, J.). Justice Powell stated that application of American Pipe was appropriate only where the subsequent individual claims "concern the same evidence, memories, and witnesses as the subject matter of the original class suit." *Id. at 355, 103 S. Ct. at 2398* (citation omitted). Unrelated, different, or peripheral claims, therefore, "are not protected under American Pipe [*14] and barred by the statute of limitations." Id.

Subsequent decisions have embraced Justice Powell's reasoning and have held that an individual action need not be identical to the original class action; the individual claims need only share a factual and legal relationship such that the defendant would likely rely on the same evidence or witnesses to put on its defense. See, e.g., *Cullen v. Margiotta, 811 F.2d 698, 719-20 (2d Cir. 1987)*, overruled on other grounds *Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987); Tosti v. City of Los Angeles, 754 F.2d 1485, 1489 (9th Cir. 1985)*. For example, in *Barnebey v. E.F. Hutton & Co., 715 F. Supp. 1512, 1528-29 (M.D. Fla. 1989)*, the district court held that American Pipe suspended the statute of limitations as to state law claims not asserted in the original class action where the state claims involved legal theories identical to those of the federal claims included in the previous class action complaint.

Here, the Trusts' claims arising under the Minnesota Securities Act and are in all material respects identical [*15] to its federal securities claims. See, e.g., *Minnea-*

*polis Employees Retirement Fund v. Allison-Williams Co., 519 N.W.2d 176, 179 (Minn. 1994)* (recognizing similarities between Minnesota Securities Act and federal law). Defending against the Minnesota securities claims will require Allison-Williams to rely on "the same evidence, memories, and witnesses" as the federal claims asserted in the Dinsmore action. The court therefore holds that American Pipe, to the extent applicable, suspended the statute of limitations for the federal and Minnesota securities claims.

Neither the Supreme Court nor the Ninth Circuit has addressed the question presented here: does American Pipe require suspension of the statute of limitations for claims asserted against unnamed or putative members of a *defendant* class? The leading authority confronting this question is, surprisingly, a 22-year old decision from a Pennsylvania district court: *Chevalier v. Baird Sav. Ass'n., 72 F.R.D. 140 (E.D. Pa. 1976)*. In Chevalier, the district court held that American Pipe does not suspend the statute of limitations as to *unnamed* members of a defendant class. [*16] *Id. at 155*. The court reasoned:

> We feel ... that [the American Pipe] tolling doctrine can only be applied to defendants as of the time they were added as party defendants in one of the complaints filed by plaintiffs... Otherwise, defendants would be required to defend against actions of which they had no knowledge whatsoever until after the statute of limitations had run.

*Id. at 155*. Thus, the statute of limitations is not tolled against a defendant class member until the moment that party is specifically named as a defendant, either through an amended complaint or otherwise. Id.

Subsequent decisions have reduced Chevalier to a simpler rule: the court will suspend the statute of limitations against an unnamed class defendant ultimately added as a defendant on the date the defendant *knew* it was included a class defendant in the class action. Chevalier merely recognizes that the date defendants are specifically named and served with the complaint is the clearest date they could receive notice "of the substantive claims being brought against them" and "of the number and generic identities of the potential plaintiffs [*17] who may participate in the judgment." *American Pipe, 414 U.S. at 555, 94 S. Ct. at 766-67*. A subsequent district court decision, for example, tolled the statute of limitations from the date the action was commenced where the defendants conceded that they had actual notice of the action and their inclusion as class defendants on the date the action was commenced. *In re Activision*

*Sec. Litig., 1986 U.S. Dist. LEXIS 18834*, NO. C-83-4639(A), 1986 WL 15339, at *3 (N.D. Cal. Oct. 20, 1986). The court will therefore suspend the statute of limitations as to Allison-Williams on (1) the date it was specifically named as a defendant and served with a complaint or (2) the date it received actual notice of the pendency of the class action and its potential involvement in it--whichever occurred earlier. *Meadows, 36 F. Supp. 2d at 1248-49.* [2]

> 2  Plaintiff relies on the Seventh Circuit's decision in *Appleton Elec. Co. v. Graves Truck Line, Inc., 635 F.2d 603, 610 (7th Cir. 1980)*, where the court rejected Chevalier and suspended the statute of limitations from the date of commencement of the original class action. Judge Stiven has comprehensively, and in this court's view correctly, rejected identical arguments asserted by Plaintiff's counsel in a similar case. The court incorporates Judge Stiven's reasoning by reference. See *Meadows, 36 F. Supp. 2d at 1248-49.* Minnesota law is in accord; in *Carlson v. Independent School Dist. No. 623, 392 N.W.2d 216, 223 (Minn. 1986)*, the Minnesota Supreme Court reversed an intermediate appellate court that relied upon Appleton and held that tolling did not apply against an unnamed defendant class member where there was no evidence that the defendant received actual notice of the class action.

