Joseph M. Alioto (CA Bar #42680)
ALIOTO LAW FIRM
555 California Street, Suite 3160
San Francisco, CA 94104
Telephone: 415-434-8900
Facsimile: 415-434-9200
Email: josephalioto@mac.com

Daniel R. Shulman, *Pro Hac Vice* (MN Bar #100651)
Jeremy L. Johnson, *Pro Hac Vice* (Pending) (MN Bar #328558)
GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
500 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-632-3335
Facsimile: 612-632-4335
Email: daniel.shulman@gpmlaw.com

Thomas P. Bleau (CA Bar #152945)
BLEAU, FOX & ASSOCIATES
3575 Cahuenga Blvd., West, Suite 580
Los Angeles, CA 90068
Telephone: 323-874-8613
Facsimile: 323-874-1234
Email: bleaushark@aol.com

Bradley K. Beasley, *Pro Hac Vice* (OK Bar #628)
BOESCHE MCDERMOTT LLP
610 S Main Ste 300
Tulsa, OK 74119-1258
Telephone: 918-583-1777
Facsimile: 918-592-5809
Email: bbeasley@bme-law.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE M. MADANI, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>SHELL OIL COMPANY; CHEVRON CORPORATION; and SAUDI REFINING, INC.,<br><br>Defendants. | Court File No. C 07-4296 MJJ<br><br>**[PROPOSED] ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Date: December 19, 2007<br>Time: 9:30 a.m.<br>Judge: Martin J. Jenkins<br>Courtroom: 11, 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

Defendants have moved to dismiss the complaint in this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court denies the motion for the reasons stated below.

## BACKGROUND

On January 1, 1998, defendants Shell and Texaco, which is now owned by defendant Chevron, combined their marketing and refining assets in the Western United States in Equilon Enterprises LLC ("Equilon").  (Compl., ¶ 33.)  On July 1, 1998, they did the same in the Eastern United States through a second combination, Motiva Enterprises LLC ("Motiva"), in which defendant Saudi Refining, also joined.  (*Id.*)  Defendants regarded their combination as "almost breathtaking in its simplicity and audacity:  the whole U.S. Downstream."  (Compl., ¶ 34.)

Between January 1998 and October 2001, Equilon refined and marketed gasoline and other petroleum products under both the Shell and Texaco brand names in all or parts of 32 states, with sales to 9,002 Shell and Texaco retail outlets.  (Compl., ¶ 38.)  Equilon was the fourth largest retail gasoline marketer and the fourth largest refiner in the United States, with annual gross revenues of approximately $22 billion.  (Compl., ¶¶ 39-40.)  Equilon was number one in market share in gasoline sales in Oregon, Arizona, Nebraska, Oklahoma, Missouri, Arkansas, and Kentucky, and was number two in Alaska, Hawaii, California, Nevada, Idaho, Wyoming, Colorado, New Mexico, Indiana, and Illinois.  (Compl., ¶ 41.)

Between July 1998 and October 2001, Motiva refined and marketed gasoline under the Shell and Texaco brand names in 27 states, with sales to 13,900 Shell and Texaco retail outlets. (Compl., ¶ 48.)  Motiva was the second largest retail gasoline marketer and the eighth largest refiner in the United States, with annual gross revenues of approximately $11 billion.  (Compl., ¶¶ 49-50.)  Motiva was number one in market share in gasoline sales in Texas, Louisiana, Alabama, Mississippi, Tennessee, Florida, North Carolina, Rhode Island, New Jersey, Maryland, and Delaware, and was number two in Georgia, Virginia, Pennsylvania, New Hampshire, Vermont, Massachusetts, and Connecticut.  (Compl., ¶¶ 51-52.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Until September 1998, Equilon and Motiva set separate and distinct dealer tankwagon prices for the Shell and Texaco brands of gasoline through their own pricing departments, as Shell and Texaco had done before the ventures. (Compl., ¶ 78.) At that time, the defendants agreed that Equilon and Motiva would charge the same dealer tankwagon prices for the Shell and Texaco brands of gasoline in each area in which Equilon and Motiva priced and sold the two brands of gasoline. (Compl., ¶ 79.) Immediately after the implementation of the new pricing policy, dealer tankwagon prices rose precipitously, while the price of crude oil fell to its lowest level since the Depression. (Compl., ¶ 80.)

