# EXHIBIT A

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 479013 (N.D.Cal.)  
**(Cite as: Not Reported in F.Supp.)**

Page 1

CLondon and Hull Maritime Ins. Co. Ltd. v. Eagle Pacific Ins. Co.  
N.D.Cal.,1996.  
Only the Westlaw citation is currently available.  
United States District Court, N.D. California.  
LONDON AND HULL MARITIME INSURANCE COMPANY LIMITED; Yorkshire Insurance Company Limited; Terra Nova Insurance Company Limited; Phoenix Assurance Plc per The London Assurance; Ocean Marine Insurance Company Limited; Zurich Re (UK) Limited; C.A.M.A.T.; Prudential Assurance Company Limited; Cornhill Insurance Plc; Gan Minister Insurance Company Limited; Hansa Marine Insurance Company (UK) Limited; Phoenix Assurance Plc; Assicurazioni Generali S.P.A.; Sphere Drake Insurance Plc and La Reunion Francaise Soc Anon D'Assurances Et De Reassurances, Plaintiffs,  
v.  
EAGLE PACIFIC INSURANCE COMPANY and Does 1-20, inclusive, Defendants.  
No. C 96-01512 CW.

Aug. 14, 1996.

Frank D. Pond, Tilly & Graves PC, San Francisco, CA, James R. Colgan, Tilly & Graves PC, San Francisco, CA, Robert M. Menchini, Tilly & Graves PC, San Francisco, CA, for defendant.  
Ronald G. Bushner, Boughey Garvie & Bushner, San Francisco, CA, for plaintiffs.

*ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE*  
WILKEN, District Judge.  
*1 Defendant Eagle Pacific Insurance Company ("Eagle Pacific") moves under 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Western District of Washington, at Seattle. Plaintiffs (collectively referred to as the "Excess Underwriters") oppose the motion. The Excess Underwriters move for summary judgment. Eagle Pacific opposes the motion. The matter was heard on August 9, 1996. Having considered all of the papers filed by the parties and oral argument on the motion, the Court GRANTS Eagle Pacific's motion to transfer and DENIES the Excess Underwriters' motion for summary judgment without prejudice.

BACKGROUND

The Excess Underwriters brought this action for declaratory relief under an insurance contract in the California Superior Court for Contra Costa County. Eagle Pacific removed the case to this Court. Eagle Pacific now moves to transfer the action to the Western District of Washington on the grounds that such a transfer would be more convenient to the parties and witnesses. Eagle Pacific also argues that, because there is a related action pending in the Western District of Washington, a single disposition of both matters would best serve the interests of justice. The Excess Underwriters argue that venue is proper in this Court, and that there are good and valid reasons for this Court to decide the dispute between the parties.

The Excess Underwriters move for summary judgment on the grounds that, under applicable California substantive law, the language of the insurance policy in dispute is unambiguous, and summary judgment is appropriate. Eagle Pacific opposes the summary judgment motion on the merits and asserts that summary judgment in favor of the Excess Underwriters cannot be granted because an indispensable party to the litigation has not been joined.

*Statement of Facts*

Eagle Pacific, a Washington corporation with its principal place of business in Seattle, Washington, was the primary insurer of Manson Construction and Engineering Company, Inc. ("Manson"), also a Washington corporation with its principal place of business in Seattle, covering a certain construction project located in the Point Loma area in Southern California. Eagle Pacific issued a Workers Compensation and Employers Liability Insurance Policy to Manson (the "Eagle Policy") with a policy limit of $500,000. According to Eagle Pacific, the $500,000 limit included allocated loss adjustment expenses, such as investigative and defense costs.

Stanley T. Scott & Co., Inc. ("Scott & Co."), an insurance broker with its principal place of business

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-04296-MJJ    Document 35-2    Filed 11/27/2007    Page 3 of 5

Not Reported in F.Supp.                                                                                Page 2
Not Reported in F.Supp., 1996 WL 479013 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

in Seattle, negotiated the Eagle Policy for Manson. Scott & Co. also arranged for excess coverage insurance (the "Excess Coverage Policy") to be provided to Manson by the Excess Underwriters with a $1,000,000 limit. The Excess Coverage Policy required exhaustion of primary coverage before its liability commenced. All negotiations concerning the Excess Coverage Policy took place in Seattle.

*2 On or about June 5, 1993, Steve Robinson, an employee of Manson and/or other companies involved in a joint venture with Manson in connection with the construction in Point Loma, was injured. Mr. Robinson filed suit against Manson and the other companies seeking damages for injuries he sustained while working on the Point Loma project. Manson was defended in this litigation pursuant to the Eagle Policy.

