1   BRADLEY S. PHILLIPS (State Bar No. 085263)
    STUART N. SENATOR (State Bar No. 148009)
2   LEE S. TAYLOR (State Bar No. 243863)
    MUNGER, TOLLES & OLSON LLP
3   355 South Grand Avenue
    Los Angeles, CA  90071-1560
4   Tel: (213) 683-9100; Fax (213) 687-3702
    Email:  brad.phillips@mto.com; stuart.senator@mto.com;
5   lee.taylor@mto.com

6   Attorneys for Defendant Shell Oil Company

7   [additional moving parties and counsel listed on signature page]

8

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13

    MIKE M. MADANI, *et al.*,              CASE NO.  CV-07 04296 MJJ
14
                    Plaintiffs,            DEFENDANTS' JOINT REPLY
15                                         MEMORANDUM IN SUPPORT OF
         vs.                               MOTION TO DISMISS COMPLAINT
16                                         PURSUANT TO F.R.C.P. 12(B)(6)

17  SHELL OIL COMPANY, *et al.*,           **Date:    December 18, 2007**
                                           **Time:    9:30 a.m.**
18                  Defendants.            **Dept.:   Courtroom 11, 19th Floor**
                                           **Judge:   Hon. Martin J. Jenkins**
19

20

21

22

23

24

25

26

27

28

                                           REPLY MEMO ISO MOTION TO DISMISS
                                           CV-07 04296 MJJ

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ................................................................................1

4    II.    ARGUMENT ........................................................................................3

5         A.    The Complaint Is Time Barred......................................................3

6              1.    The Ninth Circuit's Robbin Decision Precludes
                    Application Of Class Action Tolling Here ...............................3
7
                8    2.    Class Action Tolling Is Inapplicable Because Plaintiffs'
                    Claims Here Are Different From The Claim in Dagher ............5

9              3.    Plaintiffs' Claims Are Time-Barred Regardless Of The
10                   Applicability Of Class Action Tolling........................................8

11             4.    Plaintiffs' Res Judicata Argument Is Irrelevant........................9

                5.    Efficiency And Judicial Economy Support Dismissal Here.... 10
12
13             6.    Tolling Is Unavailable As Against Saudi Refining In any
                    Event..................................................................................... 11

14                  a.    The Dagher Plaintiffs Lacked Standing Against
15                        Saudi Refining .........................................................11

16                  b.    The Statute Of Limitations Has Expired Against
                          Saudi Refining ......................................................... 13

17        B.    Plaintiffs Do Not Sufficiently Allege A Relevant Market In
18              Which The Challenged Conduct Could Have Had An
                Anticompetitive Effect ............................................................... 13
19
20             1.    Relevant Geographic Market ................................................... 14

                2.    Market Power ......................................................................... 15
21
          C.    The Court Should Dismiss Plaintiffs' Complaint Without Leave
22              To Amend.................................................................................... 15

23   III.    CONCLUSION................................................................................. 15

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

*Albrecht v. Lund*
  845 F.2d 193 (9th Cir. 1988) ............................................................... 15

*America Channel, LLC v. Time Warner Cable, Inc.*
  No. 06-2175, 2007 WL 1892227 (D. Minn. June 28, 2007) ........................... 14

*Andrews v. Orr*
  851 F.2d 146 (6th Cir. 1988) ................................................................. 3

*Armstrong v. Martin Marietta Corp.*
  138 F.3d 1374 (11th Cir. 1998) .............................................................. 9

*Bell Atlantic Corp. v. Twombly*
  127 S. Ct. 1955 (2007) ......................................................................... 13

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*
  182 F.3d 1096 (9th Cir. 1999) ........................................................... 14, 15

*California Dental Ass'n. v. Federal Trade Commission*
  526 U.S. 756 (1999) .............................................................................. 7

*Catholic Social Services, Inc. v. INS*
  232 F.3d 1139 (9th Cir. 2000) ................................................................ 4

*Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv. Inc.*
  911 F.2d 242 (9th Cir. 1990) ................................................................. 15

*Crown, Cork & Seal Co. v. Parker*
  462 U.S. 345, 103 S. Ct. 2392, 2394 (1983)........................................... 3, 6

*Dagher v. Saudi Refining, Inc.*
  369 F.3d 1108 (9th Cir. 2004) ............................................................... 13

*Deutsch v. Turner Corp.*
  324 F.3d 692 (9th Cir. 2003) ................................................................. 15

*Erickson v. Pardus*
  127 S. Ct. 2197 (2007) .......................................................................... 13

*Haas v. Pittsburgh Nat'l Bank*
  526 F.2d 1083 (3d Cir. 1975)........................................................... 11, 12

*In re Colonial Ltd. P'ship Litig.*
  854 F. Supp. 64 (D. Conn. 1994) ........................................................... 11

*In re Copper Antitrust Litig.*
  436 F.3d 782 (7th Cir. 2006) .................................................................. 9

*In re Crazy Eddie Sec. Litig.*
  747 F. Supp. 850 (E.D.N.Y. 1990) ......................................................... 11

*In re Elscint, Ltd. Sec. Litig.*
  674 F. Supp. 374 (D. Mass 1987) .......................................................... 11

*In re Westinghouse Securities Litig.*
  982 F. Supp. 1031 (W.D. Pa. 1997)................................................... 2, 3, 8