[*18] Finally, under the doctrine of *Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)*, this court must look to Minnesota substantive law in determining whether class action tolling doctrines of American Pipe and Chevalier apply to Plaintiffs' claims arising under the Minnesota Securities Act. See, e.g., *Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109-11, 65 S. Ct. 1464, 1470-71, 89 L. Ed. 2079 (1945)* (federal court must apply state law specifying length of applicable statute of limitations); *Ragan v. Merchants Transfer & Warehouse Co., Inc., 337 U.S. 530, 532, 69 S. Ct. 1233, 1234, 93 L. Ed. 1520 (1949)* (federal court must apply state law on tolling of statute of limitations). Minnesota law on the applicability of American Pipe is similar to federal law, including the requirement that the defendant class member receive actual notice of the pendency of the original class action. See, e.g., *Bartlett v. Miller and Schroeder Municipals, Inc., 355 N.W.2d 435, 439 (Minn. Ct. App. 1984)* (adopting American Pipe but refusing to apply it to a second class action); *Carlson v. Independent School Dist. No. 623, 392 N.W.2d 216, 223 (Minn. 1986)* [*19] (adopting reasoning of American Pipe but refusing to apply it to unnamed class defendants absent evidence of actual notice); *First State Bank of Cosmos et al. v. Spinner et al.*, No. 97-14020, at 37-38 (D. Minn. 4th Dist. Feb. 13,

1998) (Ginsburg, J.) (unpublished Minnesota state court decision holding that American Pipe class action rule tolled individual Towers Notes suits based on Dinsmore class action). The tolling rules articulated in American Pipe, Chevalier, and Meadows will therefore apply to all seven of the Trust's securities claims arising under federal and state law.

### 2. Timeliness - Analysis

It is unclear from Defendants' motion to dismiss whether they seek dismissal of Trust's securities claims based on the one-year or the three-year statute of limitations. Defendants generally argue that the statute of limitations expired because the Trust commenced this action more than six years after it purchased Towers Notes. The motion does not make any specific arguments concerning the precise time the Trust discovered the facts constituting Defendants' violation of the federal securities laws. Therefore, the court will confine its analysis to [*20] whether Plaintiffs commenced this action within the three-year statute of limitations.

For purposes of this order, the court finds the following chronology of events relevant to the statute of limitations issue:

> **. March 1, 1993**: The Dinsmore action is commenced in the Central District of California. The complaint names a defendant class of brokerage houses, but does not specifically name Allison-Williams. (FAC P 174).

> **. June 10, 1994**: The Dinsmore plaintiffs file a Second Amended Consolidated Class Action Complaint specifically adding Allison-Williams as a defendant. (FAC P 178).

> **. Dec. 11, 1996**: The Dinsmore plaintiffs voluntarily dismiss the action without prejudice as against the defendant brokerage houses, including Allison-Williams. (FAC P 181).

> **. Dec. 9, 1998**: Plaintiffs commence this action. [3]

Two-thousand four-hundred and nine (2,409) days, or 6.6 years, elapsed between the date the Trust claims to have purchased Towers Notes on April 28, 1992 and the date Plaintiffs commenced this action on December 9, 1998. All parties agree that American Pipe and Chevalier suspended the applicable statute of limitations [*21] for *at least* 912 days--the number of days that elapsed between June 10, 1994, the date the Dinsmore plaintiffs

added Allison-Williams a defendant in the action, and December 11, 1996, the date the Dinsmore action was voluntarily dismissed as against the brokerage. (FAC PP 174, 181; Defs.' Mem. P. & A. Supp. Mot. Dismiss at 8:12-14); accord *Meadows, 36 F. Supp. 2d at 1248-50.* Removing the 912 indisputably tolled days from 2,409 leaves 1,497 non-tolled days, approximately 4.01 years. Thus, if the statute of limitations was suspended when Allison-Williams was added as a defendant in the Dinsmore action, the Trust filed this action over a year after expiration of the three-year statute of limitations. *Lampf, 501 U.S. at 364, 111 S. Ct. at 2782.*

> 3    Defendants do not dispute that the first amended complaint Plaintiffs filed on April 2, 1999 "relates back" to the filing date of the original complaint under *Rule 15(c) of the Federal Rules of Civil Procedure.* The amended complaint did not add any new defendants and the allegations contained therein indisputably "arose out of the conduct, transaction, or occurrence set forth ... in the original pleading." *Fed. R. Civ. P. 15(c)(2).*

[*22] The Trust asserts that the court should suspend the statute of limitations from March 1, 1993, the date of commencement for the initial Dinsmore class action. Rolling back the tolling period from June 10, 1994 to March 1, 1993 would suspend the statute of limitations an additional 465 days, bringing the Trust's securities claims into compliance with the three-year statute of limitations. As Judge Stiven correctly recognized, however, "there can be no tolling back to March 1, 1993 unless the moving defendant here had actual notice of the pendency of the Dinsmore action." *Meadows, 36 F. Supp. 2d at 1249.* The inquiry therefore is whether the complaint adequately pleads that Allison-Williams knew about the Dinsmore action on or about March 1, 1993.