Saudi, Texaco, and Shell referred to the overall combination of Equilon, Motiva, and related service companies as "The Alliance," the purpose of which was to fix the prices of Shell and Texaco branded gasoline throughout the United States (Compl., ¶ 82.) At its formation, The Alliance had a market share of 15% of gasoline sales in the United States, double that of its next largest competitor. (Compl., ¶ 90.) In 39 states, The Alliance's share exceeded 10%; in 15 of those states, its share exceeded 20%; in three states, it exceeded 30%; on the West Coast, its share exceeded 25%. (*Id.*)

Once the Texaco and Shell brands were priced identically by Equilon and Motiva, the price differential of the Texaco brand, which had been a low price brand, disappeared, rising to the level of the Shell brand, and the Alliance sharply raised the price of both brands, even as crude oil prices were falling to historic lows. (Compl., ¶ 102.) On September 1, 1989, the price of crude oil was stable at $12 per barrel and fell below $10 per barrel during January and February of 1999. (Compl., ¶ 103.) During this same period, Equilon raised prices for Shell and Texaco gasoline from $.62 per gallon to $1.02 per gallon in Los Angeles, and from less than $.60 to more than $.90 per gallon in Portland and Seattle. (Compl., ¶ 104.) In Chicago, Motiva raised brand prices from $.55 to $.75 per gallon. (*Id.*) In San Francisco, from January to April, 1999, Equilon raised prices from $.72 to $1.12 per gallon. (*Id.*)

These price increases by defendants affected not only the purchasers of defendants' gasoline, amounting to a substantial share of the market in those areas where defendants raised

prices, but also virtually the entire market, as defendants' major competitors availed themselves of the price umbrella created by defendants' price increases by raising their prices, so that all buyers ended up paying higher prices for gasoline in those markets where defendants raised prices, not just defendants' customers.  (*Id.*)  The Alliance lasted three years, ending in 2001 with Chevron's acquisition of Texaco.  (Compl., ¶ 112.)

On or about June 15, 1999 Fouad N. Dagher et al. filed suit against the defendants in the United States District Court for the Central District of California in case no. CV-99-06114 GHK (JWJx) ("the *Dagher* action").  That same day, the plaintiffs in the *Dagher* action filed a first amended complaint "on behalf of themselves and the approximately 23,000 Shell and Texaco branded dealers nationwide who operate or have operated Shell and Texaco branded marketing premises and franchises throughout the United States and who have purchased gasoline from Defendants MOTIVA ENTERPRISES, LLC and/or EQUILON ENTERPRISES LLC, or both, since January 1998 to the present time."[1]  The claims asserted in the first amended complaint in the *Dagher* action were that the conduct of the defendants in forming Equilon and Motiva and causing them to charge the same prices for the Shell and Texaco brands of gasoline constituted price fixing in violation of Section 1 of the Sherman Act under the per se rule or the quick look rule of reason.

The *Dagher* action terminated on or about November 15, 2006, when the District Court received the mandate of the United States Court of Appeals for the Ninth Circuit affirming the District Court's grant of summary judgment for the defendants pursuant to a decision of the United States Supreme Court on February 28, 2006.  *Texaco v. Dagher*, 547 U.S. 1 (2006).  The District Court had granted summary judgment for the defendants in 2002, but was reversed by the Ninth Circuit.  *Dagher v. Saudi Refining, Inc.*, 369 F.3d 1108 (9th Cir. 2004).[2]  The Supreme Court granted certiorari, reversed the Ninth Circuit, and remanded the case to the Ninth Circuit,

---

[1]  Equilon and Motiva were originally named as defendants in the *Dagher* action, but were subsequently dismissed from the case.

[2]  The Ninth Circuit, however, affirmed the District Court's summary judgment in favor of defendant Saudi.  This aspect of the Ninth Circuit's decision was not reviewed by the Supreme Court.

which then affirmed the District Court and issued its mandate to the District Court, which entered its final judgment on November 15, 2006.