On November 14, 1995, Mr. Robinson's claims were completely settled for $550,000. The total cost of the settlement, including amounts paid for wages, maintenance, cure, attorneys' fees, the settlement and interest, was approximately $700,000. Because the settlement amount was over the $500,000 Eagle Policy limit, the Excess Underwriters were involved in the settlement negotiations. Thereafter, the Excess Underwriters paid $74,817.50 which is what they believed to be their liability under the Excess Coverage Policy. They have refused to pay any additional amounts. Eagle Pacific paid $500,000 and either paid or loaned approximately $122,000 to Manson to cover the remaining amount due.

On January 30, 1996, Manson filed suit against the Excess Underwriters in the Western District of Washington in Seattle to recover the additional $122,000 needed to complete the settlement with Mr. Robinson. On March 20, 1996, the Excess Underwriters filed suit for declaratory relief against Eagle Pacific in the California Superior Court for Contra Costa County, claiming that the Eagle Policy provides separate coverage for indemnity and defense, and that Eagle Pacific is responsible for paying Manson the $121,670.19 now in contention. On May 21, 1996, Manson amended its complaint filed in Washington to include Eagle Pacific as a co-plaintiff.

Eagle Pacific asserts that its policy is a "wasting" policy, so that it is entitled to count against the $500,000 limit the cost of defense as well as the payments made towards settlement. The Excess Underwriters maintain that the Eagle Policy contains two separate coverages, one for defense and one to pay damages, and, hence, Eagle Pacific is liable to Manson for the additional $122,000. The Excess Underwriters request that the Court interpret the Eagle Policy and grant summary judgment in their favor.

DISCUSSION

I. *Legal Standards*

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion to adjudicate motions for transfer on a case-by-case basis, considering factors of convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *and see Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir.1988) (weighing of factors involves subtle considerations best left to the trial court).

*3 The movant bears the burden of establishing a strong argument that an action should be transferred "by showing more than a bare balance of convenience in his favor and that a transfer does more than merely shift the inconvenience." *DMP Corp. v. Fruehauf Corp.*, 617 F.Supp. 76, 77 (W.D.N.C.1985) (citing 1 *Moore's Federal Practice* ¶ 0.145[5] ). The motion may be denied if the increased convenience to one party is offset by the added inconvenience to the other party. *Id.*

When adjudicating a motion to transfer under § 1404(a), a district court must balance a number of case-specific factors, including the plaintiff's initial choice of forum, convenience to the parties and witnesses, access to evidence, and the interests of justice. *See Stewart*, 487 U.S. at 29; *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947); *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 89 F.R.D. 497, 499 (C.D.Cal.1981).

The "interests of justice" consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way. 15 Wright, Miller & Cooper, *Federal Practice and Procedure:*

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1996 WL 479013 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

*Jurisdiction 2d § 3854 (1986)*; *see also Pratt v. Rowland,* 769 F.Supp. 1128, 1133 (N.D.Cal.1991) (citing 15 Wright & Miller, *supra,* § 3851). A major consideration is the desire to avoid multiplicity of litigation from a single transaction. *Id.* In dictum, the Supreme Court has suggested that courts should give great weight to this consideration:

To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers.

*Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 26 (1960).

II. *Application to the Case at Bar*

Eagle Pacific asserts that, in order to determine who is liable for the outstanding $122,000, this Court will have to interpret the Eagle Policy. Similarly, the court in the Western District of Washington will have to interpret the Eagle Policy to determine who is liable for the outstanding balance. The factual and legal issues to be considered in both actions are identical. Furthermore, all the transactions and communications involved in obtaining the Eagle Policy took place in Seattle, Washington. The Eagle Policy was issued in Seattle, the insured is located in Seattle, and virtually all of the witnesses are in Seattle. The only contact that Eagle Pacific has with this Court is that it has an office in Concord, California. The Concord office has no involvement whatsoever with the Eagle Policy, nor with this dispute. Therefore, Eagle Pacific argues, this case should be transferred to the Western District in the interests of justice and convenience.

*4 The Excess Underwriters counter that California is the proper forum because the accident took place in California, the mediation that led to the settlement of the case took place in California, and other claims were made by California residents who were injured while doing work in California. The Excess Underwriters also argue that this Court is more familiar with California law, which must be applied to interpret the Eagle Policy. Finally, the Excess Underwriters contend that the probability that this dispute will be tried is slim, that the convenience of the witnesses and access to proof arguments made by Eagle Pacific are irrelevant, and that in the interests of justice, this dispute should be decided by this Court.

A. *Application of § 1404(a)*

The first step is to determine whether this case could have originally been brought in the Western District. A court may not transfer unless, at the time the suit was filed, "venue could have been properly laid in the proposed transferee court and that court could have exercised subject matter jurisdiction over the action and personal jurisdiction over all the defendants." *Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1394 (S.D.Tex.1992).