- ii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Korwek v. Hunt*
    827 F.2d 874 (2d Cir. 1987)...............................................................4

*Naas v. Stolman*
    130 F.3d 892 (9th Cir. 1997) ........................................................ 15

*Palmer v. Stassinos*
    236 F.R.D. 460 (N.D. Cal. 2006)............................................... 11, 12

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*
    124 F.3d 430 (3d Cir. 1997)........................................................ 14

*Robbin v. Fluor Corp.*
    835 F.2d 213 (9th Cir. 1987) ........................................................3

*Tanaka v. University of Southern California*
    252 F.3d 1059 (9th Cir. 2001) ................................................ 14, 15

*Texaco, Inc. v. Dagher*
    547 U.S. 1, 126 S. Ct. 1276 (2006)...............................................5

*Tosti v. City of Los Angeles*
    754 F.2d 1485 (9th Cir. 1985) ......................................................8

*Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*
    512 F.2d 1264 (9th Cir. 1975) ..................................................... 14

*United States v. Pabst Brewing*
    384 U.S. 546 (1966) .................................................................. 14

*United States v. Phila. Nat'l Bank*
    374 U.S. 321 (1963) .................................................................. 14

*Valley Liquors, Inc. v. Renfield Imps., Ltd.*
    822 F.2d 656 (7th Cir. 1987) ...................................................... 15

*Walters v. Edgar*
    163 F.3d 430 (7th Cir. 1998) ...................................................... 12

*Yang v. Odom*
    392 F.3d 97 (3d Cir. 2004)...........................................................5

## I.    **INTRODUCTION**

Plaintiffs admit that this case is an attempted "do-over" of *Dagher*. This case was filed more than seven years after *Dagher,* by the very same plaintiffs' counsel, on behalf of a group of named plaintiffs that even included the lead named plaintiff here — Mike Madani. Mr. Madani and his counsel made the strategic judgment in *Dagher* to waive any rule of reason antitrust claim (either a Sherman Act section 1 rule of reason claim or a Clayton Act section 7 claim, which can be brought only under the rule of reason) and pursue only a per se (and "quick look") claim under Section 1 of the Sherman Act. After extensive discovery on the per se claim, it was determined by the District Court — and then a unanimous United States Supreme Court — that the claim failed as a matter of law. So plaintiffs now want to go back and do the case over with a new complaint that raises the very rule of reason claims that plaintiffs explicitly waived in *Dagher.* As shown in defendants' moving papers, plaintiffs' attempted reliance on the class action tolling doctrine to evade the applicable statute of limitations is the sort of abusive litigation tactic that the Supreme Court, the Ninth Circuit and the district courts have refused to permit. For example, while class action tolling is inapplicable if the claim in the initial case did not involve "the same evidence, memories and witnesses" as the claims in the later case, Plaintiffs specifically admit that the claims in this case "will require the development of additional evidence concerning relevant market and effects on competition, not in the *Dagher* record, as called for by a full rule of reason inquiry." Transfer Motion Opposition at 9:4-6.

Plaintiffs' invocation of "efficiency and judicial economy" (Opposition at 10:20) is especially misplaced. As recognized by Judge King in *Dagher* when he inquired whether plaintiffs were waiving proceeding under the rule of reason, the efficient and economical course would have been to join all legal theories and claims in *Dagher*. If the current plaintiffs were dissatisfied with their current counsel's decision to waive any rule of reason claim (other than Mr. Madani, of course, as the waiver was made by counsel who was appearing on his behalf at the time of the waiver), they could and should have promptly intervened or filed their own rule of reason claims for consolidation with the *Dagher* claim.

1    Instead, plaintiffs are doing exactly what Judge King warned against seven years

2    ago — that is, waiting to see how a per se claim turned out and then, if that claim was not

3    successful, filing a belated new complaint and commencing the litigation process all over again

4    with rule of reason claims. To use plaintiffs' own words (Opposition at 10:21), a timely

5    intervention in (or additional lawsuit consolidated with) *Dagher* "would [have] be[en] far more

6    efficient and require[d] fewer judicial resources than" the current do-over class action. Plaintiffs

7    have no response whatsoever to the *Westinghouse* court's refusal to extend class action tolling to

8    a claim that had been abandoned in the initial putative class action, when that previously-

9    abandoned claim was asserted by the same counsel in a subsequent putative class action with a

10   different named plaintiff. Yet that is just what plaintiffs are attempting here, albeit with the

11   additional "abusive manipulation[]" of making one of the plaintiffs in the initial putative class

12   action the lead plaintiff in the subsequent case. *In re Westinghouse Securities Litig.*, 982 F. Supp.

13   1031, 1034 (W.D. Pa. 1997). Tellingly, the Opposition does not so much as mention

14   *Westinghouse*.

15       Further, defendants' moving papers showed that the complaint is fatally flawed on

16   the separate and independent basis that the complaint does not plead a relevant market in which

17   the challenged conduct could have had an anticompetitive effect — an essential element of any

18   rule of reason claim. Plaintiffs' sole response is that the complaint makes generalized reference

19   to numerous geographic areas in which Equilon and Motiva operated. But that is no response at

20   all. The opposition concedes by its silence that (1) there is no factual basis alleged for finding

21   any of these geographic areas to be a relevant market for antitrust purpose, and (2) the

22   complaint's affirmative allegations about the relatively low market share of the joint ventures in

23   any identified geographic area preclude a rule of reason claim.