### 3. Timeliness: "Actual Notice"

Paragraph 175 of the first amended complaint provides the basis of Plaintiffs' contention that Allison-Williams had actual notice of the Dinsmore action on or about March 1, 1993. The complaint bases this assertion on allegations that "management level officials" at Allison-Williams reviewed newspaper and magazine articles distributed shortly after March 1, 1993 describing [*23] the lawsuit. (FAC P 175). The complaint adds that "within a short time after the filing of Dinsmore, it was well known among the brokerage houses that sold the Towers Notes, including [Allison-Williams], that the class action had been filed in an attempt to hold all of the brokerage houses ... liable for investor losses." (Id.). According to Plaintiffs, these allegations "serve[] to toll the statute as to [Allison-Williams] ... even though [it] was

not expressly named in the [March 1993] class action complaint." (Id.).

Allison-Williams contends that these allegations are too conclusory to plead its actual notice of the Dinsmore action. It asserts that the Trust must plead detailed facts in the complaint demonstrating that Allison-Williams had actual notice of the Dinsmore action. (See Defs.' Mem. P. & A. Reply at 5-7).

To survive a motion to dismiss, however, Plaintiffs need only aver in conclusory fashion that Allison-Williams had actual notice of the pendency of the Dinsmore action; Plaintiffs need not plead specific facts to support this contention. The second sentence of *Rule 9(b) of the Federal Rules of Civil Procedure* provides: "Malice, [*24] intent, knowledge, and other condition of mind of a person may be averred generally." *Fed. R. Civ. P. 9(b)* (emphasis added). As interpreted by the Ninth Circuit, this provision affirmatively negates any requirement that a plaintiff plead facts to support allegations of a defendant's knowledge or intent. *In re Glen-Fed Sec. Litig., 42 F.3d 1541, 1545 (9th Cir. 1994)* (en banc). A plaintiff need not, under *Rule 9(b)*, plead "any particularity in connection with an averment of intent, knowledge, or condition of the mind." Id. (quoting *Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973)*) (emphasis in original). In recognition of this rule, courts have repeatedly sustained conclusory allegations of knowledge or intent where a defendant's state of mind is a fact plaintiff must plead. See, e.g., *Gottreich v. San Francisco Inv. Corp., 552 F.2d 866, 866-67 (9th Cir. 1977)* (conclusory allegation that "the defendants knew ... that the representations were false" adequate to plead element of fraudulent intent in securities fraud action); *Nance v. Vieregge, 147 F.3d 589, 590-91 (7th Cir. 1998)* (conclusory [*25] allegation of intent adequate to plead willful action in Section 1983 civil rights action, but affirming dismissal of complaint for other reasons); *Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1269-70 (10th Cir. 1989)* (conclusory assertion of intent sufficient to plead element of discriminatory animus in civil rights case); *Jackson v. East Bay Hosp., 980 F. Supp. 1341, 1353-54 (N.D. Cal. 1997)* (conclusory allegation of "malice" and "conscious disregard" sufficient to plead mental state required for punitive damages prayer under California law). [4]

> 4    A narrow exception to this rule is Section 21D(b)(2) of the Private Securities Litigation and Reform Act of 1995 ("PSLRA") which applies to pleading the substantive element of scienter in actions brought under § 10(b) and *Rule 10b-5.* The statute requires plaintiff to plead in its complaint specific facts "giving rise to a strong inference that the defendant acted with the required state of

mind." *15 U.S.C. § 78u-4(b)(2)*; *In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 973, 1999 WL 595194*, at * (9th Cir. 1999). In areas not covered by the PSLRA, such as notice required to toll the statute of limitations, the relaxed requirements of the second sentence of *Rule 9(b)* apply.

[*26] The second sentence of *Rule 9(b)* recognizes that the Trust cannot supply detailed evidentiary facts supporting Allison-Williams' knowledge at the pleading stage, before it has an opportunity to conduct discovery. 2 James Wm. Moore et al., Moore's Federal Practice P 9.03[3] (3d ed. 1998); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1301 at 674-76 (2d ed. 1990). The Trust could have survived Allison-Williams' motion to dismiss by merely pleading that, based on information and belief, Allison-Williams knew about the Dinsmore action in March 1993. The surplus facts and detail provided by paragraph 175 of the first amended complaint far exceed the requirements of *Rule 9(b)*.