During the pendency of the *Dagher* action, although the plaintiffs asked the District Court for leave to file a motion for class certification, the Court declined to hear any class motion, and hence never entertained or ruled on a motion for class certification.

On August 21, 2007, plaintiffs filed this action on behalf of themselves and a class of persons similarly situated, approximately 25,000 Shell and Texaco branded dealers nationwide who operated or have operated Shell or Texaco branded marketing premises and franchises throughout the United States and who purchased gasoline from Equilon or Motiva, or both, from January 1998 to October 2001.  Expressly excluded from the class are those dealers who were plaintiffs in the *Dagher* action.

Plaintiffs contend that the formation of Equilon and Motiva violated Section 7 of the Clayton Act, and that the defendants' agreement to fix the price of Shell and Texaco gasoline sold by Equilon and Motiva violated Section 1 of the Sherman Act under the full rule of reason.

### LEGAL STANDARD

A complaint should be dismissed only where its legal insufficiency is apparent on its face, or in conjunction with materials of which the Court may take judicial notice.  *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000); *accord Torrance Redevelopment Agency v. Solvent Coating Co.*, 763 F. Supp. 1060, 1066 (C.D. Cal. 1991).  As the Supreme Court recently stated in *Erickson v. Pardus*, ___ U.S. ____, 127 S. Ct. 2197, 2200 (2007):

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. ____, ____, 127 S. Ct. 1955, ___ L. Ed. 2d ___, ___ - ___ (2007) (slip op., at 7-8) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.  *Bell Atlantic Corp., supra,* at ____, 127 S. Ct. 1955 (slip op., at 8-9) (citing

1    *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1, 122 S. Ct. 992, 152 L. Ed.

2        2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed.
         2d 338 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.

3        2d 90 (1974)).  [127 S. Ct. at 2200.]

4    Under the long-established jurisprudence of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), "a

5    complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

6    the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

7    In *Bell Atlantic Corp. v. Twombly*, ___ U.S. ____, 127 S. Ct. 1955, 1969 (2007), the Supreme

8    Court explained that the language "no set of facts" means that "once a claim has been adequately

9    stated, it may be supported by showing any set of facts consistent with the allegations in the

10   complaint."

11                                              **ANALYSIS**

12       **A.       The Complaint in This Action is Not Time-Barred.**

13       The complaint in the *Dagher* action was a class action.  The filing of a class action

14   complaint tolls the statute of limitations applicable to the claims of putative class members.

15   *American Pipe & Constr. v. Utah*, 414 U.S. 538, 554 (1974).  "Once the statute of limitations is

16   tolled, it remains tolled for all members of the putative class until class certification is denied."

17   *Crown Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983).  In the *Dagher* action, the

18   district court refused to entertain a motion for class certification, and therefore never denied class

19   certification.  Accordingly, the statute of limitations for the claims asserted by the plaintiffs here

20   was tolled from the filing of the *Dagher* action on June 15, 1999, until the entry of final

21   judgment by the district court on November 15, 2006.

22       Moreover, the statute of limitations was tolled not only for the claims of individual class

23   members, but also with regard to the assertion of class action claims in subsequent lawsuits,

24   including this case.  *Catholic Social Servs., Inc. v. Immigration and Naturalization Serv.*, 232

25   F.3d 1139, 1149 (9th Cir. 2000) (*en banc*) ("We hold that under the doctrine of *American Pipe*

26   and *Crown Cork & Seal* the statute of limitations was tolled during the pendency of the first class

27   action for the class members and would-be class members in the action now before us, and that

28

plaintiffs in this case may aggregate their individual actions into a class action."). *See also Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004).

It is also immaterial to the issue of tolling that the claims asserted in this action are not identical to those asserted in the *Dagher* case. The statute is tolled for all claims that "concern the same evidence, memories, and witnesses as the subject matter of the original class suit." *Crown Cork & Seal*, 462 U.S. at 355; *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985); *In re Enron Corp. Securities*, 465 F. Supp. 2d 687, 718 (S.D. Tex. 2006):

> The majority of courts have followed Justice Powell's reasoning and concluded that subsequent individual claims, filed after denial of class certification or after granting class certification and opting out, need not be identical to the original class action's for tolling to apply as long as they share a common factual basis and legal nexus so that the defendant would rely on the same evidence and witnesses in his defense.