Subject matter jurisdiction exists where there is diversity of citizenship and the amount in controversy exceeds $50,000. 28 U.S.C. § 1332. In this case, Eagle Pacific is a citizen of Washington state, and each of the Excess Underwriters is a citizen of a foreign country. Thus, there is complete diversity. In addition, the amount in controversy, $125,000, exceeds the minimum amount. Accordingly, the Western District does have subject matter jurisdiction over this action.

The Western District also has general and personal jurisdiction over Eagle Pacific. Eagle Pacific's activities are "continuing and systematic," making it subject to the court's general jurisdiction. *See Perkins v. Benquet Consol. Mining Co.,* 342 U.S. 437, 445 (1952). In addition, because the Eagle Policy was issued in Seattle, Washington, to Manson, another Seattle business, through an insurance broker also located in Seattle, and because the dispute at issue is over the interpretation of this very policy, the Western District has personal jurisdiction over Eagle Pacific for this case.

Finally, under 28 U.S.C. § 1391(a), venue is proper in the Western District. Section 1391(a) provides that venue is proper in a judicial district where any defendant resides if all defendants reside in the same state, where a substantial part of the events giving rise to the claim occurred or in which any defendant is subject to personal jurisdiction. Eagle Pacific is a Washington corporation with its principal place of business in Seattle, it has continuous and systematic contacts with Washington, and a substantial part of the events leading up to this action took place in Seattle. *See* 28 U.S.C. § 1391(a).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-04296-MJJ    Document 35-2    Filed 11/27/2007    Page 5 of 5

Not Reported in F.Supp.    Page 4
Not Reported in F.Supp., 1996 WL 479013 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

The next step is to determine the most convenient forum for this action. Although the Excess Underwriters chose the Superior Court in Contra Costa as their forum, they would not likely be inconvenienced by a transfer to the Western District. None of the Excess Underwriter Plaintiffs are residents of California or Washington, and they are already involved in the related action in the Western District. In addition, the Excess Underwriters point out in their motion for summary judgment that "California and Washington share remarkably similar principles of interpretation of insurance contracts." Pls.' Mot. for Summ.J. at 8 n. 1. Thus it would not be difficult for a Washington judge to apply California law. Finally, Eagle Pacific, potential witnesses, including employees of Manson and Scott & Co., and documentation that might be needed to interpret the Eagle Policy, are all located in Seattle. Hence, the Western District of Washington would most likely be a more convenient forum than this Court.

*5 The most important factor to consider is the "interests of justice." 15 Wright & Miller, *supra*, § 3854. As the Supreme Court said in *Continental Grain*, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Id., 364 U.S. at 26*. In this case, a related case involving the same parties, the same issues, the same witnesses and the same facts, is pending in the Western District of Washington. If this case is not transferred, inconsistent judgments could result, which could work an injustice. For example, this Court could rule that the Excess Underwriters were not responsible for the disputed amount, and the Washington court could rule that Eagle Pacific was not. Under these circumstances, judicial economy mandates that this case be transferred to the United States District Court for the Western District of Washington.

B. *Summary Judgment*

Eagle Pacific asserts that Manson is an indispensable party to this litigation. Manson filed suit against the Excess Underwriters in the Western District of Washington to recover $122,000 that Manson alleges the Excess Underwriters owes under the Excess Coverage Policy. Manson and Eagle Pacific are in agreement that the Eagle Policy limit, inclusive of allocated loss adjustment expenses, is $500,000.

Opp'n, Ex. 2. Eagle Pacific argues that granting the Excess Underwriters' summary judgment motion would collaterally estop Manson from seeking to enforce its suit in the Western District of Washington. Hence, a summary judgment ruling on this motion, in a case in which Manson is not a party, would be "inconsistent with equity and good conscience." *Id.*

The Excess Underwriters counter that Manson is neither a necessary nor indispensable party. The Excess Underwriters insist that the issue in this case is whether the payments made to settle the case with the claimant, Mr. Robinson, were properly allocated between Eagle Pacific and the Excess Underwriters. The Excess Underwriters assert that an adverse judgment will not prejudice Manson. Finally, the Excess Underwriters point out that seeking a declaratory judgment in an insurance dispute is a common and appropriate course of action for determining which insurer must pay the insured.

Having already decided to transfer this case to the Western District of Washington, the Court need not determine whether Manson is an indispensable party. This potential problem will be solved by the transfer of this case to a forum where Manson is a party in a related case, where the two cases can be consolidated, and where a single disposition will be in the interests of all the parties.

CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to transfer and denies Plaintiffs' motion for summary judgment without prejudice.

IT IS SO ORDERED.

N.D.Cal.,1996.
London and Hull Maritime Ins. Co. Ltd. v. Eagle Pacific Ins. Co.
Not Reported in F.Supp., 1996 WL 479013 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.