24       For all of these reasons, this Court should grant the current motion and dismiss

25   plaintiffs' complaint. Further, because the deficiencies in plaintiffs' complaint cannot be cured

26   by amendment, and no amendment has been requested or proposed, the dismissal should be with

27   prejudice.

28

## II.    ARGUMENT

### A.    The Complaint Is Time Barred

Plaintiffs do not dispute that, unless class action tolling applies, their complaint is time-barred and should be dismissed with prejudice.  Plaintiffs' sole argument is that the limitations period was tolled under the class action tolling doctrine.  Contrary to plaintiffs' arguments, that doctrine has no application here.

### 1.    The Ninth Circuit's *Robbin* Decision Precludes Application Of Class Action Tolling Here

As shown in defendants' moving papers, the Ninth Circuit squarely held in *Robbin v. Fluor Corp.,* 835 F.2d 213 (9th Cir. 1987), that class action tolling is limited to subsequent individual actions; the doctrine does not apply to subsequent putative class actions.  "[T]o extend tolling to class actions 'tests the outer limits of the *American Pipe* doctrine and . . . falls beyond its carefully crafted parameters into the range of abusive options'."  *Id.* at 214.  *See Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 346, 103 S. Ct. 2392, 2394 (1983) (extending class action tolling from plaintiffs who intervene in the original action to plaintiffs who file their own "individual actions").  Plaintiffs expressly acknowledge that, in *Robbin,* the Ninth Circuit issued a "broad holding" that tolling is unavailable in subsequent putative class actions (such as plaintiffs plead here), and that the broad *Robbin* holding has been followed by the First, Second, Fifth, Sixth and Eleventh Circuits.  Opposition at 9:5-28.[1]  As the *Westinghouse* court summarized the law, "the pendency of a previously filed class action does not toll the limitations period for additional class actions by the putative members of the original asserted class."  *In re Westinghouse,* 982 F. Supp. at 1034 (quoting *Andrews v. Orr,* 851 F.2d 146, 149 (6th Cir. 1988).

Plaintiffs argue that, in the Ninth Circuit, *Catholic Social Services* has entirely supplanted the "broad" *Robbin* holding except where "the plaintiffs in the subsequent class action

---

[1] Plaintiffs assert that the Second Circuit has left open the possibility of an exception where the putative class in the second case is potentially a proper subclass of the putative class in the initial case.  *Id.* at 9:12-13.  Plaintiffs concede that the Second Circuit did not determine that such an exception would be valid, and in any event such a potential exception is not even arguably present here, where the putative class is co-extensive with the putative class in *Dagher.*

- 3 -

1  were merely seeking to relitigate the correctness of the district court's denial of class

2  certification." Opposition at 8:6-7. Plaintiffs are wrong. As shown in the moving papers, the

3  Ninth Circuit in *Catholic Social Services* went to great lengths to set forth the extreme nature of

4  the facts in that case, to demonstrate that the plaintiffs there were "in a fundamentally different

5  posture from plaintiffs in cases in which subsequent class actions were not allowed." *Catholic*

6  *Social Services, Inc. v. INS*, 232 F.3d 1139, 1149 (9th Cir. 2000). Those facts were much more

7  than that the later case was not an attempt to re-litigate an earlier denial of class certification.

8  Rather, a critical fact was that there had been a change of law during the appellate proceedings in

9  the prior case, and that change required that different named plaintiffs pursue the claims at issue.

10  *Id.* at 1146. In light of this circumstance, the Ninth Circuit en banc majority believed "that it

11  would have been by far the better course for the panel" of the court that heard the prior appeal "to

12  remand with instructions to allow amendment of the complaint to satisfy requirements imposed

13  for the first time while the case was on appeal," rather than to require that a new action be filed.

14  *Id.* As the en banc majority noted, "[i]f the panel in [the prior case] had allowed such

15  amendment, there would be no tolling and class certification issues." *Id.* But because the prior

16  panel did not do that, a divided en banc panel determined that it was appropriate to create a fact-

17  bound exception to the uniform rule throughout the country that tolling applies only in subsequent

18  individual actions.

19          If the Ninth Circuit majority intended in *Catholic Social Services* to create any

20  broader of an exception to that generally-accepted rule, the majority would have explicitly so

21  stated. Certainly there is no reason to believe that the Ninth Circuit was *sub silentio* abrogating

22  the *Robbin* rule to allow plaintiffs to use class action tolling to allow a stale class action. The

23  essential rationale of the *Robbin* rule is that "*American Pipe* and *Crown, Cork* represent a careful

24  balancing of the interest of plaintiffs, defendants, and the court system" (*Robbin*, 825 F.2d at 214

25  (internal quotation marks omitted)), and that allowing subsequent class actions exceeds the limits

26  of that balance because it would permit "putative class members [to] piggyback one class action

27  onto another and thus toll the statute of limitations indefinitely." *Korwek v. Hunt*, 827 F.2d 874,

28  878 (2d Cir. 1987) (citation and internal quotation marks omitted). That rationale applies

1    regardless of whether the initial class action was rejected because class certification was denied or

2    because the underlying claim was found to be without merit. Either way, the policies of judicial

3    economy and repose dictate that no new round of class litigation be permitted.