The Trust has adequately pled that Allison-Williams had actual notice of the Dinsmore action in early March 1993. This results in a total suspension of the three-year statute of limitations between March 1, 1993 and December 11, 1996, a period spanning 1,436 days or 3.93 years. Subtracting this period from the 2,409 days that elapsed between the Trust's purchase of the Towers Notes and the commencement of this action yields a non-tolled period of 973 days or 2.66 years. [*27] The court therefore holds that the Trust filed its federal and Minnesota securities claims within the three-year statute of limitations. Whether the Trust's allegations of Allison-Williams' knowledge can withstand the evidentiary test of summary judgment remains to be seen. On its face, however, the first amended complaint complies with federal pleading standards and adequately alleges entitlement to suspension of the statute of limitations on March 1, 1993. [5]

    5   Defendant obliquely asserts that the tolling rule from American Pipe does not apply to claims where "equitable tolling" is unavailable, such Plaintiffs' claims arising under the Minnesota Securities Act. To the extent Defendant's motion actually makes this argument, the court rejects it. American Pipe is not an "equitable" tolling rule; the rule derives from the Supreme Court's interpretation of *Rule 23 of the Federal Rules of Civil Procedure*. It is a rule of federal procedural common law that applies to all class actions where certification is sought under *Rule 23*, not simply class actions arising under the federal securities laws. Application of American Pipe does

not turn on whether a defendant concealed evidence or material facts from the plaintiff or other equitable factors that may arise in individual cases.

The court cannot locate any decisions that have refused to apply American Pipe because "equitable tolling" was not available for the underlying claim. Several district courts have recognized the distinction between American Pipe and principles of "equitable tolling" and have applied American Pipe notwithstanding the inapplicability of equitable tolling to certain federal securities law claims. See, e.g., *In re Discovery Zone Sec. Litig., 181 F.R.D. 582, 600 n.11 (N.D. Ill. 1998)* (holding that American Pipe applies to § 10(b) claims notwithstanding that § 10(b) claims are not subject to equitable tolling); *Salkind v. Wang, 1995 U.S. Dist. LEXIS 4327*, No. Civ.A. 93-10912- WGY, 1995 WL 170122, *3 (D. Mass. Mar. 30, 1995) (same).

[*28] **4. Timeliness: Enforceability of Previous Tolling Stipulations**

The parties devote considerable space in their briefs to disputing the validity of several tolling stipulations signed by Allison-Williams and Marshall Ross before Plaintiffs commenced this action in December 1998. More specifically, the Trust asserts that the statute of limitations was tolled not only by the Dinsmore class action, but also by operation of several stipulations entered into between Mr. Ross and Allison-Williams in Goodman et. al. v. Ashford Inv. et. al., No. 700079, a previous action filed in Superior Court action and voluntarily dismissed in early 1999. (FAC P 182). The stipulations purported to toll the statute of limitations on Ross' claims against Allison-Williams for the period between May 15, 1996 and February 1, 1999. (Id.).

Allison-Williams observes that Mr. Ross was erroneously named in the Goodman action in his *individual* capacity rather than as trustee representing the Trust. Defendant argues that the stipulations he signed were ineffective because the Trust--the actual owner of the Towers Notes--was not a party to the stipulations or the Goodman litigation. [*29] The Trust counters by asserting that Mr. Ross, who is allegedly "in his eighties and blind," mistakenly commenced litigation in his own name rather than in the name of the Trust. The Trust insists that Allison-Williams was fully aware of this mistake and is now attempting to avoid the freely negotiated tolling stipulations it signed earlier. (See Pls.' Mem. P. & A. Opp'n. at 10). [6]

    6   The court's holding that the Trust's claims are timely due to the pendency of the Dinsmore class

action largely obviates the need to address this argument. However, since Allison-Williams is certain to reassert the purported unenforceability of the tolling stipulations in a future motion, the court will address the issue at this time.

The court agrees with the Trust, but for other reasons. Under well-established principles of trust law, Mr. Ross, as trustee of the Ross Trust, held legal title to the Towers Notes at the time he signed the tolling stipulations. See, e.g., *Vournas v. Fidelity Nat. Title Ins. Co.,* 73 Cal. App. 4th 668,    , 86 Cal. Rptr. 2d 490, 493 (1999). [*30] "Where the legal title to property is vested in the trustee, it is unnecessary to state in the complaint the means by which plaintiff acquired it, and so far as concerns the defendant he is the real party in interest and may sue in his own name." *McKoin v. Rosefelt,* 66 Cal. App. 2d 757, 768-69, 153 P.2d 55, 60 (1944). The stipulations signed by Mr. Ross effectively tolled the Trust's claims against Allison-Williams because under California law, [7] the "trust is not an entity separate from the trustees," and "the trustee, rather than the trust, is the real party in interest in litigation involving trust property." *Moeller v. Superior Court,* 16 Cal. 4th 1124, 1132 n.3, 69 Cal. Rptr. 2d 317, 321 n.3, 947 P.2d 279, 283 n.3 (1997) (citations omitted); 60 Cal.Jur.3d, Trusts § 355 (1994) (same). For purposes of this order, the court holds that Mr. Ross' failure to specifically name the trust in the Goodman action does not affect the enforceability of the tolling stipulations entered into between himself and Allison-Williams.

> 7  Although Minnesota substantive law apples to Plaintiffs' state law claims, (FAC P 170), the court assumes for purposes of this order that California law would control the legal effect of the tolling stipulations because (1) Goodman was an action pending in San Diego Superior Court, governed by California procedural law, and because (2) Mr. Ross is a California resident and thus the Trust is presumptively governed by California substantive law. Cf. *American Bank of Commerce v. Corondoni,* 169 Cal. App. 3d 368, 371-72, 215 Cal. Rptr. 331, 333 (1985).