This is clearly the situation here. The claims asserted in the *Dagher* action were that the conduct of the defendants in forming Equilon and Motiva and causing them to charge the same prices for the Shell and Texaco brands of gasoline constituted price-fixing in violation of Section 1 of the Sherman Act under the *per se* rule or the quick look rule of reason. Plaintiffs here challenge the same joint ventures and pricing practices as violative of federal antitrust law under Clayton Act Section 7 and the full rule of reason under Sherman Act Section 1. Although these claims require a somewhat different and more extended analysis of the challenged conduct, these claims unquestionably arise from the same identical conduct as in the *Dagher* case and "concern the same evidence, memories, and witnesses as the subject matter of the original class suit." The defendants will assuredly rely on the same evidence and witnesses in this case as they did in *Dagher* to mount their defense. Tolling is therefore mandated.

It is also of no moment that the plaintiffs in the *Dagher* case expressly waived the full rule of reason claim that the plaintiffs here seek to assert. Because the class was never certified, proceedings in the *Dagher* case cannot bind the class members in this action. *See Aguilara v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1013 n.1 (9th Cir. 2000); *Cullen v. Margiotta*, 811 F.2d 698, 719-20 (2d Cir. 1987), overruled on other grounds, *Agency Holding Corp. v. Malley-*

*Duff & Assocs., Inc.*, 483 U.S. 143 (1987) ("An absent putative class member in an action where a class was never certified thus is not legally bound either by the named plaintiffs' choice of legal claims or by a dismissal for failure to allege sufficient facts to state a cause of action, even if that dismissal would have *res judicata* effect against the named plaintiffs.").

Tolling also continued throughout the entire pendency of the *Dagher* action until the entry of final judgment on November 15, 2006, notwithstanding the district court's original grant of summary judgment to the defendants. *Crown Cork* is clear that the commencement of a class action suspends the applicable statute of limitations for all asserted members of the putative class "until class certification is denied." 462 U.S. at 354-55. There is no authority that the statute should begin to run on the grant of summary judgment or any other order of the district court, other than a denial of class certification.

Finally, defendant Saudi Refining is not entitled to dismissal on the ground that the statute of limitations began to run when the district court granted Saudi Refining's motion for summary judgment based on lack of standing. The summary judgment in favor of Saudi Refining did not include a denial of class certification, and was not tantamount to a denial of class certification.

**B.    The Complaint Adequately Pleads a Relevant Geographic Market.**

Defendants move to dismiss the complaint on the ground that the plaintiffs have failed adequately to plead a relevant geographic market in connection with their Section 7 and rule of reason claims. The defendants' motion must be denied. To prove an anticompetitive merger or joint venture, a plaintiff need only show that "the merger may have a substantially anticompetitive effect *somewhere* in the United States – 'in *any* section' of the United States." *United States v. Pabst Brewing*, 384 U.S. 546, 549-50 (1966) (emphasis added). The "crucial question in . . . every Section 7 case . . . is whether a merger may substantially lessen competition *anywhere* in the United States." *Id.* at 550 (emphasis added). Here, the complaint alleges numerous specific states in which Equilon and Motive operated, as well as specific effects Equilon and Motiva had on gasoline prices in San Francisco, Los Angeles, Portland,

Seattle, and Chicago.  This is more than sufficient specificity in alleging a relevant geographic market.  Section 7 does not require mathematical precision in pleading or proof of a relevant geographic market.  It "does not call for the delineation of a 'section of the country' by metes and bounds as a surveyor would lay off a plot of ground."  *Pabst*, *id.*  These allegations are sufficient to identify the relevant geographic markets at issue in this case and to put the defendants on notice of the violations charged.

## CONCLUSION

On the basis of the foregoing, this Court denies in its entirety the motion of defendants to dismiss the complaint for failure to state a cause of action on which relief can be granted.


Dated:  _____


_____
MARTIN J. JENKINS
United States District Judge

GP:2293401 v1