4          Finally, the Third Circuit's decision in *Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004),

5    does not help plaintiffs. *Yang* held only that a successive class action is not barred when the first

6    class action was rejected because of inadequacies in the named class representatives. This was a

7    "circumstance []. . . unrelated to the warnings expressed in *American Pipe* and *Crown, Cork &*

8    *Seal,* which concerned the potential for abuse where counsel could manipulate a complaint to

9    trigger tolling." *Id.* at 112. By contrast, the Court is here presented with a situation not

10   considered by *Yang* and in which manipulating a complaint to trigger tolling appears to be

11   precisely what has been attempted.

**2.      Class Action Tolling Is Inapplicable Because Plaintiffs' Claims Here
Are Different From The Claim in *Dagher***

14         Plaintiffs admit that their claims here "are not identical" to the claim in *Dagher*

15   (Transfer Motion Opposition at 8:11), were "never considered" in *Dagher* (*id.* at 8:27-28) and

16   will require "the development of additional evidence concerning relevant market and effects on

17   competition, not in the *Dagher* record" (*id.* at 9:4-5), as well as "a somewhat different and more

18   extended analysis of the challenged conduct and its effects on competition in a relevant market"

19   (Opposition at 12:5-6).   Plaintiffs also admit that class action tolling does not apply unless the

20   subsequent claims concern "*the same* evidence, memories, and witnesses as the subject matter of

21   the original class suit." Opposition at 11:4-5 (quoting Justice Powell's concurrence in *Crown,*

22   *Cork & Seal*) (emphasis added). Regardless of whether there will be some overlap, the evidence,

23   memories and witnesses relevant to the current rule of reason claims clearly will not be "the

24   same" as the evidence, memories and witnesses relevant to the *Dagher* per se claim.

25         As a threshold matter, by plaintiffs' own admission, *Dagher* concentrated

26   exclusively on Equilon's and Motiva's unification of the pricing of Shell and Texaco branded

27   gasoline. The legality under the antitrust laws of the actual formation of the joint ventures was

28   not challenged in *Texaco, Inc. v. Dagher*, 547 U.S. 1, ___ 126 S. Ct. 1276, 1280 n. 1(2006).

1    Notably, plaintiffs' Opposition never explains how the evidence, memories and witnesses

2    relevant to their current challenge to the formation of the joint ventures might be legitimately

3    characterized as "the same" as the evidence, memories and witnesses relevant to *Dagher*'s

4    challenge to the joint ventures' pricing policy.  By any stretch of the imagination, these are the

5    quintessential sort of "different or peripheral claims" to which Justice Powell warned against

6    extending the class action doctrine. *See Crown, Cork & Seal Co*, 462 U.S. at 354  (Powell, J.,

7    concurring).

8    　　　　Unable to enunciate any argument that the current challenge to the formation of

9    the joint ventures should qualify for class action tolling (a challenge that is both part of plaintiffs'

10    Sherman Act section 1 claim, *see* Compl. ¶ 115, and all of plaintiffs' Clayton Act section 7 claim,

11    *see id.* ¶ 117), the Opposition focuses exclusively on the purported overlap between *Dagher*'s per

12    se challenge to the pricing policy and that portion of the current Sherman Act section 1 claim that

13    challenges the pricing policy under the rule of reason.  But even setting aside that the current

14    complaint challenges the formation of the joint ventures whereas *Dagher* did not, plaintiffs are in

15    no position to downplay the differences between their current rule of reason challenge to the joint

16    ventures' price unification policy and the prior per se challenge to that policy.  It is plaintiffs who

17    are relying on differences between these claims to contend that their current rule of reason

18    challenge to the price unification policy might be viable despite the Supreme Court's unanimous

19    holding in *Dagher* that a per se challenge was not.   To the extent that the differences are so slight

20    that the evidence will be the same, plaintiffs have no basis whatsoever for arguing that a rule of

21    reason challenge may be viable.

22    　　　　As shown in defendants' moving papers and conceded by plaintiffs, a rule of

23    reason claim here will have to include proof regarding the structure of  the relevant market and

24    the actual effects of the challenged restraint in that relevant market.  One indication of the extent

25    of the additional evidence that is necessary on these issues is the length of the ABA's model jury

26    instructions for proving the "unreasonableness" element of a rule of reason violation:  The

27    instructions span nine pages. *See* ABA Section of Antitrust Law, Model Jury Instructions

28    In Civil Antitrust Cases A-4 to A-12 (2005 Ed.).  Plaintiffs do not and cannot contend that

1    these were elements of the per se or quick look claim in *Dagher*.  To the contrary, in *Dagher*

2    plaintiffs' issues lead counsel Mr. Alioto explicitly told Judge King that, unlike in "the customary

3    Rule of Reason" case, "the issues of market power and impact upon the market are not an issue"

4    in a per se or quick look case (and were not an issue in *Dagher*).  Transcript of Dec. 6, 1999

5    *Dagher* Hearing (Exh. I to moving papers), at 14:25-15:2.