[*31]  **C.  Plaintiffs' Minnesota Consumer Fraud Claim**

Plaintiffs' eleventh claim alleges that Defendants' violated the Minnesota Prevention of Consumer Fraud Act ("MPCFA"). See *Minn. Stat. § 325F.69.* The Act prohibits fraud, misrepresentation, or deceptive practices "in connection with the sale of any merchandise." *Minn. Stat. § 325F.69(1).* The Act broadly defines "merchandise" to include "any objects, wares, goods, commodities, intangibles, real estate, loans, or services." Id.

Allison-Williams asserts that the court should dismiss Plaintiffs' MPCFA claim because it clashes with the Minnesota Securities Act, an act specifically governing fraud and misrepresentation in connection with the sale of securities. Defendant asserts that the two acts "conflict in a number of important ways," including the culpability required to establish liability, the distinct state regulatory agencies that enforce compliance with each act, and the longer statute of limitations applicable to the MPCFA. Allison-Williams asserts that allowing a plaintiff to assert an MPCFA claim based on facts which identically support a securities act claim would "eviscerate the express limitations, express [*32] remedies, regulatory oversight and scienter provisions of the Securities Act and create liability for securities 'fraud' where none was intended." (See Defs.' Mem. P. & A. Supp. Mot. Dismiss at 17-18). [8]

> 8  Allison-Williams repeatedly asserts, throughout its motion, that "the MPCFA is a general anti-fraud statute that targets 'ordinary consumer transactions.'" (See Defs. Mem. P. & A. Supp. Mot. Dismiss at 15:10-11). The sole case Allison-Williams relies upon, *Church of the Nativity v. Watpro, Inc., 491 N.W.2d 1 (Minn. 1992)* used the expression "ordinary consumer transactions" to describe the reach of the Uniform Commercial Code (UCC), not the Consumer Fraud Act. Id. at 7. None of the decisions cited by Allison-Williams purports to limit the coverage of the MPCFA to "ordinary consumer transactions."

The court finds Allison-Williams' argument unpersuasive for three reasons. First, Allison-Williams' motion acknowledges that the issue of whether instruments such as the [*33] Towers Notes constitute "merchandise" under the MPCFA is unsettled in Minnesota. Minnesota courts have given broad construction to the definition of "merchandise." For example, the Minnesota Supreme Court has held that the MPCFA covers the sale of investment contracts because the statute defines "merchandise" to include "commodities" and "intangibles." *Jenson v. Touche Ross & Co., 335 N.W.2d 720, 728 (Minn. 1983).* A district court applying Minnesota law has held that the statute applies to the sale of insurance. *Parkhill v. Minnesota Mutual Life Ins. Co., 995 F. Supp. 983, 998 (D. Minn. 1998).* A Minnesota state district court has rejected Allison-Williams' arguments entirely, holding that the Towers Notes qualify as "merchandise" under the MPCFA. See First State Bank of Cosmos et al. v. Spinner et al., No. 97-14020, at 52 (D. Minn. 4th Dist. Feb. 13, 1998) (finding that Towers notes fall under "intangibles" under MPCFA, relying on Jenson). These decisions suggest that the MPCFA may apply to the sale of a wide variety of intangibles, including investment instruments already covered by comprehensive and spe-

cific state regulations. The MPCFA's [*34] definition may be broad enough to encompass the Towers Notes, even if those Notes also meet the statutory definition of a "security" under the Securities Act. Given the indisputably unsettled nature of this question, the court declines to dismiss this claim at this stage of the litigation.

Second, canons of statutory construction under Minnesota law require this court to give effect to the Securities Act and the MPCFA, even if inconsistent, so long as the two statutes do not *irreconcilably conflict. State by Beaulieu v. Independent School Dist. No. 624, 533 N.W.2d 393, 396 (Minn. 1995); Minn. Stat. § 645.26(1)*. Minnesota courts have recognized that merely because a particular act or course of conduct is actionable under two overlapping or even inconsistent legal theories does not, by itself, render the theories in irreconcilable conflict. See, e.g., *Wirig v. Kinney Shoe Corp., 461 N.W.2d 374 (Minn. 1990)* (holding that plaintiff could maintain simultaneous action under Human Rights Act and common law battery because claims require different elements of proof and address different injuries); *State v. Chryst, 320 N.W.2d 721 (Minn. 1982)* [*35] (holding that prosecutor could prosecute conduct under theft statute or odometer tampering statute because statutes punished different underlying conduct and no irreconcilable conflicts existed between the statutes). An "irreconcilable conflict" exists only where the court cannot give effect to both statutes, i.e. where one statute requires conduct another statute prohibits. To establish such a conflict, Allison-Williams must identify a provision of the MPCFA that excludes securities from its coverage or a provision or vests the Securities Act with exclusive coverage over the sale of securities. The statutes offer different remedies, require different standards of culpability, and are governed by unique statutes of limitations, suggesting that the statutes further distinct state policies. Resolving possible inconsistencies that might arise between the two acts in particular cases is a task for the legislature, not the courts.