6            Likewise in their opposition to the current motion, plaintiffs admit that the

7    evidence in *Dagher* will not be sufficient for their purposes here; instead, that evidence will need

8    to be "*supplemented by* expert testimony and other industry and market evidence" that was not

9    relevant to *Dagher* because the "inquiry [is] broadened" under the rule of reason.  Opposition at

10   13:2-4 (emphasis added).   The long passage of *California Dental Ass'n. v. Federal Trade*

11   *Commission*, 526 U.S. 756, 779-80 (1999) that is quoted in the Opposition (at 12:14-25) merely

12   shows that the dividing lines between the main categories of antitrust analysis are not always

13   sharp.  As a leading treatise explains, "the two standards overlap *at the margins*," such as with

14   group boycotts or tying arrangements.  ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW

15   DEVELOPMENTS 48 (6th ed. 2007) (emphasis added).  This does not diminish the fact that, for the

16   particular claims at issue here, the required analysis under the rule of reason is dramatically

17   different from that under the per se rule and, as plaintiffs now admit, will require presentation of

18   evidence, memories and witnesses that were not relevant to *Dagher*.  Once again, plaintiffs'

19   counsel made a simiar admission in *Dagher*.  *See* Transcript of Dec. 6, 1999 *Dagher* Hearing

20   (Exh. I to moving papers), at 15:8-15 (noting that courts in quick look cases "sometimes consider

21   . . . pro-competitive issues, and those that are against it.  *But they don't consider market power.*

22   *They don't consider impacts on the market.*") (emphasis added).

23           Plaintiffs do not help their cause in relying on the Ninth Circuit's decision in *Tosti*

24   for the point that a claim does not have to be "identical" to the claim in the initial litigation for

25   class action tolling to apply.  *Tosti* involved a plaintiff who opted out of the initial class litigation

26   and settlement to pursue her own claim individually.  As quoted by plaintiffs, the rationale of

27   *Tosti* is that "one of the primary reasons a [class] member will opt out of a class suit is that she

28   has strong individual claims against the defendant that she believes will not be redressed by the

- 7 -          REPLY MEMO ISO MOTION TO DISMISS
                                                          CV-07 04296 MJJ

1    overall class settlement." Opposition at 14:20-21 (quoting *Tosti v. City of Los Angeles,* 754 F.2d

2    1485, 1489 (9th Cir. 1985). That rationale has no applicability here. In seeking to represent the

3    same putative class as in *Dagher,* the named plaintiffs here necessarily allege that their claims are

4    "typical of the class generally" and that they "share the exactly [sic] same interests as the other

5    members of the class." Compl. ¶ 6. The claims asserted here are different from that asserted in

6    *Dagher* not because of the uniqueness of the plaintiffs' situation but instead because of the

7    strategic choice of the various plaintiffs and their counsel.

8              **3.    Plaintiffs' Claims Are Time-Barred Regardless Of The Applicability**

9                      **Of Class Action Tolling**

10             In their moving papers, defendants showed that, even if class action tolling applied

11   here, plaintiffs' claims are time-barred because tolling ends when the district court determines

12   that a class action will not proceed. Plaintiffs offer nothing to challenge the rule that tolling does

13   not continue during subsequent appellate proceedings, but would attempt to limit that rule to

14   explicit denials of class certification and appellate proceedings concerning class certification.

15   The *Westinghouse* court properly rejected this very same argument, holding that "the dismissal of

16   an entire civil action is about as 'definitive' a disposition of a motion for class certification as one

17   is likely to find." *In re Westinghouse,* 982 F. Supp. at 1035. A number of other courts have ruled

18   similarly that it does not matter for this purpose whether the determination that a class action will

19   not proceed is a class certification denial or a merits dismissal. *See* cases cited in moving papers

20   at 14:9-17.

21             Plaintiffs sole argument against this rule is that denial of class certification is less

22   likely to be reversed on appeal than dismissal of the litigation on the merits.   It is true that courts

23   that have *refused* tolling during the time period of appellate proceedings regarding class

24   certification have noted that class certification decisions are rarely overturned. But it does not

25   follow that tolling should be permitted during the time period of other appellate proceedings. Nor

26   is there authority to support such an extension. "The general rule is that the judgment of a district

27   court becomes effective and enforceable as soon as it is entered; there is no suspended effect

28   pending appeal unless a stay is entered." *In re Copper Antitrust Litig.,* 436 F.3d 782, 793

4038141.1                                    - 8 -          REPLY MEMO ISO MOTION TO DISMISS
                                                            CV-07 04296 MJJ

1   (7th Cir. 2006) (describing the issue as whether "the class certification question should somehow

2   be exempt from this rule," and answering the question in the negative).

3              Regardless of why a district court determines that class claims may not proceed, a

4   putative class member is on notice that she may have to take steps to preserve her claims. "The

5   essential rationale of *American Pipe* is that members of a class whose claims are embodied in a

6   class action should not be required by the exigencies of the statute of limitations to clutter the

7   courts with duplicative lawsuits *as long as their claims are encompassed by the class action.*" *Id.*

8   *at* 794 (emphasis added). This essential rationale applies regardless of whether the putative class

9   member's claims are no longer encompassed by the class action because the district court has

10  ruled that class certification is inappropriate or because the district court has ruled that the claims

11  fail on the merits. If a putative class member believes that proceeding with her additional claims

12  concurrently with an appeal in the initial litigation is inefficient, there is a judicially-recognized

13  option: The "putative class member who wishes to preserve both rights should file her individual

14  suit and immediately seek a stay of the individual suit" pending the outcome of the appeal.