Third, Allison-Williams' primary basis for contending that the MPCFA and the Securities Act are in "irreconcilable conflict" is the purported conflict created by the Securities Act's absolute three year limitations period and the MPCFA's longer six-year statute [*36] of limitations. (See Defs.' Mem. P. & A. Reply at 12). Allison-Williams contends that allowing the Trust to maintain an action under the MPCFA would allow it to untimely "back door" a securities claim past the Securities Act's three-year limitations period. (Id.). However, as discussed in the preceding section of this order, the Trust's securities law claims are timely under the Securities Act's three year statute of limitations. Any potential conflict between the limitations periods of the Securities Act

and the MPCFA has no application to this case since the Trust's claims are timely under both acts.

### D. Fiduciary Duty and Negligence Claims

Plaintiffs' sixth and tenth claims allege that Allison-Williams breached its fiduciary duty to Plaintiffs and acted negligently in recommending purchase of Towers Notes to Plaintiffs. Plaintiffs contend that they were "unsophisticated investors" who retained Allison-Williams "to provide expert financial advice ... for compensation." (FAC P 205). According to Plaintiffs, they "instructed [Allison-Williams] to make suitable investment recommendations and followed [its] recommendations [, thus creating] a special fiduciary [*37] relationship ... between Plaintiffs and Defendants..." (Id.). Plaintiffs' opposition brief adds that these allegations, coupled with "the fact that [Mr. Ross] is 86 years old and blind ... clearly establish[] a special relationship so as to justify a fiduciary relationship under Minnesota law." (See Pls.' Mem. P. & A. Opp'n. Mot. Dismiss at 29:4-5). Allison-Williams contends that these facts fail to plead a fiduciary relationship between itself and Plaintiffs because Minnesota law does not recognize a fiduciary relationship between stockbrokers and their clients.

To establish a fiduciary relationship under Minnesota law, Plaintiffs must show that Allison-Williams knew or should have known that (1) Plaintiffs placed their trust and confidence in it and (2) Plaintiffs depended on Allison-Williams to look out for their interests. *May v. First Nat'l. Bank, 427 N.W.2d 285, 289 (Minn. Ct. App. 1988)* (citing *Klein v. First Edina Nat'l. Bank, 293 Minn. 418, 196 N.W.2d 619, 623 (Minn. 1972))*. The existence of a fiduciary relationship is a question of fact. *Burgmeier v. Farm Credit Bank, 499 N.W.2d 43, 51 (Minn. Ct. App. 1993)*; [*38] *Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn. 1985)*. Under these standards, the complaint adequately alleges the existence of a fiduciary duty between Allison-Williams and Plaintiffs.

The Minnesota Supreme Court has, however, squarely held that typical stockbroker-client relationships similar to the one described in the complaint do not give rise to a fiduciary relationship. In Rude v. Larson, the plaintiff alleged that a fiduciary relationship existed because of her "age and lack of knowledge in the purchase and sale of stocks," and as an expert investment advisor, the broker "should not have recommended her participation in several speculative stock transactions." *296 Minn. 518, 207 N.W.2d 709, 710 (Minn. 1973)*. The Minnesota Supreme Court disagreed, holding:

> [A] licensed stockbroker is but an agent who is bound to follow the directions of his principal, and it is the judgment of the

principal, not the agent, which controls the purchase and sale of stocks. Absent a special agreement to the contrary, a licensed broker owes his customer only the duty to exercise due care in executing all instructions expressly given to him by the principal. He is not a [*39] guarantor or insurer against loss sustained by his customer.

*207 N.W.2d at 711*; accord *Minneapolis Employees Retirement Fund v. Allison-Williams Co., 508 N.W.2d 805, 808-9 (Minn. Ct. App. 1994)* (rejecting fiduciary duty and negligence claims where evidence did not establish relationship different from typical broker-client relationship), rev'd. on other grounds *519 N.W.2d 176 (Minn. 1994).* The Supreme Court later held that a negligence claim may arise against a broker when he or she fails to execute the instructions given by the client. *Minneapolis Employees Retirement Fund v. Allison-Williams Co., 519 N.W.2d 176, 182 n.7 (Minn. 1994).* [9]

> 9  The court notes that California law recognizes that a fiduciary duty between stockbroker and client arises once the broker makes specific investment recommendations to the client. See, e.g., *Brown v. California Pension Administrators & Consultants, Inc., 45 Cal. App. 4th 333, 347-48, 52 Cal. Rptr. 2d 788, 796-97 (1996).* The broad language of *Rude* appears to foreclose recognition of this principle under Minnesota law.