15  *Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1391 (11th Cir. 1998). At that juncture, the

16  district court can balance the chances for an appellate reversal against the expected delay in

17  determining whether the stay should be granted. "This is a just, efficient result." *Id.* By contrast,

18  the current case itself vividly illustrates the potential for abuse that would be created by a further

19  extension of the class action tolling doctrine to the time period during which an appeal of a

20  substantive dismissal of a prior action is pending — thereby eliminating the judicial control over

21  when related claims should proceed that exists with the just-discussed motion to stay procedure.

22  Such a further extension of the class action doctrine would be a far cry from the usual "short"

23  period (*id.* at 1390) for which class action tolling is meant to apply.

24              **4.      Plaintiffs' Res Judicata Argument Is Irrelevant**

25              Plaintiffs spend a portion of their Opposition arguing that *Dagher* does not bar

26  their claims under the doctrine of *res judicata. See* Opposition at Argument, § I.D. The

27  applicability of *res judicata* is irrelevant to the current motion. The question is not whether

28  plaintiffs here are bound by the waiver of rule of reason claims or the decision in *Dagher*.

1    Rather, the question is whether plaintiffs can show that class action tolling should apply to allow

2    them to delay filing rule of reason claims until many years after the statute of limitations has run.

3    Plaintiffs cannot do so for the reasons discussed here and in defendants' moving papers.

### 5.    Efficiency And Judicial Economy Support Dismissal Here

5              Plaintiffs suggest that the Court consider efficiency and judicial economy in

6    whether class action tolling should be extended to their claims here.  Defendants agree that these

7    are relevant considerations.  But plaintiffs create a false dichotomy in suggesting that the only

8    alternative to their current belated filing was for them to file their claims after the district court

9    dismissed *Dagher* but before the Supreme Court affirmed.  The obvious additional alternative

10   would have been to file these claims promptly after the *Dagher* plaintiffs and their counsel

11   waived them.  The claims could then have been joined with the *Dagher* claim in the same lawsuit

12   or in a consolidated lawsuit.  *See* Transcript of Dec. 6, 1999 *Dagher* Hearing (Exh. I to moving

13   papers), at 15:24-16:2 ("THE COURT:  All I want to make sure is that I am giving you an

14   opportunity to at least amend to include what you call customary Rule of Reason analysis . . . ").

15   As the Court of Appeals has noted:

16          If the requirements of the statute of limitations result in the [later case's] being

17          brought while the [initial case] is pending, there is no inefficiency or unfairness.

18          The plaintiff has simply invoked an additional statutory right at an appropriate

19          time.

20   *In re Copper Antitrust Litig.,* 436 F.3d at 795.  Here, it would obviously have been more efficient

21   for both the judiciary and the parties for the current claims to be considered (if at all) in

22   conjunction with the *Dagher* claim.  Indeed, that is the rationale behind the rule that, if a party has

23   related claims, she must generally join them in a single lawsuit.  That rationale counsels against

24   extending the class action tolling doctrine to the do-over class action that plaintiffs have filed

25   here.

### 6.    Tolling Is Unavailable As Against Saudi Refining In any Event

### a.    *The Dagher Plaintiffs Lacked Standing Against Saudi Refining*

28          Saudi Refining has moved to dismiss on the additional basis that tolling is

1   unavailable against it because the *Dagher* plaintiffs lacked standing as against Saudi Refining.

2   Plaintiffs concede that the *Dagher* plaintiffs did not have standing to assert claims against Saudi

3   Refining but contend that the claims were tolled nonetheless.  Opposition at 19:7-8, 20-23.

4          Plaintiffs do not dispute the holding in *Palmer v. Stassinos*, 236 F.R.D. 460 (N.D.

5   Cal. 2006), but instead try to distinguish it on the irrelevant ground that the plaintiffs here were

6   not parties to the Dagher action.  Opposition at 19:18-20.  Palmer has nothing to do with whether

7   the plaintiffs in the second class action were also plaintiffs in the first class action.  Rather,

8   Palmer stands for the uncontroversial proposition that the filing of a purported class action

9   complaint by a plaintiff that lacks standing does not toll the statute of limitations for any plaintiff.

10  236 F.R.D. at 466 n.6  (it is beyond the power of a court "to toll a period of limitations based on a

11  claim that failed because the claimant had no power to bring it").

12         Plaintiffs completely ignore the remaining line of cases which hold that a

13  purported class action filed by a named plaintiff without standing does not toll the statute of

14  limitations for subsequent class actions.  See moving papers at 14-15 (citing *In re Colonial Ltd.*

15  *P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994) ("[I]f the original plaintiffs lacked standing to

16  bring their claims in the first place, the filing of a class action complaint does not toll the statute

17  of limitations for other members of the purported class."); *In re Crazy Eddie Sec. Litig.*, 747 F.

18  Supp. 850, 856 (E.D.N.Y. 1990) (tolling does not apply to a "class action brought after a previous

19  class action has been dismissed for lack of standing")).  *See also In re Elscint, Ltd. Sec. Litig.*,

20  674 F. Supp. 374, 378 (D. Mass 1987) (to allow such tolling would "condone or encourage

21  attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff

22  and then searching for one who can later intervene with the benefit of the tolling rule").