[*40] Drawing all inferences in Plaintiffs' favor and assuming the truth of these allegations, the first amended complaint nonetheless fails to supply essential elements of a fiduciary duty under Minnesota law. Nothing in the complaint suggests that the relationship between Plaintiffs and Allison-Williams deviated from the typical broker-client relationship *Rude* held could create a fiduciary relationship. Plaintiffs have also failed to identify any provision of their agreements with Allison-Williams that would provide the requisite "special agreement" or relationship required to allege the existence of a fiduciary relationship. See, e.g., *Corbey v. Grace, 605 F. Supp. 247, 253 (D. Minn. 1985)* (dismissing fiduciary duty claim against stockbroker where plaintiff "failed to specify the content of any special agreement or relationship"). Plaintiffs' conclusory allegations of a "special relationship," absent any supporting facts, cannot defeat Allison-Williams' motion to dismiss. See *Western Min. Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)* (court need not assume the truth of legal conclusions alleged in complaint, even if cast as factual allegations). [*41] Accordingly, the court **DISMISSES** Plaintiffs' sixth and tenth claims **WITH LEAVE TO AMEND**.

### E. Common Law Fraud Claim

Plaintiffs' ninth claim alleges that the Defendants "intentionally or recklessly misrepresented the nature and quality of the recommended investments and knowingly placed Plaintiffs into unsuitable investments" and failed to disclose various material facts, including "that no due diligence was conducted," "that the securities were sold illegally and in violation of ... state and federal registration requirements." (FAC P 211). Allison-Williams moves to dismiss this claim for failure to plead fraud with the particularity required by *Rule 9(b) of the Federal Rules of Civil Procedure.*

### 1. *Rule 9(b)* and the Particularity Requirement

Complaints alleging fraud must meet the pleading requirements of the first sentence of *Rule 9(b)*, which provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Fed. R. Civ. P. 9(b).* Thus Rule imposes two separate requirements on complaints alleging fraud. First, a plaintiff must specifically *identify* the allegedly fraudulent [*42] statements or omissions. *Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994).* This requires the plaintiff to plead evidentiary facts including the dates, times, places, and persons associated with each misrepresentation, omission, and act of fraud. *In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548-48 n.7 (9th Cir. 1994) (en banc) ("Glenfed"); Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993).*

Second, the plaintiff must demonstrate that the statement or omission was false or misleading *at the time it was made. Glenfed, 42 F.3d at 1548.* As the Ninth Circuit explained, "often there is no reason to assume that what was true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation, and that therefore simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false." Id. For this reason, "a plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made* [, which can be done most directly by pointing [*43] to inconsistent contemporaneous statements or information ... which were made by or available to the defendants." *Id. at 1549* (emphasis in original). This requirement prevents plaintiffs from pleading "fraud by hindsight," where later events are used to explain the falsity of earlier statements. *Hockey v. Medhekar, 30 F. Supp. 2d 1209, 1213 (N.D. Cal. 1998)*; GlenFed, 42 F.3d at 1439 ("it is clearly insufficient for plaintiffs to say that the later, sobering revelations make the earlier, cheerier statement a falsehood."); cf. *Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)* (citing *Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978))* ("Mere allega-

tions that statements in one report should have been made in earlier reports do not make out a claim of securities fraud.").

The particularity requirement serves four purposes: it (1) "prevents the filing of a complaint as a pretext for the discovery of unknown wrongs;" (2) "ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct . . so that they can defend against the charge and not just deny that they [*44] they have done anything wrong;" (3) "protects potential defendants--especially professionals whose reputations in their fields of expertise are most sensitive to slander--from the harm that comes from being charged with the commission of fraudulent acts;" and it (4) "prohibit[s] a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)*; accord *Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1999)*.

### 2. *Rule 9(b)*: Analysis

In its motion to dismiss, Allison-Williams contends that Plaintiffs' 76-page complaint, in spite of its excessive length, fails to plead fraud with the particularity required by *Rule 9(b)*. It asserts that the complaint "makes general statements of the fraudulent misrepresentations that the defendants allegedly made," but that its "failure to allege the particular individuals involved is fatal to the fraud claim under *Rule 9(b)*." (See Defs.' Mem. P. & A. Supp. Mot. Dismiss. at 20).

The court disagrees. The first amended complaint describes a series of telephone [*45] calls between Plaintiffs and Defendant Hanson, an employee of Allison-Williams, between March 1990 and early 1994. (FAC PP 16-35). During these conversations, Hanson allegedly told Plaintiffs (1) that the investment in Towers Financial was safe because the debtor for the company's accounts receivable was the U.S. Government; (2) that Towers Financial was insured and fully collateralized; and (3) that their original investment was safe. The complaint identifies and describes, by date and content, several face-to-face meetings and telephone conversations between March 1990 and early 1994 during which Mr. Hanson allegedly made these statements and reassurances. (FAC P 19, 20, 21, 22, 28, 29).