23         The only case cited by plaintiffs, *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083,

24  1086 (3d Cir. 1975) (Opposition at 19:23), is inapposite.  In *Haas*, the court granted class

25  certification as against three banks.  The court subsequently determined that the named plaintiff

26  did not have standing with respect to one of the defendant banks, Equibank.  *Id*.  The court

27  allowed the complaint to be amended to add a nominal plaintiff who had standing against

28  Equibank.  *Id*.  The Third Circuit held that the amendment to add the additional plaintiff was

1   timely because the filing of the class action had tolled the statute of limitations and the

2   amendment "relates back" to the initial filing of the complaint. *Id.* at 1098.

3           The *Haas* court considered whether tolling applied in the limited circumstance of a

4   plaintiff being added to an *existing* class action by way of an amendment that "related back" to

5   the *original* complaint. Neither element is present here. The *Dagher* action is long over and

6   there is no suggestion (and no possibility) that the instant claims "relate[] back" to the filing of

7   the original *Dagher* complaint. *Id.* at 1095-96. Rather, plaintiffs waited more than eight years

8   after the *Dagher* action was filed and five years after the *Dagher* action was dismissed against

9   Saudi Refining to bring this action. This contrasts starkly with *Hass* in which there was a

10  "prompt addition" (*id.* at 1097) of a nominal plaintiff in the original class action.

11          Finally, plaintiffs contend that not permitting tolling here would lead to the

12  "absurd result of forcing putative class plaintiffs to file duplicative individual or class actions to

13  preserve their claims." Opposition at 20:34. Surely plaintiffs do not mean that it would have

14  been unnecessarily duplicative to include a named plaintiff with standing against Saudi Refining

15  in the original *Dagher* action. Moreover, once it was determined that the *Dagher* plaintiffs lacked

16  standing, there were *no* claims pending against Saudi Refining so there would have been nothing

17  "duplicative" about new plaintiffs bringing actions to preserve their claims against Saudi

18  Refining. In addition, this not a question of whether the Court should permit tolling in its

19  discretion in order to avoid a particular result which plaintiffs find "absurd." Standing is a

20  constitutional limitation on the power of federal courts, and it is beyond the power of a federal

21  court to toll a period of limitations based on a claim that failed because the claimant had no

22  standing to bring it. *Palmer*, 236 F.R.D. at 466 n.6 ("courts cannot be concerned with matters

23  that are beyond their powers to affect"); *see also Walters v. Edgar,* 163 F.3d 430, 432-33 (7th Cir.

24  1998).

25          **b.**    ***The Statute Of Limitations Has Expired Against Saudi Refining***

26          Finally, even if tolling did apply here, Saudi Refining submits that plaintiffs would

27  have no claim against it. The argument that the August 14, 2002 final judgment in the District

28  Court ceased any tolling applies with particular force to Saudi Refining as that final judgment was

4038141.1            - 12 -      REPLY MEMO ISO MOTION TO DISMISS
                                                    CV-07 04296 MJJ

1   *affirmed* by the Ninth Circuit as to Saudi Refining. *Dagher v. Saudi Refining, Inc.*, 369 F.3d

2   1108 (9th Cir. 2004). Furthermore, the Ninth Circuit affirmed as to Saudi Refining on June 1,

3   2004 — over three years and two months before the *Madani* complaint was filed. The Ninth

4   Circuit's decision ended the case for Saudi Refining for all purposes. The Equilon and Motiva

5   joint ventures, the formation of which plaintiffs challenge here, were formed on July 1, 1998

6   (Comp. ¶ 76) — 349 days before plaintiffs filed the *Dagher* action. Thus, even if tolling did

7   apply during appellate review of the District Court's final judgment (and it did not, *see* § II.A.3.

8   above), over four years of non-tolled time passed as to any claims against Saudi Refining and the

9   claims against Saudi Refining must be dismissed.

10  **B.**   **Plaintiffs Do Not Sufficiently Allege A Relevant Market In Which The**

11         **Challenged Conduct Could Have Had An Anticompetitive Effect**

12         Plaintiffs wholly fail to justify their failure to allege a relevant geographic market

13  or market power — fundamental elements of their rule of reason claims. Plaintiffs first try to

14  argue around the applicable pleading standard. Relying on *Erickson v. Pardus*, 127 S. Ct. 2197

15  (2007), plaintiffs argue that "*Twombly* has not abolished notice pleading." Opposition at 20:8.

16  That may be true, but *Twombly* did clarify the extent of the required plain statement in the context

17  of an antitrust case. Specifically, *Twombly* held that the complaint must "possess enough heft to

18  sho[w] that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955,

19  1959 (2007). To do so, the complaint must allege enough facts to state a claim that is not merely

20  "*conceivable*" but instead "*plausible* on its face." *Id.* at 1974 (emphasis added). Furthermore, as

21  recognized in *Erickson*, plaintiffs must "'give the defendant fair notice of what the . . . claim is

22  *and the grounds upon which it rests.*'" *Erickson,* 127 S. Ct. at 2200 (emphasis added). Even if

23  plaintiffs were correct that *Twombly* added nothing to the governing pleading standards, the

24  complaint would fail to meet that standard, because the complaint fails to plead a relevant

25  geographic market in which the challenged conduct could have had an anticompetitive effect.