The first amended complaint presents these representations among a contemporaneous factual backdrop stating that Hanson and Allison-Williams allegedly knew (1) that Towers had an extensive history of fraud and securities law violations; (2) that Towers was being investigated for securities fraud as of Fall 1991; (3) that Towers' directors had caused at least four previous companies to seek bankruptcy protection; (4) that Allison-

Williams had failed to conduct even a minimal due diligence investigation [*46] into Towers Financial, an investigation that would easily have uncovered that Towers' financial statements were "riddled with fraud." (See, e.g., FAC PP 67-76, 145-146, 152).

The court finds that these allegations comply with *Rule 9(b)* because they identify and describe Hanson's alleged statements and omissions and explain why they were false and misleading when made. The allegations provide sufficient particularity to permit Defendants to "defend against the charge[s] and not just deny that they have done anything wrong." *Neubronner, 6 F.3d at 671* (quoting *Semegen, 780 F.2d at 731*). Plaintiffs' general averment that Defendants Allison-Williams and Hanson "knew" or were reckless in not knowing that their statements were false and misleading, while conclusory, survives under the second sentence of *Rule 9(b)*. *Glenfed, 42 F.3d at 1545-47*; *Walling, 476 F.2d at 397*.

### F. "Tort of Another" Attorney's Fees Claim

In claim 14 of the first amended complaint, Plaintiffs seek to recover attorney's fees in this action based on the common law "tort of another" doctrine. (FAC P 227-229). The doctrine provides that [*47] when another's tort forces a party to bring an action against a third person to protect its interests, that party entitled to recover attorney's fees and other incurred expenses. See, e.g., *Prentice v. North Amer. Title Guaranty Corp., 59 Cal. 2d 618, 620, 30 Cal. Rptr. 821, 823, 381 P.2d 645, 647 (1963)*.

Defendant Allison-Williams contends that this claim must be dismissed because "it is a unique claim under a California statute that is not available under Minnesota law, which Plaintiffs acknowledge ... governs this case." (See Defs.' Mem. P. & A. Supp. Mot. Dismiss at 21:11-12 (citing FAC P 170)).

Defendants are wrong. The "tort of another" doctrine is not a "unique claim" created by California statute; it is a common law doctrine recognized in virtually every jurisdiction. The Minnesota Supreme Court has recognized and applied the doctrine for almost 75 years. See, e.g., *Bergquist v. Kreidler, 158 Minn. 127, 196 N.W. 964 (Minn. 1924)* (recognizing and applying doctrine in similar context); Prior *Lake State Bank v. Groth, 259 Minn. 495, 108 N.W.2d 619, 622 (Minn. 1961)*; *O'Connell v. Jackson, 273 Minn. 91, 140 N.W.2d 65, 69 (Minn. 1966)*; [*48] *Osborne v. Chapman, 574 N.W.2d 64, 68 (Minn. 1998)*. Defendants' motion to dismiss this claim is therefore denied.

### G. Breach of Warranty Claim

Plaintiffs' twelfth claim alleges that recommending Plaintiffs to purchase Towers Notes constituted a breach of warranty, entitling them to a refund of the money in-

1999 U.S. Dist. LEXIS 22170, *

vested plus interest. (FAC PP 221-223). Defendants move to dismiss this claim on the ground that Minnesota law does not recognize breach of warranty claims based on solely the sale of securities.

Plaintiffs have not cited any Minnesota decisions, nor can this court locate any, recognizing a breach of warranty claim against stockbrokers based allegations of false or misleading statements made in connection with the purchase or sale of securities. Plaintiffs appear to concede that Minnesota law does not recognize a breach of warranty claim based on the sale of securities. They assert that this claim "can be viewed as a[] restatement of the well established Minnesota rule requiring disclosure when disclosure is necessary to clarify or correct misleading or untrue affirmative statements." (See Pls.' Mem. P. & A. Opp'n. Mot. Dismiss at 35:4-6). This argument [*49] appears to confuse breach of warranty with common law fraud, a claim also asserted in the first amended complaint. Since Plaintiffs have failed to demonstrate that this claim is legally cognizable under Minnesota law, the court **DISMISSES** Plaintiffs' twelfth claim **WITHOUT LEAVE TO AMEND**.

## V. Conclusion

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. [Doc. No. 23]. The court **DISMISSES** Plaintiff Rodger and Margaret Jenson's seventh and eighth claims as against all defendants, **DISMISSES** the Trust's seventh and eighth claims as against defendant Hanson, **DISMISSES** the Trust's first, second, third, fourth, and fifth claims against Defendant Hanson. Since Plaintiffs have conceded the untimeliness of these securities claims, they are dismissed **WITHOUT LEAVE TO AMEND**.

In addition, the court **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiffs' twelfth claim for breach of warranty as against all Defendants and **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' sixth and tenth claims for breach of fiduciary duty and negligence as against all Defendants. This case shall proceed as to the [*50] remaining claims.

The court hereby grants Plaintiffs leave until **September 20, 1999** to file and serve a second amended complaint that provides, if possible, additional facts to support Plaintiffs' sixth and tenth claims.

**IT IS SO ORDERED.**

**DATE: August 23, 1999**

**Judge THOMAS J. WHELAN**

**United States District Court**

    **Southern District of California**