26  **1.**   **Relevant Geographic Market**

27         Plaintiffs do not even try to justify the deficiency in their relevant market

28  allegations with respect to their Section 1 claim. *See* moving papers at 16 (*citing Tanaka v.*

4038141.1                          - 13 -        REPLY MEMO ISO MOTION TO DISMISS
                                                 CV-07 04296 MJJ

1  *University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001); *Big Bear Lodging Ass'n*

2  *v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999); *Queen City Pizza, Inc. v. Domino's*

3  *Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997); *America Channel, LLC v. Time Warner Cable, Inc.*,

4  No. 06-2175, 2007 WL 1892227, at *6 (D. Minn. June 28, 2007)).  Their only argument is that

5  their Section 7 is sufficient because such a claim purportedly requires a showing only that "the

6  merger [] have a substantial anticompetitive effect *somewhere* in the United States."  Opposition

7  at 21:11-12 (*quoting United States v. Pabst Brewing*, 384 U.S. 546, 549-50 (1966)).  But this is

8  merely a statement that, to violate Section 7, a merger's allegedly anticompetitive effects need not

9  manifest themselves throughout the entire United States.  The statement does not excuse a

10 plaintiff from its obligation to identify one or more relevant geographic markets within the United

11 States.  *See, e.g., Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 512 F.2d 1264,

12 1270-71 (9th Cir. 1975) (determination of the relevant market is a necessary predicate to finding a

13 violation of Section 7 because monopoly must "substantially lessen competition 'within the area

14 of effective competition'"); *Tanaka*, 252 F.3d at 1063 (dismissing complaint that failed

15 sufficiently to allege an "area of effective competition"); *Big Bear Lodging Ass'n*, 182 F.3d at

16 1101 (same).

17         Plaintiffs concede that the entirety of the complaint's relevant market allegations

18 are its general references to various states and a small number of cities.  *See* Opposition at 21:16-

19 23.  The complaint provides no explanation of which of these overlapping geographic areas (in

20 addition to the unspecified "pricing areas" mentioned in the complaint) are the purportedly

21 relevant geographic markets in this case and, thus, what areas defendants would need to analyze

22 in terms of market power, pricing, competitive effects, etc., were this case to proceed.  *See, e.g.,*

23 *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 362 (1963) (on a Section 7 claim, a plaintiff

24 must first define the relevant market and then establish anticompetitive consequences).

25 Particularly after *Twombly*, a rule of reason antirust claim cannot proceed based upon allegations

26 that are this cursory.

27

28

### 2.    Market Power

Plaintiffs do not even attempt to justify their failure to allege market power in any purportedly relevant market and apparently concede that the market share numbers alleged in the complaint are insufficient as a matter of law to show any anticompetitive effects in a relevant market. *See* moving papers at 18 (*citing Valley Liquors, Inc. v. Renfield Imps., Ltd.,* 822 F.2d 656, 666 (7th Cir. 1987); *Tanaka,* 252 F.3d at 1063 ; *Big Bear Lodging Ass'n,* 182 F.3d at 1101 ). In other words, plaintiffs concede by their silence that they have not alleged sufficient market power in a relevant geographic market to support a plausible (or even a possible) antitrust claim under the rule of reason. Nor do plaintiffs make any attempt to refute that this deficiency is fatal to their claims.

### C.    The Court Should Dismiss Plaintiffs' Complaint Without Leave To Amend

Because the complaint affirmatively shows that plaintiffs' claims are time-barred as a matter of law, the claims cannot be salvaged by amendment and the Court should dismiss the complaint with prejudice. *Deutsch v. Turner Corp.*, 324 F.3d 692, 718 (9th Cir. 2003) (affirming dismissal with prejudice where claims were barred by the applicable statute of limitations and plaintiffs offered no rationale for tolling nor proposed any amendment that would save their claims); *Naas v. Stolman,* 130 F.3d 892, 893 (9th Cir. 1997). Similarly, plaintiffs have neither requested leave to amend their allegations regarding anticompetitive effects in any relevant market, nor proposed how any amendment could save the flawed allegations on this subject. Leave to amend should be denied on this additional basis. *See, e.g., Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990); *Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir. 1988).

### III.    CONCLUSION

The Court should grant this motion and dismiss plaintiffs' complaint with prejudice.

1

DATED: December 4, 2007

MUNGER, TOLLES & OLSON LLP

2

3

By: _____
STUART N. SENATOR

4

5

Attorneys for Defendant SHELL OIL COMPANY

6

DATED: December 4, 2007

Robert A. Mittelstaedt (State Bar No. 060359)
Craig E. Stewart (State Bar No. 129530)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
ramittelstaedt@jonesday.com; cestewart@jonesday.com;
Telephone: (415) 626-3939; Facsimile: (415) 875-5700

7

8

9

10

11

By: _____
CRAIG E. STEWART

12

13

Attorneys for Defendant
CHEVRON CORPORATION

14

15

DATED: December 4, 2007

Bryan A. Merryman (State Bar No. 134357)
WHITE & CASE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071-2007
Telephone: (213) 620-7700; Facsimile: (213) 452-2329
bmerryman@whitecase.com

16

17

18

19

By: _____
BRYAN A. MERRYMAN

20

Attorneys for Defendant SAUDI REFINING, INC.

21

**Filer's Attestation:** Pursuant to General Order No. 45, § X(B), I attest under

22

penalty of perjury that concurrence in the filing of this document has been obtained from each of

23

its signatories.

24

Dated: December 4, 2007

_____
Stuart N. Senator

25

26

27

28

4038141.1

- 16 -

REPLY MEMO ISO MOTION TO DISMISS
CV-07 04296 MJJ